**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **URIEL SEPULVEDA ALICEA**<br><br>Plaintiff<br><br>**v.**<br><br>**MUNICIPALITY OF PONCE; CHINASTAR CORPORATION; PIZZA'S HEAVEN CORP.; EL CONSULTORIO LUNCH AND BAR LLC; EL BOHIO INC.; NEW YORK SUPER CHINESE BUFFET INC.; CAROTENOS FOOD & JUICE BAR LLC; MESA - COCINA Y VINATERIA INC.; RESTAURANT NEW BIG WONG CORP.; FARMACIA LORRAINE, LLC; LA NUEVA CASA DEL CHEF, INC.; RAUCED INC.; WAM FOOD CUISINE L.L.C.; TORTILLERIA MONTERREY LLC; DE JESUS RESTAURANT INC.; LA PAGODA CREAM, INC.; CANTON CHINO INC.; SANTA MARIA TASTY, INC.; PANADERIA LA PONCEÑA INC.; CAFÉ CON SUERTE LLC; PANADERIA & REPOSTERIA GLENVIEW INC.; PANADERIA IMPERIAL, INC.; EMPRESAS SM LLC; A PALO LIMPIO OF PONCE INC.; JRC CONSOLIDATED INC.; TAQUERIA ORALE ORALE 1, INC.; CONSEJO DE TITULARES SANTA MARIA MEDICAL BUILDING CORP.; GUARINA BAKERY INC.; COMERCIO CASH & CARRY, INC.**<br><br>Defendants | **CIVIL NO.** |

## COMPLAINT

**TO THE HONORABLE COURT:**

The plaintiff, Uriel Sepulveda Alicea (hereinafter "plaintiff", "Mr. Uriel" or "Mr. Sepulveda"), on behalf of his own interests, respectfully requests a Permanent Injunction[1] against Municipality of Ponce in accordance with the Title II of the *Americans with Disabilities Act*,[1] as well as damages and a Permanent Injunction under Section 504 of the Rehabilitation Act, 29 U.S.C, and, moreover, also requests a permanent injunction against Chinastar Corporation; Pizza's Heaven Corp.; El Consultorio Lunch And Bar LLC; El Bohio Inc.; New York Super Chinese Buffet Inc.; Carotenos Food & Juice Bar LLC; Mesa - Cocina y Vinateria Inc.; Restaurant New Big Wong Corp.; Farmacia Lorraine, LLC; La Nueva Casa Del Chef, Inc.; Rauced Inc.; Wam Food Cuisine L.L.C.; Tortilleria Monterrey LLC; De Jesus Restaurant Inc.; La Pagoda Cream, Inc.; Canton Chino Inc.; Santa Maria Tasty, Inc.; Panaderia La Ponceña Inc.; Café con Suerte LLC; Panaderia & Reposteria Glenview Inc.; Panaderia Imperial, Inc.; Empresas SM LLC; A Palo Limpio of Ponce Inc.; JRC Consolidated Inc.; Taqueria Orale Orale 1, Inc.; Consejo de Titulares Santa Maria Medical Building Corp.; Guarina Bakery Inc.; Comercio Cash & Carry, Inc.; in accordance with Title III of the *Americans with Disabilities Act.*

## I.    PARTIES

1. The plaintiff's name is Uriel Sepúlveda Alicea, and he is a resident of the Municipality of Ponce.

---

[1] This Court may refer to the following source to address the obligations of all state or municipal public entities under Title II of the Americans with Disabilities Act: the Public Right-of-Way Accessibility Guidelines (PROWAG). These guidelines, which came into effect on September 7, 2023, are accessible via the following link: https://www.access-board.gov/prowag/.

2.     The co-defendant, Municipality of Ponce, is a municipal entity with the capacity to sue and be sued. At all times relevant to this cause of action, it supervised, operated, or owned the sidewalks and streets adjacent to the locations situated within the Municipality of Ponce.

3.     The following co-defendants represent the respective businesses they own, lease, rent, or operate, located within the Municipality of Ponce:

   3.1.     Chinastar Corporation is the owner, lessor, lessee, and/or operator of the public accommodation known as Oriental Fusion.

   3.2.     Pizza's Heaven Corp. is the owner, lessor, lessee, and/or operator of the public accommodation known as Pizza's Heaven.

   3.3.     El Consultorio Lunch And Bar LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as  El consultorio.

   3.4.     El Bohio Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as El Bohio.

   3.5.     New York Super Chinese Buffet Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as New York Buffet.

   3.6.     Carotenos Food & Juice Bar LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Carotenos Food & Juice Bar.

   3.7.     Mesa - Cocina y Vinateria Inc.  is the owner, lessor, lessee, and/or operator of the public accommodation known as Mesa - Cocina Y Vinateria.

   3.8.     Restaurant New Big Wong Corp. is the owner, lessor, lessee, and/or operator of the public accommodation known as New Big Wong.

3.9.    Farmacia Lorraine, LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Farmacia Lorraine.

3.10.   La Nueva Casa Del Chef, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as La Casa del Chef.

3.11.   Rauced Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Campioni Pizza Birra & Tapas.

3.12.   Wam Food Cuisine L.L.C. is the owner, lessor, lessee, and/or operator of the public accommodation known as Wam Food Cuisine.

3.13.   Tortilleria Monterrey LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Taquería Monterrey.

3.14.   De Jesus Restaurant Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as De Jesus Restaurant.

3.15.   La Pagoda Cream, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as La Pagoda

3.16.   Canton Chino Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Restaurante Villa Dragon.

3.17.   Santa Maria Tasty, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Santa María Tasty.

3.18.   Panaderia La Ponceña Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Panaderia La Ponceña.

3.19.   Café Con Suerte LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Café Con Suerte.

3.20.    Panaderia & Reposteria Glenview Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Panaderia & Reposteria Glenview.

3.21.    Panaderia Imperial, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Panaderia La Imperial.

3.22.    Empresas SM LLC is the owner, lessor, lessee, and/or operator of the public accommodation known as Mosaico Restaurant.

3.23.    A Palo Limpio of Ponce Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Viva la Pepa.

3.24.    JRC Consolidated Inc. is the owner, lessor, lessee, and/or operator of the public accommodations known as Aloft Ponce Hotel & Casino and Hard Rock Cafe Ponce.

3.25.    Taqueria Orale Orale 1, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Taqueria Orale.

3.26.    Consejo de Titulares Santa Maria Medical Building Corp. is the owner, lessor, lessee, and/or operator of the public accommodation known as Santa María Medical Building.

3.27.    Guarina Bakery Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as La Guarina Bakery.

3.28.    Comercio Cash & Carry, Inc. is the owner, lessor, lessee, and/or operator of the public accommodation known as Comercio Cash & Carry.

## II.    ALLEGATIONS

**A. Regarding the Plaintiff's Medical Conditions**

4.    Mr. Uriel Sepulveda suffers from the following conditions: damaged disc in his lumbar spine, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis in his spine and sacroiliac joints.

5.    As a result of these conditions, Mr. Sepúlveda  has substantial mobility limitations compared to the average person in the general population. For example, Mr. Uriel Sepúlveda experiences significant difficulty walking more than short distances without assistance or resting due to the pain and weakness caused by his lumbar spine's damaged disc and bilateral radiculopathy. He is unable to bend, twist, or lift objects over a minimal weight due to chronic osteoarthritis and osteoporosis, which compromise the stability and flexibility of his spine and sacroiliac joints. Additionally, simple activities such as climbing stairs, standing for prolonged periods, or even sitting without proper lumbar support are challenging for him, as they exacerbate his pain and increase his risk of injury. Therefore, he must use a walker to move around.

**B. Concerning the Properties in Question and the Court's Jurisdiction**

6.    The areas within the Municipality of Ponce and the establishments in controversy, where Mr. Sepúlveda has been unable to access due to barriers, are the following:

6.1.    The location in controversy is a place of public accommodation, known as Oriental Fusion, located at La Rambla Plaza 606 Ave Tito Castro Ste 115, Ponce, PR 00716-0000, with coordinates 18.02562352191441, -66.598994236604.

6.2.    The location in controversy is a place of public accommodation, known as Pizza's Heaven located at 8023 Calle Concordia, Ponce, PR 00717-0000, with coordinates 18.005031939518634, -66.61444513460822.

6.2.1.    The sidewalk in question is located in front of Pizza Heaven, situated at 8023 Calle Concordia, Ponce, PR 00717-0000, with approximate coordinates 18.005033786740928, -66.61445757412116.

6.3.    The location in controversy is a place of public accommodation, known as El Consultorio Lunch And Bar  located at 1055 Avenida Hostos, Ponce, PR 00716-0000, with approximate coordinates 17.992662483321595, -66.615750364768.

6.3.1.    The sidewalk in question is located in front of El Consultorio Lunch And Bar  located at 1055 Avenida Hostos, Ponce, PR 00716-0000, with coordinates are 17.992645901570985, -66.61574097703682.

6.4.    The location in controversy is a place of public accommodation, known as El Bohio located at 627 Carr Guayanilla Ponce, PR 00717-0000 with approximate coordinates 18.009389180870308, -66.62495205290826.

6.4.1.    The sidewalk in question is located in front of El Bohio located at 627 Carr Guayanilla Ponce, PR 00717-0000 with coordinates are 18.009382803877354, -66.62496077008956.

6.5.    The location in controversy is a place of public accommodation, known as New York Super Buffet located at  Ponce Town Center, Ponce, PR 00728-0000, with approximate coordinates 17.99672697862269, -66.63722878466918.

6.5.1.    The sidewalk in question is located around New York Super Buffet located at   Ponce Town Center, Ponce, PR 00728-0000, with approximate coordinates 17.99672697862269, -66.63722878466918.

6.6.    The location in controversy is a place of public accommodation, known as Carotenos Food & Juice Bar located at Ponce Town Center Carr 2 Local 1, Ponce, PR 00728-0000 with approximate coordinates 17.997421317927667, -66.63935380716217.

6.7.    The location in controversy is a place of public accommodation, known as Mesa - Cocina y Vinateria located at 86 Avenida Hostos, Ponce, PR 00730-0000, with approximate coordinates 17.998863843344207, -66.614104561348.

   6.7.1.    The sidewalk in question is located in front of the Mesa - Cocina y Vinateria located at 86 Avenida Hostos, Ponce, PR 00730-0000, with approximate coordinates 17.998863843344207, -66.614104561348.

6.8.    The location in controversy is a place of public accommodation, known as Big Wong located at 1628 Paseo Villa Flores, Ponce, PR 00716-0000, with approximate coordinates 18.007125869048874, -66.58962858051498.

   6.8.1.    The sidewalk in question is located in front of the Big Wong located at 1628 Paseo Villa Flores, Ponce, PR 00716-0000, with approximate coordinates 18.007125869048874, -66.58962858051498.

6.9.    The location in controversy is a place of public accommodation, known as Farmacia Lorraine, located at 1681 Paseo Villa Flores Ponce, PR 00716-0000, with approximate coordinates 18.006788160593846, -66.5866826935382.

   6.9.1.    The sidewalk in question is located in front of Farmacia Lorraine located at 1681 Paseo Villa Flores Ponce, PR 00716-0000, with approximate coordinates 18.006788160593846, -66.5866826935382.

6.10.    The location in controversy is a place of public accommodation, known as La Casa del Chef, located at 23 Callejón Fagot, Ponce, PR 00730-3102, with approximate coordinates 18.009044850420867, -66.60305371298139.

6.11.    The location in controversy is a place of public accommodation, known as Campioni Pizza Birra & Tapas, located at Calle Isabel Esquina 61 Calle Salud, Ponce, PR 00717-0000, with approximate coordinates 18.01280294718698, -66.61105018199318.

6.11.1.    The sidewalk in question is located in front of the Campioni Pizza Birra & Tapas located at Calle Isabel Esquina 61 Calle Salud, Ponce, PR 00717-0000, with approximate coordinates 18.01280294718698, -66.61105018199318.

6.12.    The location in controversy is a place of public accommodation, known as Wam Food Cuisine, located at 1802 Calle Alcázar, Ponce, PR 00716-3802, with approximate coordinates 18.013034313510122, -66.60420760055925.

6.13.    The location in controversy is a place of public accommodation, known as Taquería Monterrey, located at 1431 C. Salud, Ponce, PR 00733-0000, with approximate coordinates 18.011730766231608, -66.61117055168019.

6.13.1.    The sidewalk in question is located in front of Taquería Monterrey, located at 1431 C. Salud, Ponce, PR 00733-0000, with approximate coordinates 18.011730766231608, -66.61117055168019.

6.14.    The location in controversy is a place of public accommodation, known as De Jesus Restaurant, located at 947 Ave. Hostos, Ponce, PR 00716-1103, with approximate coordinates 17.98837962383116, -66.61763552020646.

6.14.1.    The sidewalk in question is located in front of De Jesus Restaurant, located at 947 Ave. Hostos, Ponce, PR 00716-1103, with approximate coordinates 17.98837962383116, -66.61763552020646.

6.15.    The location in controversy is a place of public accommodation, known as La Pagoda, located at Ponce Mall, Ponce, PR 00731-0000, with approximate coordinates 17.997601876780895, -66.62868257169114.

6.16.    The location in controversy is a place of public accommodation, known as Restaurante Villa Dragon, located at 465 Calle Villa, Ponce, PR 00728-0000, with approximate coordinates 18.01071407503595, -66.63726355332236.

6.16.1.    The sidewalk in question is located in front of Restaurante Villa Dragon, located at 465 Calle Villa, Ponce, PR 00728-0000, with approximate coordinates 18.01071407503595, -66.63726355332236.

6.17.    The location in controversy is a place of public accommodation, known as Santa María Tasty, located at Esquina Santa María, Parc. Sabanetas, Ponce, PR 00716-0000, with approximate coordinates 18.00451935165877, -66.62076996519984.

6.17.1.    The sidewalk in question is located in front of Santa María Tasty, located at Esquina Santa María, Parc. Sabanetas, Ponce, PR 00716-0000, with approximate coordinates 18.00451935165877, -66.62076996519984.

6.18.    The location in controversy is a place of public accommodation, known as Panadería La Ponceña, located at Ave. Emilio Fagot, Calle Pamplona, Ponce, PR 00716-0000, with approximate coordinates 18.01523392626503, -66.60003159384578.

    6.18.1.    The sidewalk in question is located in front of Panadería La Ponceña, located at Ave. Emilio Fagot, Calle Pamplona, Ponce, PR 00716-0000, with approximate coordinates 18.01523392626503, -66.60003159384578.

6.19.    The location in controversy is a place of public accommodation, known as Café Con Suerte, located at 471 C. Ferrocarril, Ponce, PR 00717-0000, with approximate coordinates 18.005348422809263, -66.61888547515468.

6.20.    The location in controversy is a place of public accommodation, known as Panaderia & Reposteria Glenview, located at Glenview Gardens, L-1 Cll Fuerza, Ponce, PR 00730-0000, with approximate coordinates 18.043386615155143, -66.59163133526302.

    6.20.1.    The sidewalk in question is located in front of Panaderia & Reposteria Glenview located at Glenview Gardens, L-1 Cll Fuerza, Ponce, PR 00730-0000, with approximate coordinates 18.043386615155143, -66.59163133526302.

6.21.    The location in controversy is a place of public accommodation, known as Panadería La Imperial, located at 433 C. Victoria, Ponce, PR 00730-0000, with approximate coordinates 18.011793866180266, -66.63156313237806.

    6.21.1.    The sidewalk in question is located in front of Panadería La Imperial, located at 433 C. Victoria, Ponce, PR 00730-0000, with approximate coordinates 18.011793866180266, -66.63156313237806.

6.22.    The location in controversy is a place of public accommodation, known as Mosaico Restaurant, located at Avenida Tito Castro Carr. 14 KM 5.5, Ponce, PR

00716-3867, with approximate coordinates 18.03968270737887, -66.5817770630303.

6.22.1.    The sidewalk in question is located in front of Mosaico Restaurant, located at Avenida Tito Castro Carr. 14 KM 5.5, Ponce, PR 00716-3867, with approximate coordinates 18.03968270737887, -66.5817770630303.

6.23.    The location in controversy is a place of public accommodation, known as Viva la Pepa, located at Calle Capitán Correa Esquina Martín Corchado #13 Ponce, PR 00717-0000, with approximate coordinates 18.007229674019023, -66.61998758891544.

6.23.1.    The sidewalk in question is located in front of Viva la Pepa, located at Calle Capitán Correa Esquina Martín Corchado #13, Ponce, PR 00717-0000, with approximate coordinates 18.007229674019023, -66.61998758891544.

6.24.    The location in controversy is a place of public accommodation, known as Aloft Ponce Hotel & Casino, located at Street #2 KM 228.9, Ponce, PR 00717-0000, with approximate coordinates 17.997312255654634, -66.60364000866115.

6.24.1.    The location in controversy is a place of public accommodation, known as Hard Rock Cafe Ponce, located at Street #2 KM 228.9, Ponce, PR 00717-0000, with approximate coordinates 17.997312255654634, -66.60364000866115.

6.24.2.    The location in controversy is a place of public accommodation, known as Taqueria Orale, located at Street #2 KM 228.9 at Aloft Ponce Hotel &

Casino, Ponce, PR 00717-0000, with approximate coordinates 17.997312255654634, -66.60364000866115.

6.25.  The location in controversy is a place of public accommodation, known as Santa María Medical Building, located at 450 Calle Ferrocarril, Ponce, PR 00717-0000, with approximate coordinates 18.006683028822607, -66.61844934094276.

6.25.1.  The sidewalk in question is located in front of Santa María Medical Building, located at 450 Calle Ferrocarril, Ponce, PR 00717-0000, with approximate coordinates 18.006683028822607, -66.61844934094276.

6.26.  The location in controversy is a place of public accommodation, known as La Guarina Bakery, located at 105 Av. Muñoz Rivera, Ponce, PR 00717-0000, with approximate coordinates 17.996724772597926, -66.62117051534138.

6.26.1.  The sidewalk in question is located in front of La Guarina Bakery, located at 105 Av. Muñoz Rivera, Ponce, PR 00717-0000, with approximate coordinates 17.996724772597926, -66.62117051534138.

6.27.  The location in controversy is a place of public accommodation, known as Comercio Cash & Carry, located at Urb. Santa Teresita, Calle Santa Genoveva, Ponce PR 00730-0000, with coordinates 18.03386940062921, -66.60563485035564.

**C. Discrimination in Municipality of Ponce and other businesses against Mr. Uriel Sepulveda Alicea due to his disability**

7.  Mr. Uriel Sepúlveda, a resident of Ponce, finds great joy in visiting different places, especially restaurants, recreational spaces, and various businesses within the municipality. One of his greatest pleasures is exploring new establishments, trying different foods, and enjoying the vibrant atmosphere of Ponce. These outings are not just

a pastime for Mr. Sepúlveda; they serve as a way for him to momentarily disconnect from the health challenges he faces daily.

8.  Suffering from a damaged lumbar disc, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis, Mr. Sepúlveda experiences constant physical limitations and pain. However, when he visits a new restaurant or enjoys a meal in a place with a pleasant atmosphere, he finds a sense of normalcy, enjoyment, and relief from his struggles. Being able to spend his free time engaging in these activities allows him to focus on the things he loves, rather than the limitations imposed by his condition.

9.  Unfortunately, this enjoyment is often overshadowed by the numerous architectural barriers he encounters within the Municipality of Ponce. Instead of experiencing a smooth and enjoyable visit, his outings are frequently disrupted by accessibility challenges that make it difficult, exhausting, or even impossible for him to navigate public spaces safely.

10. One of the most frustrating and discouraging barriers he faces is the poor condition and inaccessibility of public sidewalks. Many sidewalks in Ponce are cracked, uneven, and obstructed, making it dangerous and physically straining for him to walk with his walker. Even worse, many businesses and establishments improperly use the sidewalks for parking spaces or to place objects that block access, forcing Mr. Sepúlveda to take alternative and unsafe routes or, in some cases, abandon his visits altogether.

11. Despite his desire to continue enjoying his favorite pastime, the Municipality of Ponce has failed to take meaningful action to ensure that public spaces are accessible to individuals with mobility impairments. This lack of accessibility directly impacts his

independence and quality of life, as the constant struggle to navigate these spaces turns what should be a moment of relaxation into a frustrating and exhausting ordeal.

12.    Additionally, even when he manages to overcome the barriers on the sidewalks and reach businesses or restaurants, Mr. Sepúlveda continues to encounter obstacles inside these establishments. Some of the most common barriers include high service counters without accessible sections, narrow aisles that make it difficult for him to move safely, and restrooms that lack proper accommodations such as grab bars and sufficient maneuvering space. These conditions completely prevent him from fully enjoying his visit, leaving him feeling excluded and discouraged from returning.

13.    Mr. Sepulveda feels discouraged from visiting several places located in Ponce because he knows he cannot enjoy them due to the architectural barriers present at those locations:

### *Responsibility of the Municipality of Ponce and Chinastar Corporation Oriental Fusion*

14.    On January 17, 2025, Mr. Sepúlveda visited Oriental Fusion to enjoy a meal and try its renowned dishes. He greatly appreciates the restaurant, particularly its delicious family lunch specials and the variety of flavorful options, including Mein and other popular selections. However, during his visit, he encountered several architectural barriers that made access difficult and his experience uncomfortable. These obstacles not only affected his ability to navigate the space safely but also left him feeling discouraged from returning, despite his appreciation for the food and service. The barriers are:

14.1.    Inaccessible Entrance Door: Mr. Uriel knows that the restaurant's entrance door opens outward, creating a direct obstacle for him as someone who uses mobility aids. Furthermore, the door is too heavy, requiring significant effort to open and making it nearly impossible for him to do so without assistance. This design

prevents him from entering autonomously, leaving him feeling insecure and reliant on others to access the restaurant.

14.2.    Inaccessible Service Counter: Mr. Uriel, who relies on a walker, is aware that the service counter at the establishment is too high, making it difficult for him to access the products and services offered. Due to his health condition, which includes a damaged lumbar disc, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis in the spine and sacroiliac joints, he is unable to reach the counter comfortably without straining his posture or experiencing pain. The absence of a lower, accessible section forces him to exert unnecessary effort, increasing his risk of fatigue, imbalance, or discomfort. Over time, this inaccessibility compromises his safety.

14.3.    Inaccessible Dining Area: Mr. Uriel knows that there are no designated accessible tables in the dining area, preventing him from sitting comfortably and participating equally with other patrons. This exclusion directly impacts his dining experience, making him feel unwelcome and discouraged from staying.

14.4.    Inaccessible Door in Restroom: The restroom door presents another significant barrier due to its handle design, which requires wrist twisting to operate. This type of mechanism is inaccessible for individuals with limited hand mobility, such as Mr. Sepúlveda, who struggles with joint and grip issues. The need to twist the wrist to open the door creates unnecessary physical strain and makes independent use of the restroom more difficult.

14.5.    Inaccessible Restroom:  The restroom is too small for Mr. Sepúlveda to maneuver with his walker. The cramped layout forces him into uncomfortable and unsafe

movements, increasing his risk of losing balance. Without sufficient space to turn or adjust his position, accessing the restroom becomes an overwhelming challenge rather than a basic convenience. The positioning of essential fixtures further exacerbates the problem. The trash bin is placed too close to the toilet, unnecessarily reducing the already limited space. Additionally, the sink is located in the same cramped area, restricting his ability to move freely. These obstacles make it nearly impossible for him to use the restroom comfortably or safely.

14.6.    Absence of Grab Bars: A critical issue in the restroom is the complete lack of grab bars. Without a rear or lateral support bar, Mr. Sepúlveda has no stable points to hold onto when transferring to and from the toilet. This lack of necessary support puts his safety at serious risk, making independent restroom use difficult and dangerous.

14.7.    Lack of a Proper Paper Dispenser: Another significant barrier in the restroom is the absence of a toilet paper dispenser that allows a continuous and accessible flow of paper. Instead, the toilet paper is placed directly on top of the toilet lid, creating multiple issues. This improper placement forces Mr. Sepúlveda into an awkward and impractical position to reach for toilet paper, increasing the difficulty of maintaining balance while performing a basic task. Additionally, without a proper dispenser, accessing the toilet paper requires unnecessary effort, further complicating restroom use for individuals with limited mobility.

14.8.    Inaccessible Light Switch: Lighting access is yet another issue. The light switch is mounted too high, making it difficult for him to reach. This poorly placed fixture

forces him to stretch uncomfortably, adding yet another unnecessary challenge to restroom use.

14.9.    Inaccessible Sink Area: Mr. Uriel knows that the sink area poses several accessibility barriers. The black base of the sink blocks front access, and the surrounding space is so limited that he cannot approach or use it effectively. Additionally, the mirror is mounted too high, preventing him from seeing himself while using the sink. These barriers make the sink area entirely inaccessible and unwelcoming for him.

14.10.    To improve accessibility within Oriental Fusion, adjustments to the service counter and dining area are essential. Lowering a section of the beige service counter to a height of no more than 36 inches, with enough depth for wheelchair users to approach comfortably, would allow Mr. Uriel to interact with staff and conduct transactions independently. Additionally, some of the brown tables in the dining area should be replaced or modified to provide at least 27 inches of height clearance and 30 x 48 inches of clear floor space underneath, ensuring he can sit comfortably. Reorganizing the layout to create wider pathways would facilitate smoother navigation for individuals using mobility aids. Marking accessible tables would ensure availability and promote inclusivity for all patrons.

14.11.    Oriental Fusion must address these accessibility barriers by expanding the restroom space to allow proper maneuverability for individuals using walkers or wheelchairs. The trash bin and sink must be repositioned to prevent further space reduction, ensuring a clear and accessible layout. A properly placed rear and lateral grab bar must be installed to provide necessary stability during transfers. A

continuous-flow paper dispenser must be installed in an appropriate location to allow easy access. The restroom door handle must be replaced with a lever-style mechanism that does not require wrist twisting, allowing individuals with limited hand mobility to open the door independently. Additionally, the light switch must be lowered to an accessible height to prevent unnecessary strain when turning the lights on and off. These modifications will ensure that the restroom is safe, functional, and accessible for all individuals.

14.12.    The accessibility barriers at Oriental Fusion have not only made it difficult for Mr. Uriel Sepúlveda to navigate the restaurant safely but have also prevented him from making his purchases comfortably. The physical obstacles he encounters make it challenging for him to stay in the establishment long enough to order and enjoy his meal, often forcing him to leave, return at another time, or seek an alternative restaurant that better accommodates his mobility needs. These repeated difficulties result in wasted time, additional transportation costs, and unnecessary inconvenience, creating a financial burden that could have been avoided if the restaurant provided full accessibility.

### ***Responsibility of the Municipality of Ponce and Pizza's Heaven Corp.***
### ***Pizza's Heaven***

15.    On January 9, 2025, Mr. Uriel visited Pizza Heaven, a restaurant he deeply appreciates for its exceptional pizzas, renowned for their outstanding flavor and impressive variety. He especially enjoys the unique combinations and high-quality ingredients that make their offerings stand out. However, despite his love for the food, his experience was impacted by several architectural barriers that made it difficult for him to access the establishment safely and independently. These obstacles not only created discomfort

during his visit but also discouraged him from returning. The specific barriers he encountered include:

15.1.    Inaccessible Sidewalks: The sidewalk in front of Pizza Heaven is in poor condition, with uneven surfaces, cracks, and a ramp in disrepair that make it extremely difficult to navigate. Mr. Sepúlveda, who relies on a wheelchair, finds these conditions particularly challenging, as the damaged ramp makes it unsafe for him to use the sidewalk independently. Addressing the state of the sidewalk and ensuring it is properly maintained would significantly improve accessibility and safety, not only for Mr. Sepúlveda but also for others with similar mobility needs, fostering a more inclusive and welcoming environment in the Municipality of Ponce.

15.2.    Inaccessible Main Entrance: The main entrance to Pizza Heaven presents multiple barriers that prevent Mr. Uriel from accessing the establishment independently. The level change at the entrance lacks a functional ramp, making it impossible for him to navigate the step in his wheelchair. Decorative elements placed near the door further obstruct the space, leaving insufficient room for him to maneuver safely. These barriers force Mr. Uriel to rely on others to enter, stripping him of the autonomy and dignity he deserves.

15.3.    Inaccessible Dining Area: The dining area at Pizza Heaven presents significant barriers for Mr. Uriel. The brown tables are too low, making it impossible for him to roll his wheelchair underneath comfortably. The arrangement of the tables does not allow enough space for him to move through the area independently, forcing him to maneuver awkwardly or remain excluded. These limitations prevent him

from enjoying his meal in a comfortable and inclusive environment, leaving him feeling unwelcome and overlooked.

15.4.   Inaccessible Service Counter: The beige service counter at the establishment is too high for Mr. Uriel, who relies on a walker, making interactions with staff difficult and requiring extra effort to complete transactions. Due to his health condition, he is unable to reach the counter comfortably without straining his posture or experiencing pain. Without a lower, accessible section, he is forced to rely on others for assistance, increasing his risk of fatigue, imbalance, or discomfort. This lack of accessibility not only makes him feel excluded but also poses safety risks.

15.5.   Inaccessible Restroom: The restroom at Pizza Heaven is too narrow for Mr. Uriel to maneuver his wheelchair. The limited space is further reduced by the placement of the trash bin, which obstructs access to essential areas. The restroom door handle is positioned in the closed area, making it difficult for him to reach and operate. These conditions make it impossible for Mr. Uriel to use the restroom safely or independently, significantly impacting his overall experience.

15.6.   Inaccessible Sink Area: The sink area in the restroom presents several barriers for Mr. Uriel. The brown base of the sink blocks front access, preventing him from using it while seated in his wheelchair. The space around the sink is so limited that he cannot approach it effectively, and the mirror is mounted too high, making it unusable for him. Additionally, the sink handle requires twisting to operate, an action that Mr. Uriel cannot perform due to limited hand mobility. These issues make the sink area entirely inaccessible and unwelcoming for him.

15.7.   The issues with inaccessible sidewalks can be resolved by repairing uneven surfaces, removing obstacles, and installing a compliant accessible ramp. These improvements would ensure a safe, smooth pathway, eliminating the need for wheelchair users to use the roadway and reducing safety risks.

15.8.   To address the barriers at the main entrance of Pizza Heaven, a functional ramp should be installed to eliminate the level change and allow smooth access for individuals using wheelchairs. The ramp must have an appropriate slope and width to ensure safety and usability. Additionally, any decorative elements obstructing the space near the entrance should be removed or repositioned to provide sufficient room for maneuvering. Inside the restaurant, modifications to the dining area are necessary. Some of the brown tables should be adjusted or replaced to provide a minimum height clearance of 27 inches with 30 x 48 inches of clear floor space underneath, ensuring Mr. Uriel can sit comfortably. The layout of the dining area should also be reorganized to create wider pathways, allowing smooth navigation with mobility aids. Finally, a section of the beige service counter should be lowered to a height of no more than 36 inches, with adequate depth to enable direct interaction and independent transactions.

15.9.   To make the restroom accessible, it is essential to expand the space to provide a turning radius of at least 60 inches for wheelchair maneuverability. The trash bin should be relocated to avoid obstructing essential areas and ensure free movement. The restroom door handle should be replaced with a lever-style design that is easier to operate and positioned in an accessible location. For the sink area, the brown base should be removed to allow front access, and the surrounding

space should be increased for ease of navigation. The mirror should be lowered to a height suitable for wheelchair users, and the sink handle should be replaced with a motion-activated or lever-style design, eliminating the need for twisting. These improvements will make the restroom and sink area safe, functional, and welcoming for Mr. Uriel and other users.

15.10.    In addition to the architectural barriers Mr. Uriel Sepúlveda encountered at Pizza Heaven, he has also suffered economic losses as a direct result of these accessibility issues. On January 9, 2025, he arrived at the restaurant intending to enjoy a meal, only to face physical barriers that made access difficult and unsafe. The inaccessible entrance, narrow dining space, and high service counter prevented him from comfortably placing his order and dining at the establishment. As a result, he was forced to either leave, attempt to return at a later time, or seek an alternative restaurant that could better accommodate his mobility needs. These repeated challenges have led to unnecessary transportation costs, wasted time, and added frustration. The financial burden caused by these barriers could have been avoided if Pizza Heaven had ensured full accessibility, allowing him to enjoy the dining experience independently and without obstacles.

### Responsibility of the Municipality of Ponce and El Consultorio Lunch And Bar LLC El Consultorio Lunch And Bar

16.    On January 16, 2025, Mr. Uriel visited The Consultorio Lunch and Bar, a restaurant he thoroughly enjoys for its variety of dishes, with the delicious tacos being his personal favorite. He also appreciates the vibrant ambiance and thoughtfully designed spaces that create a welcoming atmosphere. However, despite his fondness for the food and environment, his experience was impacted by several architectural barriers that made it

difficult for him to access the restaurant safely and independently. These obstacles not only created discomfort during his visit but also discourage him from returning. The barriers he encountered include:

16.1.    Inaccessible Sidewalks: The sidewalk in front of The Consultorio Lunch and Bar is in poor condition, with uneven surfaces and cracks that make it extremely difficult to navigate. Mr. Sepúlveda, who relies on a wheelchair, finds these conditions particularly challenging, as the damaged surface makes it unsafe for him to use the sidewalk independently. Improving the condition of the sidewalk and ensuring it is properly maintained would significantly enhance accessibility and safety, not only for Mr. Sepúlveda but also for others with similar mobility needs, creating a more inclusive and welcoming environment in the area.

16.2.    Parking Area and Access Route: The parking area and access route create significant challenges for individuals with disabilities. The absence of designated accessible parking spaces makes it difficult for patrons like Mr. Uriel to park safely and conveniently. The uneven surface and lack of a clearly defined, accessible route from the parking area to the entrance further compound these issues, preventing him from navigating the space independently. To address these barriers, accessible parking spaces should be added, clearly marked, and located near the entrance. The surface of the parking area and access route should be smoothed and leveled, and an accessible path should be created to ensure safe and independent access to the building.

16.3.    Entrance Door: The entrance door at The Consultorio opens outward and is difficult to operate with one hand, posing a significant barrier for individuals with

limited mobility or dexterity. This design makes it nearly impossible for Mr. Uriel to enter without assistance, compromising his autonomy. Installing an automatic door opener or replacing the existing door with a lightweight model that complies with accessibility standards would ensure a safer and more dignified entry experience.

16.4.    Dining Area: The dining area also poses challenges for accessibility. The tables are too low, preventing wheelchair users like Mr. Uriel from comfortably positioning themselves. Additionally, the arrangement of tables does not provide adequate circulation space, making it difficult for him to move through the area. To resolve this, some tables should be replaced or modified to meet the minimum height clearance of 27 inches with a clear floor space of 30 x 48 inches underneath. Rearranging the dining area to create wider pathways would further enhance accessibility and inclusion.

16.5.    Inaccessible Service Counter: The gray service counter at the establishment is too high, creating a serious barrier for Mr. Uriel, who relies on a walker. This excessive height forces him to stretch uncomfortably, strain his posture, and place undue pressure on his already fragile spine and joints, causing pain and fatigue. The lack of an accessible lower section puts him at risk of losing balance, further damaging his musculoskeletal health, or even experiencing a dangerous fall. By keeping these barriers in place, the establishment not only worsens his condition but also increases the risk of serious injury.

16.6.    Restroom Door: The black restroom door features a handle that requires wrist twisting, creating a barrier for individuals with limited dexterity or strength.

Replacing the handle with a lever-style design would allow for easier operation without the need for twisting or excessive effort, ensuring greater independence for users like Mr. Uriel.

16.7.   Narrow and Obstructed Space in Restroom: The restroom at The Consultorio Lunch and Bar presents several significant accessibility challenges for Mr. Uriel Sepúlveda, making it unsafe and difficult for him to use independently. The space is extremely narrow, leaving little room for maneuverability, especially with mobility aids. The placement of fixtures such as the sink and trash bin further reduces the available space, obstructing his ability to position himself comfortably. These obstacles force him into uncomfortable and unsafe movements, increasing his risk of losing balance.

16.8.   Absence of Grab Bars: Additionally, the restroom lacks essential grab bars, depriving him of the support needed for safe transfers to and from the toilet. Without these stability features, he must rely on unsecured surfaces or external assistance, making restroom use difficult and undignified. The combination of a cramped layout, obstructive fixtures, and the absence of grab bars prevents Mr. Uriel from using the facilities safely and independently, significantly impacting his experience at the restaurant.

16.9.   Sink Area: The sink area in the restroom also requires significant adjustments. The white base of the sink blocks front access for wheelchair users, and the twist-style faucet handle is difficult to operate for individuals with limited mobility. Replacing the sink with a design that allows for frontal access and installing a motion-activated or lever-style faucet would resolve these issues.

Lowering the mirror to an appropriate height would ensure that all users can see themselves while using the sink, creating a more inclusive and functional space.

16.10.    The issues with inaccessible sidewalks can be resolved by repairing the uneven surfaces and removing obstacles that hinder safe navigation. These improvements would create a smooth and safe pathway, allowing wheelchair users to travel independently without being forced to use the roadway, significantly reducing safety risks and enhancing accessibility.

16.11.    To address the challenges in the parking area and entrance, accessible parking spaces should be designated, clearly marked, and located close to the entrance. The surface of the parking area should be repaired, leveled, and smoothed to eliminate unevenness and ensure safety for wheelchair users. Additionally, a clearly defined, accessible path should be created from the parking area to the entrance to provide safe and independent navigation.

16.12.    To improve the dining area, some tables should be replaced or modified to provide at least 27 inches of height clearance and a clear floor space of 30 x 48 inches underneath, ensuring they are wheelchair-accessible. Rearranging the layout of the dining area to create wider pathways would facilitate easier navigation and ensure inclusion for all patrons. The gray service counter should also be modified by lowering a portion to a maximum height of 36 inches and ensuring adequate depth to allow wheelchair users like Mr. Uriel to approach comfortably. These changes would enable him and others to interact with staff and engage in transactions independently, promoting equity and inclusion.

16.13.   Expand the restroom for better maneuverability, install grab bars, and reposition the trash can to avoid obstruction. Replace the door handle with a lever-style design. Adjust the sink area by removing the white base, lowering the mirror, and replacing the faucet with a motion-activated or lever-style design for improved accessibility.

16.14.   The architectural barriers at The Consultorio Lunch and Bar have not only made access difficult for Mr. Uriel Sepúlveda but have also prevented him from purchasing and enjoying his favorite food on equal terms. When he visits the restaurant, he is met with physical obstacles that make it unsafe or impossible for him to enter and move around independently. As a result, he is often forced to leave, attempt to return later, or find another establishment that can better accommodate his mobility needs. These repeated difficulties not only deny him the opportunity to enjoy his preferred meals like any other customer but also create unnecessary financial burdens, including extra transportation costs and wasted time. If the restaurant were fully accessible, Mr. Uriel would be able to dine with the same ease and dignity as others, without the added frustration of navigating barriers.

### *Responsibility of the Municipality of Ponce and El Bohio Inc.*
### *El Bohio*

17.   On January 14, 2025, Mr. Uriel visited El Bohío, a restaurant he deeply appreciates for its wide variety of dishes, with exceptional seafood standing out as his favorite. He values the welcoming atmosphere and the thoughtfully designed spaces that create an enjoyable dining experience. However, despite his appreciation for the food and environment, his visit was impacted by several architectural barriers that made it difficult for him to access

the restaurant safely and independently. These obstacles not only created discomfort during his visit but also discouraged him from returning. The barriers he encountered include:

17.1.    Sidewalk Accessibility Issues: The sidewalk in front of El Bohío is in a state of disrepair, with cracked and uneven surfaces that make it difficult to navigate safely. For Mr. Sepúlveda, who uses a wheelchair, these conditions create significant challenges, making independent use of the sidewalk unsafe and impractical. Repairing and maintaining the sidewalk would not only improve accessibility and safety for Mr. Sepúlveda but also benefit others with mobility needs, fostering a more inclusive and accommodating environment in the Municipality of Ponce.

17.2.    Parking Area and Access Route: The parking area and access route at El Bohío present several specific challenges for Mr. Uriel. There are no designated accessible parking spaces, leaving him without a safe and convenient place to park close to the entrance. The surface of the parking area is uneven, with cracks and dips that make it difficult for him to maneuver his wheelchair without risk of tipping or becoming stuck. Additionally, there is no clearly defined pathway leading from the parking area to the entrance, forcing Mr. Uriel to navigate unsafe and irregular terrain, which compromises his ability to access the restaurant independently.

17.3.    Dining Area: In the dining area at El Bohío, several barriers prevent Mr. Uriel from feeling included or comfortable. The brown tables do not provide the required height clearance of 27 inches, meaning he cannot position his wheelchair

underneath them properly. This forces him to sit at an awkward angle, making it uncomfortable for him to dine. Additionally, the arrangement of tables does not allow for a clear circulation path, leaving little room for him to move between them without struggling or bumping into furniture. These limitations create a sense of exclusion, as he cannot navigate or sit comfortably like other patrons.

17.4.    Service Counter Accessibility: The café-colored service counter at El Bohío presents a significant barrier for Mr. Uriel, who suffers from multiple medical conditions. The counter is too high, forcing him to overreach and strain his posture, which exacerbates his pain, increases fatigue, and puts additional stress on his already compromised musculoskeletal system. The barstools placed in front of the counter create further obstacles, making it difficult for him to approach safely and increasing his risk of tripping or falling. Without a lower accessible section, Mr. Uriel is unable to conduct transactions independently and is forced to rely on others for assistance, leaving him feeling excluded and reducing his autonomy.

17.5.    Inaccessible Door Handle in Restroom: When attempting to open the restroom door, Mr. Uriel faced another barrier; the door handle required wrist twisting to operate. Due to his limited hand mobility, he was unable to twist his wrist sufficiently to secure the door, leaving him without privacy. This frustrating experience forced him to rely on external assistance just to close the door, making him feel uncomfortable and dependent on others for something as basic as using the restroom.

17.6.    Restroom Accessibility: The restroom at El Bohío is significantly small, creating a major challenge for Mr. Uriel Sepúlveda, who relies on a walker for mobility. Upon entering, he found himself unable to maneuver comfortably due to the severely limited space. The sink, trash bin, and urinal were placed too close together, forcing him to navigate through tight, obstructed areas. This restriction made it nearly impossible for him to position himself properly, requiring uncomfortable and unsafe movements that increased his risk of losing balance and falling. The lack of space left him feeling trapped and unable to use the restroom independently.

17.7.    Small and Inaccessible Toilet: The toilet itself was too small, making it extremely difficult for Mr. Uriel to sit and stand safely. As he attempted to lower himself onto the toilet, he struggled to position himself properly, fearing he might lose balance due to the lack of adequate space and support. The discomfort of using an improperly sized toilet not only made restroom use physically challenging but also emotionally frustrating, as he was unable to complete a simple task with ease and dignity.

17.8.    Absence of Grab Bars: When trying to stand up from the toilet, Mr. Uriel realized there were no grab bars to assist him. Without this essential support, he had to rely on unstable surfaces to push himself up, increasing the risk of a fall. The absence of both rear and lateral grab bars forced him to use his walker in an unsafe manner to support himself, adding unnecessary strain to his body and making restroom use a stressful and dangerous task.

17.9.    Sink Area: The sink area also poses multiple challenges for Mr. Uriel. The base of the sink blocks his ability to approach it directly with his walker, forcing him to strain or lean uncomfortably. The faucet handles require twisting to operate, a motion that is difficult for him to perform due to his limited dexterity. The mirror is mounted too high, preventing him from seeing himself while using the sink, and the space around the sink is too restricted for him to move freely. These issues make the sink area inaccessible and frustrating for Mr. Uriel, limiting his ability to use it effectively.

17.10.    The challenges posed by inaccessible sidewalks can be addressed by leveling uneven surfaces and clearing any obstacles that impede safe passage. These changes would provide a smooth and secure pathway, enabling individuals with mobility aids to navigate independently without resorting to the roadway, thereby reducing safety hazards and improving overall accessibility.

17.11.    To improve accessibility, designated accessible parking spaces should be added near the entrance, clearly marked for visibility. The parking surface must be repaired and leveled to eliminate cracks and uneven areas, providing a stable surface for safe use with a walker. Additionally, a defined and smooth pathway should be constructed from the parking area to the entrance to ensure safe and independent access.

17.12.    In the dining area, some brown tables should be adjusted or replaced to provide a 27-inch clearance, allowing Mr. Uriel to sit comfortably with his walker. The layout should be reorganized to create wider pathways, ensuring he can move freely. At the café-colored service counter, a lower section should be added to a

height of 36 inches for easy access, and the barstools in front of the counter should be removed to eliminate obstructions.

17.13.    To address the restroom accessibility barriers, El Bohío must expand the restroom space to allow sufficient maneuverability for individuals using mobility aids. The sink, trash bin, and urinal should be repositioned to create a clear, unobstructed path. The toilet must be replaced with a larger, ADA-compliant model to ensure safe and comfortable use. Rear and lateral grab bars must be installed to provide the necessary support for transfers and stability. The current door handle should be replaced with a lever-style mechanism that does not require wrist twisting, allowing easy operation for individuals with limited hand mobility. Additionally, the sink area must be redesigned to remove obstructions at the base, install accessible lever or motion-activated faucets, and lower the mirror to an appropriate height. Implementing these modifications will ensure that the restroom is functional, safe, and accessible for all individuals.

17.14.    The accessibility barriers at El Bohío have not only made it difficult for Mr. Uriel Sepúlveda to navigate the restaurant safely but have also led to financial losses. On January 14, 2025, he was unable to dine comfortably due to physical obstacles, forcing him to leave, return later, or seek an alternative restaurant. These challenges have resulted in wasted time, additional transportation costs, and unnecessary inconvenience burdens that could have been avoided if the establishment were fully accessible.

***Responsibility of the Municipality of Ponce and New York Super Chinese Buffet Inc.***
***New York Buffet***

18.     On January 13, 2025, Mr. Uriel visited New York Buffet, a restaurant he greatly enjoys for its extensive selection of oriental dishes and buffet-style setup, which allows him to choose his meals freely. He also values the welcoming ambiance and well-arranged spaces that enhance the dining experience. However, despite his appreciation for the food and atmosphere, his visit was impacted by several architectural barriers that made it difficult for him to access the restaurant safely and independently. These obstacles not only caused discomfort during his visit but also discourage him from returning. The barriers he encountered include:

18.1.     Inaccessible Sidewalks: Around New York Buffet, Uriel Sepúlveda encountered inaccessible public areas in poor condition, featuring uneven surfaces, obstacles, and other barriers that severely limited his mobility. These conditions compromised his safety, increased the risk of accidents, and created an environment of exclusion and vulnerability.

18.1.1.     The public areas surrounding New York Buffet are inaccessible. Structural barriers significantly hinder the mobility of individuals with disabilities like Uriel Sepúlveda, making it difficult or impossible for him to navigate safely. The lack of accessibility measures heightens the risk of injury and further limits his ability to move independently.

18.1.2.     Despite being aware of these issues, the Municipality of Ponce takes no action to address them. This inaction demonstrates a disregard for the rights of individuals with disabilities and reinforces the systemic discrimination they face. The municipality's failure to ensure accessibility

perpetuates an exclusionary environment, making it impossible for Uriel Sepúlveda to move safely and with dignity.

18.1.3.   The lack of accessibility directly affects Uriel Sepúlveda, who struggles to navigate these spaces independently due to the architectural barriers in place. The presence of these obstacles not only limits his physical mobility but also contributes to a sense of exclusion and devaluation, preventing him from experiencing the freedom and autonomy he rightfully deserves.

18.2.   Main Entrance: The entrance ramp creates additional obstacles for Mr. Uriel. A noticeable level change at the start of the ramp makes it difficult for him to ascend smoothly, while the uneven, damaged surface requires him to tread carefully to avoid stumbling. The faded paint on the ramp reduces its visibility, and the lack of handrails leaves him without the support he needs to move securely. Moreover, a trash can blocks part of the entryway, forcing him to maneuver awkwardly to pass through. The door itself is heavy and difficult to open, requiring effort that he cannot comfortably manage with his walker, leaving him feeling dependent and unwelcome.

18.3.   Dining Area: Inside the dining area, Mr. Uriel faces barriers that limit his ability to enjoy his meal. The tables are too low, preventing him from positioning himself comfortably with his walker, which forces him into an awkward and uncomfortable seating position. The arrangement of tables also leaves little room for him to navigate, making it difficult for him to move around the space without struggling. These conditions make him feel excluded from the dining experience.

18.4.    Inaccessible Service Counter: The service counter prevents Mr. Uriel from accessing it frontally, making transactions uncomfortable and physically straining while using his walker. This forces him to stretch awkwardly, worsening his pain and fatigue. Without an accessible section, he cannot use the counter comfortably, further impacting his well-being.

18.5.    Self - Service Counter: At New York Buffet, the self-service counter presents significant barriers for Uriel Sepúlveda, who has mobility limitations due to multiple medical conditions. The buffet counter is too high and lacks an accessible section, making it extremely difficult for him to serve himself independently. Reaching for food requires him to stretch uncomfortably, worsening his pain and fatigue, while also creating a risk of losing balance. The absence of an accessible option prevents him from fully participating in the dining experience, reinforcing exclusion and limiting his autonomy. Despite accessibility being a fundamental right, New York Buffet has not implemented reasonable accommodations, leaving individuals with disabilities at a clear disadvantage in a public setting.

18.6.    Difficult-to-Use Stall Door: The stall door in the restroom at New York Buffet posed an immediate challenge for Mr. Uriel. The handle requires pinching to open, a motion that he struggles with due to his limited hand mobility. As he attempted to enter the stall, he found himself unable to grip and operate the handle easily, forcing him to exert extra effort just to gain access. Once inside, securing privacy became another frustrating obstacle, as he lacked the dexterity needed to close and latch the door properly. This difficulty left him feeling vulnerable and

dependent on others for assistance, making the restroom experience stressful and undignified.

18.7.    Extremely Small Space Around the Toilet: Once inside, Mr. Uriel faced yet another barrier—the space around the toilet was far too small for him to position himself comfortably. As he attempted to move his walker, he found that there was not enough room to maneuver, forcing him to shuffle awkwardly in a confined space. The tight layout restricted his movements, making it difficult for him to adjust his position and increasing his risk of losing balance. This lack of sufficient space left him feeling trapped and frustrated, as he was unable to use the restroom independently without struggling through uncomfortable and unsafe movements.

18.8.    Complete Absence of Grab Bars: The lack of grab bars inside the stall made the experience even more difficult for Mr. Uriel. Without a rear or lateral support bar, he had no stable point to hold onto while trying to sit down or stand up from the toilet. This forced him to rely on unstable surfaces, increasing his risk of falling and adding unnecessary strain to his body. The absence of these critical supports left him feeling unsafe and vulnerable, making what should have been a simple task an exhausting and stressful challenge.

18.9.    Inaccessible Sink Area: The sink area also presents significant challenges for Mr. Uriel. The gray base of the sink prevents him from approaching it comfortably with his walker, forcing him to strain awkwardly to use it. The faucet requires twisting to operate, a motion he cannot perform easily due to his limited dexterity. The mirror is mounted too high, preventing him from seeing himself, and the towel dispenser is placed out of reach, adding to the frustration. These barriers

make the sink area nearly impossible for him to use effectively, leaving him unable to complete even basic tasks comfortably.

18.10.  To eliminate accessibility barriers, sidewalks must be kept completely clear of obstacles, such as parked vehicles, trash bins, or any other obstructions that restrict mobility. Uneven surfaces and structural damage must be repaired to provide a smooth, stable path that allows safe navigation for individuals using mobility aids.

18.11.  To address issues with the ramp, New York Buffet must repair its surface, ensuring a smooth and slip-resistant finish. Installing handrails on both sides of the ramp will provide additional support for individuals who need assistance with stability.  Additionally, the entrance door should be replaced with an automatic or lighter-weight model, allowing easier access without requiring excessive force.

18.12.  To accommodate all customers, New York Buffet must adjust or replace tables to provide at least 27 inches of clearance, ensuring that individuals using wheelchairs or walkers can sit comfortably. The dining area should also be reorganized to create wider pathways, allowing for easier navigation without tight or restrictive spaces. A section of the service counter must be lowered to 36 inches to enable independent interaction with staff, and barstools blocking access should be removed to prevent additional barriers.

18.13.  To make the restroom fully accessible, New York Buffet must expand the space to allow sufficient maneuverability for individuals using walkers or wheelchairs. Installing properly positioned grab bars near the toilet will provide necessary stability, reducing the risk of falls. The door handle must be replaced with a

lever-style design, making it easier to operate for individuals with limited hand mobility. Additionally, the trash can must be relocated to avoid blocking essential areas and ensure clear movement.

18.14.  To improve usability, New York Buffet must remove the sink base to allow front access for individuals using mobility aids. The mirror should be lowered to an appropriate height, ensuring visibility for all users. Motion-activated or lever-style faucets must be installed to eliminate the need for twisting motions, making them easier to operate. The towel dispenser should also be repositioned within easy reach to ensure accessibility for all customers.

18.15.  The lack of accessibility at New York Buffet has not only made it difficult for Mr. Uriel to dine comfortably but has also resulted in financial setbacks. On multiple occasions, he has arrived at the restaurant only to be met with physical barriers that prevent him from entering or navigating the space independently. This has forced him to leave, attempt to return at a later time, or find another establishment that better suits his mobility needs. As a result, he has incurred additional transportation costs, wasted valuable time, and faced unnecessary inconvenience. These financial burdens and accessibility limitations could have been avoided if the restaurant had been fully accessible, allowing him to enjoy his dining experience without unnecessary obstacles.

### *Responsibility of the Municipality of Ponce and Carotenos Food & Juice Bar LLC Carotenos Food & Juice Bar*

19.  Since January, Mr. Uriel has been aware of the accessibility barriers at Carotenos Juice & Bar, a place he thoroughly enjoys for its focus on healthy cuisine, including delicious açaí bowls and freshly prepared natural juices that perfectly align with his tastes. He also

values the lively and welcoming atmosphere that enhances the dining experience. However, despite his appreciation for the food and ambiance, architectural challenges continue to prevent him from accessing the restaurant easily and independently. These obstacles include:

19.1.    Main Entrance: The black entrance door at Carotenos Juice & Bar creates significant accessibility barriers that make it extremely difficult for Mr. Sepúlveda to enter the establishment independently. The door requires excessive force to open, as indicated by the sign that reads "Pull hard," which forces him to exert more strength than he is capable of with his mobility limitations. This struggle leaves him frustrated and physically strained before he even steps inside. Additionally, the door lacks an accessible handle design, making it nearly impossible for him to grasp and operate with one hand. The presence of a threshold at the entrance further complicates the situation, forcing Mr. Sepúlveda to lift his walker abruptly, risking loss of balance. These barriers make him feel unwelcome and discouraged from visiting the restaurant, as he knows entering the space will always be a difficult and exhausting process.

19.2.    Payment Counter: The payment counter at Carotenos Juice & Bar is too high for Mr. Sepúlveda, who suffers from multiple medical conditions, including a damaged lumbar disc, cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis. Using his walker, he struggles to reach the counter, forcing him to strain his posture, increasing pain, fatigue, and the risk of imbalance. The lack of a lowered section makes transactions difficult and leaves him dependent

on others, reinforcing a sense of exclusion. Additionally, limited space prevents him from maneuvering comfortably, further increasing safety risks.

19.3.    Dining Area: Inside the restaurant, Mr. Sepúlveda faces additional barriers in the dining area that make it nearly impossible for him to enjoy his meal comfortably. The black tables are too low, preventing him from positioning himself properly with his walker. This forces him into an awkward seating position where his legs do not fit under the table, making it uncomfortable for him to eat. Additionally, the tight layout of the tables restricts his ability to move freely, making navigation difficult and frustrating. The lack of clear pathways makes him feel trapped, as he constantly struggles to find a way to his seat without disturbing other diners. These conditions exclude him from the dining experience and make him feel like an afterthought rather than a valued customer.

19.4.    Inaccessible restroom: The restroom at Carotenos Juice & Bar is completely inaccessible for Mr. Uriel Sepúlveda due to its extremely small size, creating significant challenges that compromise his safety and independence. The limited space makes movement difficult, preventing him from positioning himself comfortably. The cramped layout further restricts accessibility, forcing him into unsafe and uncomfortable situations where maneuvering becomes nearly impossible. These barriers make restroom use a frustrating and physically demanding task, ultimately preventing him from using the facility independently and with dignity.

19.5.    Inaccessible Sink: The sink at Carotenos is completely inaccessible for Uriel Sepúlveda, as it does not allow frontal access and is positioned too close to the

toilet, preventing lateral approach as well. The mirror is a small, round fixture placed too high, making it nearly impossible for him to see himself properly. These barriers create a frustrating and impractical experience, limiting his ability to use the sink comfortably and independently. The lack of proper accessibility features forces him into an uncomfortable and restrictive position, further impacting his autonomy and reinforcing the exclusion of individuals with mobility impairments.

19.6.    To ensure that Mr. Sepúlveda can enter Carotenos Juice & Bar comfortably and independently, several key modifications should be made to the main entrance. First, the door should be equipped with an automatic opener or adjusted so that it requires minimal force to operate, eliminating the current struggle of pulling it open. The handle should be replaced with an easy-to-grip lever or "U"-shaped design, making it accessible for individuals with limited strength or dexterity.

19.7.    Inside the restaurant, several modifications are necessary to make the space fully accessible for Mr. Sepúlveda. The payment counter should be redesigned with a lowered section, allowing individuals using mobility aids to interact with staff, sign receipts, and complete transactions independently. Additionally, the barstools in front of the counter should be removed or repositioned to provide clear access for customers using walkers or wheelchairs. In the dining area, tables should be adjusted to the correct height with enough clearance underneath so that Mr. Sepúlveda can position himself comfortably without feeling cramped. The overall layout should be reorganized to create wide, unobstructed pathways, making it easier to move through the space without difficulty.

19.8.    To resolve the restroom accessibility issues, Carotenos Juice & Bar must expand the restroom to provide sufficient space for maneuverability, ensuring that individuals using mobility aids can move comfortably. The sink should be repositioned to allow unobstructed frontal access and enough clearance for a lateral approach, ensuring ease of use. The mirror must be lowered to an appropriate height, making it visible for all users. Additionally, the restroom layout should be adjusted to prevent restrictive positioning that forces users into uncomfortable or unsafe movements. By implementing these modifications, Carotenos Juice & Bar can create a restroom that is accessible, functional, and inclusive for all individuals.

19.9.    The accessibility barriers at Carotenos Juice & Bar have not only made it difficult for Mr. Uriel to enjoy his visits but have also caused him financial losses. Since January, he has repeatedly encountered physical obstacles that prevent him from entering or navigating the space independently. As a result, he has been forced to leave, return at a later time, or seek an alternative establishment that better accommodates his mobility needs. These difficulties have led to additional transportation expenses, wasted time, and unnecessary inconvenience. This financial burden could have been avoided if Carotenos Juice & Bar had ensured full accessibility, allowing him to visit and enjoy his meals without unnecessary challenges.

### ***Responsibility of the Municipality of Ponce and Mesa - Cocina y Vinateria Inc.***
### ***Mesa - Cocina y Vinateria***

20.    Since January, Mr. Uriel has been aware of the accessibility barriers at Mesa-Cocina & Vinatería, a restaurant he loves for its gourmet cuisine and expertly crafted cocktails that

create an exceptional culinary experience. He appreciates the inviting ambiance and the attention to detail in both the food and atmosphere. However, despite his enjoyment of the restaurant, certain architectural barriers make it difficult for him to navigate the space independently. These challenges include:

20.1.    Inaccessible sidewalk: The sidewalk in front of Mesa Cocina Vinatería is in poor condition, with uneven surfaces, obstacles, and structural barriers that make it inaccessible for Uriel Sepúlveda and others with mobility impairments. These hazards compromise his safety, increase accident risks, and reinforce exclusion.

20.1.1.    The sidewalk in front of Mesa Cocina Vinatería presents significant barriers that make it inaccessible for Uriel Sepúlveda and others with mobility impairments. The area is in poor condition, with uneven surfaces, obstacles, and structural barriers that severely limit safe passage. These hazardous conditions compromise his safety, increase the risk of accidents, and create an environment of exclusion and vulnerability.

20.1.2.    The lack of accessibility measures makes it extremely difficult, if not impossible, for Uriel Sepúlveda to navigate the sidewalk independently. Despite being aware of these issues, the Municipality of Ponce has taken no action to address them, demonstrating a disregard for the rights of individuals with disabilities and further reinforcing systemic discrimination.

20.1.3.    These barriers directly impact Uriel Sepúlveda, making even basic mobility a struggle. The obstacles in place not only limit his movement but also contribute to a sense of exclusion and devaluation, preventing him

from experiencing the freedom, autonomy, and dignity he rightfully deserves.

20.2.    Main Entrance: The entrance to Mesa Cocina & Vinatería has a level change that prevents Uriel from entering safely with his walker. The abrupt elevation difference forces him to lift the walker, which is physically exhausting and destabilizing. Each attempt to enter leaves him struggling to maintain balance, putting him at risk of falling. The difficulty of simply getting inside discourages him from visiting the restaurant, knowing that entry will always be an exhausting and hazardous effort.

20.3.    Dining Area: Inside the restaurant, the tables are too low for Uriel to position himself comfortably with his walker. He cannot align himself properly to eat, forcing him into an awkward and painful position. The black chairs are too small, offering no proper support and making it impossible for him to sit securely. The space between tables is too narrow, preventing him from moving freely. Every time he tries to navigate through the dining area, he is forced to squeeze through tight spaces, constantly fearing that he will bump into furniture or disturb other diners. The layout leaves him feeling trapped and excluded from the dining experience.

20.4.    Service Counter: The service counter at Mesa Cocina & Vinatería is too high for Uriel, who relies on his walker due to multiple medical. The excessive height forces him to strain his posture to reach the surface, increasing his pain, fatigue, and risk of losing balance. The absence of a lowered section prevents him from making transactions independently, leaving him dependent on others and

reinforcing his sense of exclusion. Additionally, the limited space around the counter restricts his ability to maneuver with his walker, further increasing safety risks and making each visit physically demanding and frustrating.

20.5.    Inaccessible Restroom: When Mr. Uriel entered the restroom, he immediately struggled with the lack of space. The area was so small that he could not position himself properly, forcing him to make uncomfortable and unsafe movements just to navigate. As he attempted to turn or adjust his walker, he found himself restricted by the tight layout, making it nearly impossible for him to move without difficulty. This lack of maneuverability left him feeling frustrated and vulnerable, as he was unable to use the restroom safely and independently. Once inside, Mr. Uriel faced another major challenge—the toilet was positioned too close to the sink, further reducing the already limited space. As he tried to transfer to the toilet, he found that the restricted layout prevented him from positioning his walker properly, forcing him into an awkward stance.

20.6.    Absence of Grab Bars: As Mr. Uriel attempted to stabilize himself while transferring to and from the toilet, he quickly realized that there were no grab bars available to support him. Without these essential safety features, he was left with no secure point to hold onto, forcing him to rely on unstable surfaces for balance. This made the process of sitting and standing incredibly risky, increasing the chance of falls and making restroom use a stressful and physically demanding task.

20.7.    Inaccessible Paper Dispenser: Even after managing to sit down, Mr. Uriel faced yet another difficulty—the toilet paper dispenser was positioned too far from the

46

toilet. Reaching for it required him to stretch uncomfortably, an action that was nearly impossible in the already cramped space. The poor placement of the dispenser forced him to shift his position unsafely, adding to his frustration and making an essential task unnecessarily difficult.

20.8. Sink Area: The sink is completely inaccessible to Uriel. The white base prevents him from getting close enough to wash his hands comfortably. Since he cannot position himself properly, he has to stretch and strain, causing pain and discomfort. The towel dispenser is placed too high, making it impossible for him to dry his hands without assistance. The mirror is also positioned too high, preventing him from using it at all. The lack of accessibility in this area leaves him frustrated and dependent on others for basic tasks, further reinforcing his sense of exclusion.

20.9. To eliminate accessibility barriers, sidewalks must be kept completely clear of obstacles and maintained in good condition. Ensuring that sidewalks remain free of parked vehicles, trash bins, and any other obstructions is essential for safe and independent navigation. Additionally, repairing uneven surfaces, cracks, and other structural damages is necessary to provide a stable and accessible path.

20.10. To solve the barrier at the entrance, a gradual, non-slip ramp must be installed, and the door should be automatic or easy to open with an accessible handle. A clear, unobstructed pathway will ensure Uriel can enter safely and independently, removing the physical strain and risk of falling.

20.11. To solve the barriers inside the restaurant, tables must be adjusted to the proper height with enough clearance for Uriel's walker, and chairs should provide better

support. Wider spacing between tables will allow easier movement. The service counter needs a lowered section no higher than 36 inches, ensuring he can pay without straining or depending on others.

20.12.  To solve the barriers in the restroom, the path must be widened for easy access with a walker. Grab bars should be installed for safe toilet transfers, and the toilet paper dispenser must be within reach. The sink base should be modified, and the towel dispenser and mirror lowered, allowing Uriel to use the restroom independently and comfortably.

20.13.  The lack of accessibility at Mesa-Cocina & Vinatería has not only affected Mr. Uriel's ability to enjoy his visits but has also resulted in financial setbacks. Since January, he has repeatedly encountered physical barriers that prevent him from accessing or navigating the restaurant independently. These challenges have forced him to leave without dining, attempt to return at another time, or find a different establishment that better meets his mobility needs. As a result, he has faced additional transportation costs, wasted time, and unnecessary frustration. These burdens could have been avoided if the restaurant had been fully accessible, allowing him to dine with ease and independence.

### *Responsibility of the Municipality of Ponce and Restaurant New Big Wong Corp. Big Wong*

21.  On January 16, 2025, Uriel visited Big Wong, a restaurant he knows well and enjoys for its flavorful Chinese cuisine, particularly the shrimp salad, which has always been one of his favorites. He appreciates the generous portions and the welcoming atmosphere that make dining there enjoyable. However, during his visit, he encountered several architectural barriers that made access difficult and his experience uncomfortable. These

obstacles have gradually discouraged him from dining there as often as he would like, despite his fondness for the food and overall experience. The barriers are:

21.1.    Inaccessible sidewalk: The sidewalk in front of Big Wong is in poor condition, with uneven surfaces, obstacles, and structural barriers that make it inaccessible for Uriel Sepúlveda and others with mobility impairments. These hazards compromise his safety, increase accident risks, and reinforce exclusion.

    21.1.1.    The sidewalk in front of Big Wong presents significant barriers that make it inaccessible for Uriel Sepúlveda and others with mobility impairments. The area is in poor condition, with uneven surfaces, obstacles, and structural barriers that severely limit safe passage. These hazardous conditions compromise his safety, increase accident risks, and create an environment of exclusion and vulnerability.

    21.1.2.    The lack of accessibility measures makes it extremely difficult, if not impossible, for Uriel Sepúlveda to navigate the sidewalk independently. Despite being aware of these issues, the Municipality of Ponce has taken no action to address them, demonstrating a disregard for the rights of individuals with disabilities and further reinforcing systemic discrimination.

    21.1.3.    These barriers directly impact Uriel Sepúlveda, making even basic mobility a struggle. The obstacles in place not only limit his movement but also contribute to a sense of exclusion and devaluation, preventing him from experiencing the freedom, autonomy, and dignity he rightfully deserves.

21.2.    Inaccessible Dining Area: The red tables with black bases at Big Wong create significant obstacles for Uriel. They are too low for him to position himself comfortably with his walker, forcing him into an awkward and painful posture while eating. The lack of adequate clearance prevents him from sitting properly, making his dining experience uncomfortable and frustrating. Additionally, the tight spacing between tables restricts his movement, making it difficult for him to navigate through the restaurant without bumping into furniture or feeling like he is in the way of other diners. These barriers make every visit physically demanding, discouraging him from enjoying the food and atmosphere he appreciates so much.

21.3.    Inaccessible Service Counter: The service counter at Big Wong is too high for Uriel, who suffers from multiple medical conditions, including a damaged lumbar disc, cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis. Using his walker, he struggles to reach the counter, forcing him to strain his posture, which increases his pain, fatigue, and risk of imbalance. The lack of a lowered section makes transactions difficult, leaving him dependent on others and reinforcing a sense of exclusion. Additionally, the limited space around the counter prevents him from maneuvering comfortably, further increasing safety risks and making each visit unnecessarily challenging.

21.4.    Difficult-to-Use Door Handle in Restroom: Mr. Uriel encountered another obstacle—the restroom door required wrist twisting to operate. Due to his limited hand mobility, he struggled to turn the handle, making it difficult for him to secure privacy. This design flaw forced him to exert extra effort just to open the

door, leaving him feeling uncomfortable and dependent on assistance for a task that should be simple and private.

21.5.    Inaccessible Restroom: The restroom at Big Wong is far too small for Mr. Uriel to maneuver comfortably with his walker. As he attempted to enter, he immediately found himself restricted by the cramped layout, struggling to position himself properly. The placement of fixtures such as the trash bin and sink further reduced the available space, forcing him into awkward and unsafe movements just to access the toilet. The lack of room made it nearly impossible for him to move freely, creating a frustrating and physically exhausting experience.

21.6.    Absence of Grab Bars: When attempting to transfer to and from the toilet, Mr. Uriel realized there were no grab bars available to provide stability. Without these essential supports, he was forced to rely on unstable surfaces, increasing his risk of falling. This lack of proper safety features made restroom use a stressful and potentially dangerous task, significantly impacting his comfort and independence.

21.7.    Inaccessible Toilet Paper Placement: Even after managing to sit down, Mr. Uriel faced another challenge—the restroom lacked a continuous-flow toilet paper dispenser. Instead, the toilet paper was placed directly on top of the toilet lid, requiring him to reach and reposition himself uncomfortably just to access it. This inconvenient placement made the simple act of using toilet paper unnecessarily difficult, further complicating his experience.

21.8.    High Light Switch Another barrier that made restroom use difficult for Mr. Uriel was the placement of the light switch, which was mounted too high for him to reach easily. This forced him to stretch uncomfortably or rely on someone else to

turn the lights on and off, taking away his ability to use the restroom independently.

21.9.    Sink Area: The sink at Big Wong is completely inaccessible to Uriel. The white base underneath prevents him from getting close enough to wash his hands comfortably, forcing him to strain. The faucet requires twisting to operate, making it painful and difficult for him to use. The mirror is mounted too high, preventing him from seeing himself while seated. These barriers make a simple task like washing his hands frustrating and uncomfortable, leaving him dependent on others for basic hygiene.

21.10.    To ensure accessibility, sidewalks must be kept clear of all obstacles, including parked vehicles, trash bins, and any other barriers that restrict movement. Uneven surfaces and structural damage should be repaired to provide a smooth, stable path that allows individuals using mobility aids to navigate safely.

21.11.    To solve the barriers inside the restaurant, tables must be adjusted to a proper height with enough clearance for Uriel's walker, and spacing should be widened for easier movement. The service counter needs a lowered section no higher than 36 inches, and space around it must allow comfortable maneuvering. Beverage selections should also be placed at an accessible height.

21.12.    To address these restroom accessibility barriers, Big Wong must expand the restroom to provide sufficient space for maneuverability, ensuring that individuals using walkers can position themselves comfortably. The trash bin and sink should be repositioned to prevent obstruction and allow clear movement. The restroom door handle must be replaced with a lever-style mechanism that does not require

wrist twisting, making it easier to operate. Properly placed grab bars must be installed near the toilet to provide essential support and stability. A continuous-flow toilet paper dispenser should be installed within easy reach, eliminating the need for uncomfortable repositioning. Additionally, the light switch should be lowered to an accessible height, ensuring independent use for all individuals. These modifications will make the restroom safer, more functional, and fully inclusive.

21.13.    The lack of accessibility at Big Wong has not only affected Mr. Uriel's ability to dine comfortably but has also resulted in financial strain. On multiple occasions, he has arrived at the restaurant only to be met with physical barriers that prevent him from entering or navigating the space independently. This has forced him to leave without dining, attempt to return later, or seek another establishment that better accommodates his mobility needs. As a result, he has incurred additional transportation costs, wasted valuable time, and faced unnecessary frustration. These difficulties could have been avoided if the restaurant had been fully accessible, allowing him to enjoy his visits without unnecessary challenges.

### *Responsibility of the Municipality of Ponce and Farmacia Lorraine, LLC - Farmacia Lorraine*

22.    Mr. Uriel enjoys visiting Farmacia Lorraine because it offers a wide variety of products and services, including prescription medications, natural medicine and supplements, school supplies, copy services, gifts, bill payment services, and much more. The convenience and accessibility of these offerings make it a preferred establishment for him. However, he has attempted to visit the pharmacy in March, April, and August of 2024, but due to the architectural barriers, he encountered significant difficulties,

spending his resources to reach the place only to not be able to enjoy a satisfying and equal experience. His last visit was in October 2024, and as a result, he feels discouraged from returning. Since he uses a walker to move around, he fears experiencing another discriminatory situation, as he did during his last visit. Specifically, Mr. Uriel personally identified the following architectural barriers at Farmacia Lorraine:

22.1.    Illegal Parking Blocking The Sidewalk In Front Of Farmacia Lorraine: Mr. Uriel personally identified that illegal parking on the sidewalk in front of Farmacia Lorraine obstructs pedestrian access. This barrier affected him because, using a walker, he was unable to pass safely and had to find an alternative route, increasing his discomfort and risk of falling.

22.1.1.    Mr. Uriel personally identified that there is illegal parking on the sidewalk in front of Farmacia Lorraine, obstructing pedestrian access. This barrier affected him because, as someone who uses a walker, he was unable to pass through the sidewalk safely and was forced to find an alternative route. Having to deviate from the sidewalk caused him discomfort and increased the risk of falling, as he had to maneuver his walker over uneven or unsafe surfaces, further straining his joints and exacerbating his pain.

22.1.2.    The Municipality of Ponce is aware of this situation but has done nothing to address it. Instead, the municipality granted an illegal permit to the business, allowing it to establish parking spaces directly on the sidewalk. This decision violates the right of access for citizens, particularly those with disabilities like Mr. Uriel, who rely on safe and unobstructed

sidewalks to move around the city independently and without unnecessary risks.

22.2.    Irregular Surface In The Parking Lot: Mr. Uriel personally identified that the parking lot surface is not smooth or slip-resistant, with various cracks that make safe movement difficult. This barrier affected him because, due to his osteoporosis and chronic osteoarthritis in his spine and sacroiliac joints, any uneven surface significantly impacts his joints, causing him pain while walking. Additionally, his walker was obstructed as the wheels got stuck in the cracks, forcing him to exert extra effort to move forward, increasing his physical discomfort.

22.3.    Faded Paint In The Parking Lot: Mr. Uriel personally identified that the paint in the parking lot is worn out, making it difficult to see the designated areas, especially accessible zones. This barrier affected him because, unable to clearly distinguish pedestrian paths and parking spaces, he had to walk with extra caution and stop multiple times to orient himself, prolonging his movement and causing fatigue in his back and legs.

22.4.    Inadequate Signage For The Accessible Parking Space: Mr. Uriel personally identified that the signage for the accessible parking space is placed against the wall, away from the general field of vision, and does not have a properly sized and positioned sign to be visible from a distance. This barrier affected him because he had difficulty locating the accessible parking space, forcing him to move unnecessarily through the parking area, increasing his lower back pain and joint strain.

22.5.    Counter Too High: Mr. Uriel personally identified that the counter at the establishment is too high, preventing him from conducting his transactions comfortably. This barrier affected him because, due to his mobility limitations and the use of his walker, he had to lean and stretch awkwardly to interact with the staff, causing back pain and arm fatigue.

22.6.    Main Entrance Door Too Heavy: Mr. Uriel personally identified that the main entrance door is too heavy, making it difficult for him to access the establishment. This barrier affected him because, due to his bilateral cervical and lumbar radiculopathy, the effort required to open the door increased his back and arm pain. Additionally, using a walker made the maneuver even more challenging, as he had to exert extra effort to hold the door open while attempting to enter.

22.7.    Lack Of Rear Grab Bar In The Restroom: Mr. Uriel personally identified that the restroom lacks a rear grab bar by the toilet. This barrier affected him because, due to his chronic osteoarthritis in his sacroiliac joints, he needs support to sit and stand up safely. The absence of this bar forced him to put more pressure on his legs and back, causing him pain and increasing his risk of falling.

22.8.    Grab Bar Improperly Positioned In The Restroom: Mr. Uriel personally identified that the grab bar in the restroom is placed too far from the toilet, preventing him from using it properly. This barrier affected him because, without a secure support point, he had to make an extra effort to stand up, causing pain in his back and joints. Additionally, the lack of stability increased his sense of insecurity while moving inside the restroom.

22.9.    Paper Towel Dispenser Too High: Mr. Uriel personally identified that the paper towel dispenser is placed at a high position, making it difficult for him to use. This barrier affected him because, due to his cervical radiculopathy, raising his arms above a certain height causes him pain and stiffness in his neck and shoulders. When trying to reach the dispenser, he experienced discomfort and had to exert extra effort to grab the paper towels.

22.10.    Soap Dispenser Too High: Mr. Uriel personally identified that the soap dispenser in the restroom is placed at a high position, making it difficult to reach. This barrier affected him because, due to his osteoporosis and cervical radiculopathy, stretching his arm to reach the dispenser caused pain in his shoulders and back. Additionally, the elevated position forced him into an awkward posture, increasing his physical discomfort.

22.11.    Restroom Dimensions Too Small: Mr. Uriel personally identified that the restroom dimensions are too small for someone using a walker. This barrier affected him because he had difficulty maneuvering inside the space, making him feel insecure and physically uncomfortable. Without enough room to move comfortably, he had to perform forced movements, which increased his back and joint pain.

22.12.    Sink Faucet Too High: Mr. Uriel personally identified that the sink faucet in the restroom is placed too high, making it difficult to use. This barrier affected him because, due to his cervical radiculopathy, bending and stretching his arm to turn on the faucet caused him pain in his neck and shoulders. Additionally, this discomfort prolonged his physical effort, leading to even more tension in his back.

22.13.   On October 31, 2024, we sent an extrajudicial letter to Farmacia Lorraine at the email address accounting@farmacialorraine.com. In response to this communication, on November 8, 2024, we received a message from recursoshumanos@farmacialorraine.com, informing us that they would proceed with the necessary improvements and adjustments regarding the architectural barriers personally identified by our client. That same day, we replied, expressing our willingness to reach an extrajudicial agreement that would ensure the full and effective compliance of Farmacia Lorraine's commitment to removing these barriers. However, we received no response. Given their silence, we followed up on November 13, 2024. Subsequently, on November 18, 2024, the pharmacy's legal representative, attorney Conrado Manfredy, responded with a letter sent from his email manfredylawfirm@gmail.com. In his communication, he stated, in essence, that the proposed agreement was "unnecessary and inappropriate," arguing that the pharmacy already planned to remove the barriers and that, moreover, the processes related to contracting work, design, drafting plans, obtaining permits, and so forth were lengthy and their completion uncertain. As a result of these communications, it became clear that, according to the defendant, Mr. Uriel was expected to simply rely on the uncertain promise of the pharmacy's representative, without any guarantee of compliance or an estimated timeframe for the removal of the barriers. This response demonstrates a blatant disregard for the right of access for people with disabilities, highlighting the discrimination Mr. Uriel faces in his effort to access an environment that is accessible and free of obstacles.

22.14.    The barriers on the property could be eliminated by ensuring compliance with accessibility standards, such as resurfacing the parking lot to make it smooth and slip-resistant, repainting faded markings to clearly define accessible spaces, and repositioning signage to be visible from a distance. The illegal parking on the sidewalk in front of Farmacia Lorraine should be strictly enforced and eliminated to ensure safe pedestrian access. Additionally, the business should lower the counter height, install an automatic or lightweight entrance door, and make necessary restroom modifications, such as adding a properly positioned rear grab bar, relocating the existing grab bar for better accessibility, and increasing restroom dimensions to accommodate mobility aids like walkers. Other improvements should include lowering the soap and paper towel dispensers, as well as adjusting the height of the sink faucet, to prevent unnecessary strain and discomfort for individuals with disabilities. By implementing these changes, the establishment would provide a safer and more accessible environment for all visitors, particularly those with mobility impairments like Mr. Uriel.

22.15.    Due to the architectural barriers he has encountered, Mr. Uriel has faced significant economic losses. On several occasions, he has attempted to visit businesses in the Municipality of Ponce, including Farmacia Lorraine, only to find that he could not safely access the premises. As a result, he was forced to leave, return later, or find alternative locations better suited to his mobility needs. These situations have led to additional transportation costs, wasted time, and unnecessary expenses, causing him financial hardship. If these establishments

were fully accessible, Mr. Uriel would not have faced such difficulties, and these financial burdens could have been avoided.

### _Responsibility of the Municipality of Ponce and La Nueva Casa Del Chef, Inc. - La Casa del Chef_

23. Mr. Uriel enjoys visiting La Casa Del Chef because he has always found the food to be exceptional, exceeding all his expectations. He loves the variety of dishes they offer, such as the rodaballo filet, steak filet with onions, mofongo with grouper, chicken fingers, churrasco with mofongo, and fried pork meat, all prepared with exquisite flavor. Additionally, he considers the appetizers and soups to be unmatched, with a quality that further enhances his dining experience. To complete his meal, he enjoys the restaurant's desserts, especially the vanilla ice cream, which he finds to be a delicious treat and the perfect ending to an excellent evening at La Casa Del Chef. However, he has attempted to visit the restaurant in January, March, and April of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place only to not be able to enjoy a satisfying and equal experience. His last visit was on January 24, 2025, and as a result, he feels discouraged from returning. Since he uses a walker to move around, he fears experiencing another discriminatory situation, as he did during his last visit. Specifically, Mr. Uriel personally identified the following architectural barriers at La Casa Del Chef:

   23.1. Uneven And Unpaved Ground: Mr. Uriel personally identified that the parking lot of the establishment had an unpaved, highly uneven surface covered with small stones that made walking difficult. While moving with his walker, the unstable terrain caused him to stumble multiple times, resulting in pain in his spine and sacroiliac joints due to the abrupt movements he had to make to keep his balance.

Additionally, the extra effort required to navigate the rough surface increased the strain on his lower back, worsening the discomfort caused by his damaged lumbar disc.

23.2.   Lack Of Signage And Marked Accessible Parking Spaces: Mr. Uriel personally identified that the parking lot lacked signage or markings indicating an accessible parking space with proper dimensions. Unable to find a suitable space, he had to exit the vehicle in an area not designed for individuals with disabilities, making it difficult for him to get out. The absence of an appropriately sized space made maneuvering with his walker challenging, forcing him to make uncomfortable and strained movements that caused pain in his lower back and sacroiliac joints as he tried to steady himself.

23.3.   Excessively Heavy Entrance Door: Mr. Uriel personally identified that the accessible entrance door of the establishment was too heavy for him to open by himself. When he attempted to push it, he immediately felt pain in his spine due to the force he had to exert with his arms and the strain this placed on his lower back. Despite his efforts, he was unable to fully open the door, and the establishment's staff had to assist him. The resistance of the door exacerbated his lumbar radiculopathy, causing a burning sensation in his lower back and weakness in his arms.

23.4.   Loose Mat In Entrance Hallway: Mr. Uriel personally identified that the hallway in front of the designated accessible entrance had a black mat that was not fully adhered to the floor. As he walked over it with his walker, the mat folded under his feet, causing one of his steps to be unstable. This forced him to stop abruptly

to avoid tripping, which triggered sharp pain in his spine due to the sudden effort to regain stability.

23.5.    Lack Of An Accessible Route To The Restrooms: Mr. Uriel personally identified that there was no accessible route from the designated entrance to the restrooms inside the establishment. To reach them, he had to pass through a dark brown double wooden door, which required significant force to push open. When he tried to open it, he experienced sharp pain in his lower back and sacroiliac joints due to the effort required with his arms while simultaneously trying to keep his balance with his walker. This made navigating inside the establishment a painful and frustrating experience for him.

23.6.    Lack Of Accessible Restroom Signage: Mr. Uriel personally identified that the establishment did not have signage indicating the location of an accessible restroom for individuals with disabilities. As a result, he had to move around the premises searching for an appropriate restroom, which required unnecessary physical effort that caused him pain in his back and fatigue in his legs due to his lumbar radiculopathy.

23.7.    Heavy Men's Restroom Door: Mr. Uriel personally identified that the men's restroom door was heavy to open. When he tried to push it, he experienced intense pain in his spine due to the force he had to exert with his arms and the strain this placed on his lower back. The pressure on his sacroiliac joints made it difficult for him to maintain stability with his walker, making entering the restroom a painful and frustrating experience.

23.8.    Lack Of Rear Grab Bar And Poorly Positioned Side Grab Bar: Mr. Uriel personally identified that the men's restroom did not have a rear grab bar and that the side grab bar was poorly positioned, as it was too far from the toilet and placed diagonally above the toilet paper dispenser, making it unusable. When he tried to use it for support, he realized that he could not properly stabilize himself, forcing him to exert additional effort with his body to sit and stand. This lack of support caused severe pain in his lower back and sacroiliac joints and made movement difficult due to the weakness caused by his lumbar radiculopathy.

23.9.    Sink Base Preventing Frontal Approach: Mr. Uriel personally identified that the men's restroom sink had a brown-colored base that prevented frontal approach with his walker. When he attempted to wash his hands, he had to lean forward to reach the faucet, which placed unnecessary pressure on his lumbar spine. This forced posture caused sharp pain in his lower back, making it difficult for him to complete the hygiene task comfortably and safely.

23.10.   Faucet Positioned Too High: Mr. Uriel personally identified that the sink faucet was positioned too high. When he tried to reach it, he had to stretch his arms and slightly lift himself, which caused immediate discomfort in his shoulders and increased pain in his lumbar spine. Due to the difficulty in using the faucet, washing his hands was an uncomfortable and painful process for him.

23.11.   Mirror Positioned Too High: Mr. Uriel personally identified that the men's restroom mirror was positioned too high, preventing him from seeing himself properly while trying to adjust his appearance. To use it, he had to lean forward and tilt his head up, which caused pain in his cervical spine due to his bilateral

63

radiculopathy. This barrier prevented him from using the mirror effectively and caused discomfort during his time in the restroom.

23.12.   The barriers on the property could be eliminated by making necessary modifications to ensure accessibility for individuals with disabilities. Paving and leveling the parking lot would provide a stable surface for safe mobility, while adding proper signage and marking accessible parking spaces with the required dimensions would facilitate access for those who rely on mobility aids. Replacing the excessively heavy entrance door with an automatic or lighter door would allow Mr. Uriel and others with similar conditions to enter the establishment independently and without experiencing pain. Securing the loose mat in the entrance hallway or removing it entirely would prevent tripping hazards, ensuring a safer entry. Establishing a fully accessible route from the entrance to the restrooms by removing or modifying the heavy double wooden door would eliminate the physical strain required to access essential facilities. Additionally, installing clear and visible signage indicating the location of accessible restrooms would reduce unnecessary movement and discomfort for individuals searching for an appropriate restroom. In the men's restroom, replacing the heavy door with a lighter one or installing an automatic mechanism would make entry less physically demanding. Installing a properly positioned rear grab bar and adjusting the side grab bar to be horizontally aligned and within reach would provide necessary support for individuals using mobility aids. Removing the sink's obstructive base would allow frontal access for individuals using walkers, while lowering the faucet and mirror to an accessible height would enable Mr. Uriel and

others with similar conditions to use these amenities without discomfort. By implementing these modifications, La Casa Del Chef would create an environment that is inclusive and compliant with accessibility standards, allowing individuals with disabilities to enjoy their dining experience without facing unnecessary physical challenges.

23.13.   Mr. Uriel has faced numerous architectural barriers that have not only affected his mobility but also caused him direct financial losses. On several occasions, upon arriving at establishments within the Municipality of Ponce, such as La Casa Del Chef, he discovered that he could not access the premises due to the physical barriers present. In such cases, he was forced to leave, return at a later time, or seek alternative locations better suited to his mobility needs. This has resulted in additional transportation costs, wasted time, and unnecessary expenses, causing him financial harm that could have been avoided if these places had been fully accessible.

### ***Responsibility of the Municipality of Ponce and Rauced Inc. - Campioni Pizza Birra & Tapas***

24.   Mr. Uriel is interested in visiting Campioni Pizza Birra & Tapas due to his knowledge of the excellent quality of its food. He knows that the pizza, salad, and bruschetta they offer are delicious and made with fresh ingredients. Additionally, he is drawn to the variety of beverages, especially the sangrias, which he knows for their delightful taste. These aspects make Campioni Pizza Birra & Tapas an ideal destination for him to enjoy a great meal in a pleasant atmosphere. However, he has attempted to visit the restaurant in February, April, and July of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place only to not be able to

enjoy a satisfying and equal experience. His last visit was in January 2025, and as a result, he feels discouraged from returning. Since he uses a walker to move around, he fears experiencing another discriminatory situation, as he did during his last visit. Specifically, Mr. Uriel personally identified the following architectural barriers at Campioni Pizza Birra & Tapas:

24.1.    Narrow Sidewalks With Obstructions: Mr. Uriel identified that the sidewalks around the establishment were too narrow and blocked by traffic signs and poles, making it difficult to move with his walker. He had to stop repeatedly and make awkward maneuvers, causing strain on his lower back and sacroiliac joints, making the experience painful and uncomfortable.

24.1.1.    Mr. Uriel personally identified that the sidewalks surrounding the establishment were narrow and obstructed by traffic signs and poles, making it difficult for him to move with his walker. As he attempted to navigate these sidewalks, he had to stop repeatedly and make uncomfortable maneuvers to avoid the obstacles, which caused strain on his lower back and sacroiliac joints. The lack of adequate space to move with his walker made the experience uncomfortable and painful for him.

24.1.2.    Despite being aware of these accessibility barriers, the municipality has chosen not to take any corrective action, effectively neglecting its duty to ensure safe and accessible pathways for individuals with disabilities. This deliberate inaction not only exacerbates the physical challenges faced by Mr. Uriel but also fosters and perpetuates systemic discrimination against individuals who rely on mobility aids. By failing to address these issues,

the municipality is reinforcing an environment where people with disabilities are excluded from safely and comfortably navigating public spaces.

24.2. Lack Of Signage For An Accessible Entrance: Mr. Uriel personally identified that the main entrance of the establishment did not have signage indicating an accessible entrance. This forced him to walk around the building searching for an appropriate access point for his walker. Due to the lack of visible information, he had to stay outside the main entrance and call out for help. An employee directed him to enter through the back of the establishment, but there was no signage indicating that this was an accessible entrance. This lack of guidance caused him to waste time and effort, leading to fatigue and physical discomfort due to his mobility difficulties.

24.3. Back Entrance Without A Ramp And With A Step: Mr. Uriel personally identified that the back entrance, which was indicated by employees as accessible, did not have a ramp. Instead, there was a step that prevented him from entering independently. To get inside, an employee had to assist him in lifting his walker, which was both uncomfortable and frustrating for him. The lack of an adequate access point caused pain in his lower back as he had to support himself while stepping up, further increasing his dependence on others for something as basic as entering the establishment.

24.4. Stairs As The Only Access To A Section Of The Establishment: Mr. Uriel personally identified that inside the establishment, there was an additional seating area one level below, which was an open and cozy space, but it could only be

accessed by stairs. Due to his health conditions and the fact that he uses a walker, he was unable to access this section of the establishment. Being unable to reach a part of the venue made him feel excluded and limited his experience at the location, as he was not given the same seating options as other customers.

24.5.    High Counter Without Adequate Depth: Mr. Uriel personally identified that the payment and customer service counter was too high and lacked sufficient depth for him to approach it frontally with his walker. When he attempted to reach the counter to pay, he had to stretch and make unnecessary effort to be attended to. This posture caused him pain in his back and sacroiliac joints, making the payment process uncomfortable and difficult.

24.6.    Narrow Men's Restroom With Limited Maneuvering Space: Mr. Uriel personally identified that the men's restroom was too narrow, preventing him from moving freely with his walker. When he attempted to enter, he was forced to make difficult movements, which caused pain in his lower back due to the extra effort required to maneuver in such a tight space. The lack of adequate space made his experience in the restroom extremely uncomfortable.

24.7.    Sink Base Preventing Frontal Approach: Mr. Uriel personally identified that the men's restroom sink had a base that prevented him from approaching it frontally with his walker. When he attempted to wash his hands, he had to lean forward, which caused sharp pain in his lower back and sacroiliac joints. The forced position he had to adopt turned a simple task into an uncomfortable and painful process for him.

24.8.    Extremely Narrow Restroom Stall With Obstructions: Mr. Uriel personally identified that the only stall in the men's restroom was extremely narrow, preventing him from entering with his walker. When he attempted to use it, he found that the limited space was further obstructed by a black trash bin located to the left of the toilet and a paper dispenser, making movement even more difficult. As a result, he had to make uncomfortable maneuvers that caused pain in his back and joints.

24.9.    Lack Of Grab Bars In The Restroom: Mr. Uriel personally identified that the men's restroom did not have lateral or rear grab bars. Without adequate support, he had to make additional effort with his arms and back to sit and stand from the toilet. This lack of support caused him pain in his spine and sacroiliac joints, making him feel unsafe due to the lack of stability in the restroom.

24.10.   Inaccessible Location Of The Toilet Flush Control: Mr. Uriel personally identified that the toilet flush control was located on the right side, against the stall wall, making it difficult to reach. To activate it, he had to twist his body into an uncomfortable position, which caused pain in his back and cervical spine due to his bilateral radiculopathy. The poor placement of the toilet control further complicated his restroom experience, making it uncomfortable and painful.

24.11.   Obstructed Accessible Route With A Steep Ramp: Mr. Uriel personally identified that there was no accessible route from the entrance to the interior of the establishment and the restrooms. In front of the accessible entrance, there was a short path leading to a ramp with an excessively steep incline. When attempting to descend, he faced great difficulty due to the extreme slope. Even though the staff

had to accompany him to the exit to prevent him from falling, the descent caused him significant discomfort and pain in his lower back due to the strain he had to exert to maintain control with his walker.

24.12.    Loose Floor Mat Inside The Establishment: Mr. Uriel personally identified that near the counter, on the way to the restrooms, there was a floor mat that was not properly adhered to the ground. When he attempted to walk over it with his walker, the mat shifted, causing him to momentarily lose stability. This sudden misstep triggered sharp pain in his spine due to the effort he had to make to regain his balance.

24.13.    The barriers on the property could be eliminated by implementing necessary accessibility modifications, including widening the sidewalks and removing obstructions to ensure a clear path for mobility aid users. Proper signage indicating accessible entrances should be installed to prevent confusion and unnecessary strain for individuals with disabilities. The back entrance should be equipped with a ramp to provide independent access without requiring assistance. Additionally, the establishment should ensure that all sections of the venue are accessible by installing a ramp or lift where stairs are currently the only option. Counters should be lowered or designed with adequate depth to accommodate individuals using walkers or wheelchairs. Restroom facilities should be redesigned to provide ample maneuvering space, including widening the stalls and ensuring that sinks allow for frontal approach. Grab bars should be installed near the toilet to provide stability, and the flush control should be repositioned for easy access. To enhance safety, the steep ramp should be modified to meet

accessibility standards, and any loose floor mats should be secured or replaced to prevent tripping hazards. By implementing these changes, the establishment can ensure a more inclusive environment, allowing individuals like Mr. Uriel to navigate the property safely and comfortably without unnecessary physical strain or exclusion.

24.14.    Mr. Uriel has encountered several architectural barriers during his visits to Campioni Pizza Birra & Tapas within the Municipality of Ponce, particularly on the sidewalks, which were blocked by traffic signs and poles, making it difficult for him to move with his walker. On multiple occasions, he arrived at the establishment only to face these obstacles, preventing him from entering or fully enjoying the services. In these cases, he was forced to leave, return at another time, or seek alternative locations that could better accommodate his mobility needs. As a result, he has incurred additional transportation costs, wasted time, and unnecessary expenses, causing him financial harm that could have been avoided if this establishment had been fully accessible.

### *__Responsibility of the Municipality of Ponce and Wam Food Cuisine L.L.C. - Wam Food Cuisine__*

25.    Mr. Uriel enjoys visiting Wam Food Cuisine, as he considers it the perfect place for pizza lovers. With a menu featuring innovative flavor combinations, each pizza is a true culinary masterpiece. Additionally, the Caesar Salad is one of his favorite dishes, a salad he enjoys for its balance of fresh flavors. For Mr. Uriel, Wam Food Cuisine represents a unique dining experience that he looks forward to enjoying. However, he has attempted to visit the restaurant in January, May, and June of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place

only to not be able to enjoy a satisfying and equal experience. His last visit was on January 31, 2025, and as a result, he feels discouraged from returning. Since he uses a walker to move around, he fears experiencing another discriminatory situation, as he did during his last visit. Specifically, Mr. Uriel personally identified the following architectural barriers at Wam Food Cuisine:

25.1.  Faded Paint in the Accessible Parking Space: Mr. Uriel personally identified that the paint in the accessible parking space was faded, making it difficult to see the designated spots for individuals with disabilities. Upon arriving at the establishment, he struggled to locate the accessible parking area, forcing him to circle around in search of a suitable spot. This situation increased his discomfort and stress, as his mobility is limited and he relies on his walker for safe movement.

25.2.  Damaged and Cracked Ramp: Mr. Uriel personally identified that the ramp forming part of the accessible route from the parking area to the entrance was in poor condition and had visible cracks. While attempting to use it with his walker, he had to exert extra effort to maneuver around the uneven surface, causing significant strain on his sacroiliac joints and lower back. This exacerbated the pain he experiences due to his osteoarthritis and lumbar radiculopathy.

25.3.  Heavy and Difficult-to-Open Main Door: Mr. Uriel personally identified that the main entrance door was too heavy for him to push on his own. As he attempted to open it, he had to apply excessive force with his arms, resulting in pain in his back and tension in his joints. Due to his limited mobility and reliance on a walker, he was unable to enter independently and had to wait for an employee's assistance,

making him feel frustrated and dependent on others for something as basic as entering the establishment.

25.4.    High and Obstructed Service and Payment Counter: Mr. Uriel personally identified that the service and payment counter was too high, preventing him from reaching it comfortably while using his walker. Additionally, it was obstructed by tall chairs, which he could not use due to his health conditions. As he tried to approach the counter, he had to stretch awkwardly, causing pain in his back and sacroiliac joints. This lack of accessibility made him feel excluded and prevented him from completing his transaction independently.

25.5.    Lack of Signage for an Accessible Restroom: Mr. Uriel personally identified that the restroom door did not have accessibility symbols, nor was there any nearby signage indicating the location of an accessible restroom. When he needed to use the restroom, he had to search throughout the establishment and ask employees for directions, which was both inconvenient and exhausting. The lack of clear guidance increased his fatigue and frustration as he struggled to find a suitable facility for his needs.

25.6.    Narrow Restroom with Limited Space for a Walker: Mr. Uriel personally identified that the restroom was too narrow for him to maneuver with his walker. As he attempted to enter, he had to make awkward movements, causing strain on his back and joints due to his radiculopathy and osteoarthritis. The lack of adequate space prevented him from moving freely, making his experience in the restroom extremely uncomfortable and painful.

25.7.    Excessively High Mirror: Mr. Uriel personally identified that the restroom mirror was placed at an excessively high position, preventing him from seeing his reflection without stretching uncomfortably. When he attempted to use the mirror, he had to lean forward and tilt his head, which caused significant pain in his back and cervical spine due to his bilateral radiculopathy. This discomfort made simple hygiene tasks difficult for him.

25.8.    Lack of Grab Bars in the Restroom: Mr. Uriel personally identified that the restroom lacked both rear and side grab bars, making it difficult and painful for him to sit and stand from the toilet. Without proper support, he had to exert additional effort using his arms and back, which caused discomfort in his spine and sacroiliac joints. The absence of these bars compromised his stability and made him feel unsafe while using the restroom.

25.9.    Toilet Obstructed by a Trash Can and Toilet Paper Dispenser: Mr. Uriel personally identified that the toilet was obstructed by a black trash can in front of it and a vertically positioned toilet paper dispenser. This further reduced the available space, making it difficult for him to access the toilet with his walker. As he tried to position himself, he had to perform awkward maneuvers, causing pain in his lower back and joints due to the additional effort required.

25.10.    Exposed Pipes Under the Sink Preventing Frontal Approach: Mr. Uriel personally identified that the restroom sink had exposed pipes beneath the mirror, preventing him from approaching it frontally with his walker. When he attempted to wash his hands, he had to lean forward in an uncomfortable position, which caused sharp

pain in his back and sacroiliac joints. This barrier forced him into an awkward posture, making a simple hygiene task unnecessarily painful and difficult.

25.11.    The barriers on the property could be eliminated by implementing necessary accessibility modifications to ensure compliance with accessibility standards and provide a safe and inclusive environment for individuals with disabilities. The faded paint in the accessible parking space should be refreshed to clearly mark the designated spots, making them easily identifiable for individuals with mobility impairments. The damaged and cracked ramp should be repaired or replaced with a smooth and stable surface that meets accessibility guidelines, allowing for safe and effortless use by individuals relying on mobility aids. To address the heavy and difficult-to-open main door, an automatic door opener should be installed, or the door should be replaced with a lighter, accessible option to enable independent entry. The high and obstructed service and payment counter should be lowered or equipped with an accessible section that allows individuals using walkers or wheelchairs to approach and complete transactions comfortably, and the tall chairs blocking access should be removed or repositioned to ensure an unobstructed path. The lack of signage for an accessible restroom can be resolved by adding clear and visible accessibility symbols on the restroom door and placing directional signs throughout the establishment to indicate the location of the accessible restroom. The narrow restroom should be remodeled to provide sufficient maneuvering space for individuals using walkers, and if expansion is not possible, adjustments such as reconfiguring fixtures and repositioning obstacles should be made to maximize available space. The mirror should be

lowered to an appropriate height, ensuring that individuals using mobility aids can use it without discomfort or unnecessary strain. The absence of grab bars should be addressed by installing properly positioned rear and side grab bars near the toilet, providing essential support for individuals to sit and stand safely. The obstruction of the toilet caused by the trash can and toilet paper dispenser should be eliminated by relocating these fixtures to areas that do not interfere with the usability of the space for individuals with mobility impairments. To ensure proper access to the sink, the exposed pipes should be insulated or repositioned to allow for a frontal approach with a walker, ensuring that individuals can wash their hands comfortably and without physical strain. By implementing these modifications, the establishment will create a more accessible and inclusive environment, reducing the risk of physical discomfort and ensuring that individuals with disabilities, like Mr. Uriel, can navigate the space safely and independently.

25.12.    In addition to the numerous architectural barriers Mr. Uriel has encountered at Wam Food Cuisine, he has also faced financial losses due to these accessibility issues. On several occasions, Mr. Uriel arrived at Wam Food Cuisine, only to find that he was unable to enter because of physical obstacles that prevented safe access. As a result, he was forced to leave, return later, or find an alternative location that could better accommodate his mobility needs. This situation has led to extra transportation costs, wasted time, and unnecessary expenses, causing him financial harm that could have been avoided if the establishment had been fully accessible.

### *Responsibility of the Municipality of Ponce and Tortilleria Monterrey LLC - Taquería Monterrey*

26.     Mr. Uriel Sepulveda is interested in visiting the establishment known as Taquería Monterrey, as he is aware that the food is incredible, as well as the service. In particular, he is eager to try their Veggie Tacos, which he has heard are delicious. However, Mr. Sepulveda has been aware of the architectural barriers at the establishment since mid-February 2024, and despite several occasions when he has wanted to visit, including in May, July, and August of 2024, he has been unable to do so due to the barriers. Given his health condition requiring the use of a walker, he feels deterred from visiting. He believes that visiting in its current state would expose him to a discriminatory experience. He is specifically aware of the following architectural barriers at Taquería Monterrey:

26.1.     Obstructed Sidewalks: Mr. Sepulveda is aware that the sidewalks in front of the business are too narrow and lack ramps, making mobility difficult for him. Due to his health condition, which requires the use of a walker, he needs wide and stable surfaces to walk safely. The narrow sidewalks and absence of ramps prevent him from moving without pain or instability, increasing his risk of injury and limiting his access to the establishment. These barriers make him feel unsafe and discourage him from visiting the business.

26.1.1.     Mr. Sepulveda is aware that the sidewalks in front of the business are too narrow, creating a significant barrier to his mobility. Due to his health condition, which requires the use of a walker, he needs wide and stable surfaces to walk safely, avoiding tripping or falling. The narrow sidewalks prevent him from moving comfortably, forcing him to take extreme precautions that increase his physical discomfort and the risk of injury.

This barrier makes it difficult for him to navigate the area safely and makes him feel insecure when moving around.

26.1.2.    Additionally, Mr. Sepulveda is aware of the absence of ramps on the sidewalks in front of the business, which further increases the barriers to his mobility. The lack of ramps prevents him from overcoming curbs without experiencing pain or instability, further restricting his ability to access the establishment safely. This situation forces him to seek alternative routes that are not always viable or require extra effort, exposing him to unnecessary risks and limiting his independence in getting around.

26.1.3.    The Municipality of Ponce is aware of these deficiencies in public infrastructure but has taken no action to address them. Its inaction worsens Mr. Sepulveda's situation, as he is forced to face these barriers daily without any accessible alternative. The municipality's failure to act perpetuates a state of inequality and discrimination that continues to affect his right to move safely and with dignity.

26.2.    Counter Too High: Mr. Uriel Sepulveda is aware that the counter at the establishment is too high, making it difficult for him to access the products and services offered. Due to his health condition, which includes a damaged lumbar disc, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis in the spine and sacroiliac joints, he is unable to comfortably reach the counter without straining his posture or experiencing pain. This barrier

prevents him from placing orders or interacting with staff equitably, causing frustration and discouraging him from visiting the establishment.

26.3.    Counter Lacks Adequate Depth for Frontal Approach: Mr. Sepulveda is aware that the counter at the establishment does not have the necessary depth to allow a frontal approach with his walker. His health condition requires him to maintain a stable and secure posture when using support surfaces, but the lack of sufficient space prevents him from comfortably approaching the counter without compromising his balance. This barrier makes it difficult for him to interact with the business and forces him into uncomfortable positions that worsen his pain and physical limitations.

26.4.    Restroom with Incorrect Dimensions: Mr. Sepulveda is aware that the restroom at the establishment does not have the proper dimensions to allow safe access and use for individuals with limited mobility. Because his health condition significantly restricts his movement, he needs enough space to maneuver with his walker and make necessary transitions safely. The lack of adequate space in the restroom prevents him from using it independently and safely, putting him in a vulnerable situation and discouraging him from visiting the establishment.

26.5.    The barriers on the property could be eliminated by widening the sidewalks and installing properly designed curb ramps to allow safe navigation for individuals using walkers. Lowering the counter height and providing adequate depth for a frontal approach would enable equitable access to services without forcing individuals into uncomfortable or painful positions. Additionally, modifying the restroom to meet accessibility standards by ensuring sufficient space for

maneuvering would allow individuals with mobility impairments to use it independently and safely. Implementing these changes would enhance accessibility, promote inclusivity, and ensure compliance with ADA standards.

26.6.    Mr. Uriel Sepúlveda has also suffered economic losses due to the accessibility barriers present at De Jesús Restaurant and the poor condition of the surrounding infrastructure. On multiple occasions, he has spent time and resources to visit the establishment, only to find that the barriers prevented him from having a safe and equal experience. The obstructed sidewalks, excessively steep entrance ramp, unstable mat, high counters, and inaccessible restroom features forced him to leave without being able to enjoy his visit. As a result, he has incurred additional transportation expenses, wasted time, and faced unnecessary inconveniences. These financial burdens could have been avoided if both the establishment and its surrounding public infrastructure were fully accessible.

### *Responsibility of the Municipality of Ponce and De Jesus Restaurant Inc. - De Jesus Restaurant*

27.    Mr. Uriel is highly interested in returning to De Jesús Restaurant, where every visit has been an exceptional culinary experience. He has enjoyed the freshness and balance of flavors in the dishes, especially the fish and lobster, as well as the rice and steak, despite it being a seafood-focused restaurant. He also highlights the cocktails as part of his great experience. His last visit was on January 25, 2025, and he has always considered this restaurant his top choice in the area. However, he has attempted to visit the restaurant in the months of August, September, and November of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place only to not be able to enjoy a satisfying and equal experience. As a result, he feels

discouraged from returning. Given that he uses a walker, he fears experiencing discrimination again, as he did during his last visit. Mr. Uriel identified the following barriers:

27.1.  Obstructed Sidewalks: The sidewalk in front of the establishment is blocked by utility poles, forcing Mr. Uriel Sepúlveda onto the street, exposing him to danger. Due to his spinal and joint conditions, walking on uneven asphalt caused him pain and increased his risk of falling. This barrier left him feeling excluded and restricted in his right to move freely.

27.1.1.  The sidewalk in front of the establishment is completely blocked by utility poles, preventing people with mobility impairments from using it. Mr. Uriel Sepúlveda was unable to navigate the sidewalk safely, as the poles forced him to walk on the street, exposing him to traffic and a dangerous environment. Due to his need for a walker, walking on the uneven and sloped asphalt was not only difficult but also caused him significant pain, increasing his risk of falling. This obstruction left him with no safe alternative to move through the area.

27.1.2.  Despite the clear accessibility issue, the municipality is aware of the situation but has chosen not to take any action to correct it. By ignoring this obstacle, the authorities continue to neglect the needs of individuals with mobility impairments, leaving them without safe access to the sidewalk. This inaction perpetuates the discrimination exercised by the municipality against people with disabilities, such as Mr. Uriel Sepúlveda, by denying them their right to move safely and equally. As a result, Mr.

Sepúlveda felt excluded and frustrated, as this barrier denied him the basic right to navigate public spaces safely, like any other individual.

27.2.    Steep Entrance Ramp And Narrowed Pathway: The entrance of the establishment has an excessively steep ramp, making it difficult for people with reduced mobility to use safely. Additionally, in front of the ramp, there are two long cement bars that significantly reduce the width of the entrance passage leading to the main door. When trying to enter the establishment, Mr. Uriel Sepúlveda found that the steep slope of the ramp increased the pressure on his spine and joints, causing him pain and instability. Since he needs a walker to maintain balance, the lack of a proper access route posed a high risk of falling. Furthermore, the reduced space due to the cement bars made maneuvering even more difficult, forcing him to navigate a narrow area, which increased his sense of insecurity and discomfort.

27.3.    Entrance Mat That Obstructs Passage: Right in front of the main entrance, there is a mat that is not properly secured, creating an obstacle for people with reduced mobility. The mat can easily move or fold, creating uneven surfaces that make it difficult to pass. Upon entering the establishment, Mr. Uriel Sepúlveda struggled to move his walker over the mat, as it bunched up under its wheels, increasing the risk of tripping and falling. Due to his spinal and joint conditions, a trip or fall could have serious consequences, such as fractures or additional injuries. The presence of this unstable mat made him feel vulnerable and uncertain about his safety inside the establishment.

27.4.    Excessively High Payment Counter: The payment counter in the establishment is excessively high, making it difficult for individuals with mobility impairments to reach. When attempting to complete his payment, Mr. Uriel Sepúlveda struggled to reach the counter, as its excessive height forced him to stretch while trying to maintain balance with his walker, increasing his discomfort and instability. His spinal and joint conditions made it painful to extend his arms upward, and the lack of proper support while reaching aggravated his sense of insecurity. This barrier caused fatigue, frustration, and discomfort, as he was unable to complete the transaction comfortably and independently.

27.5.    Lack Of Depth Under The Payment Counter For Front Approach: The payment counter lacks sufficient depth underneath to allow for a proper front approach, preventing people with mobility impairments from getting close enough for support. Mr. Uriel Sepúlveda was unable to position himself adequately in front of the counter, as there was no space to accommodate his walker, forcing him to remain at an awkward distance. This lack of support increased tension in his spine and joints, making it difficult for him to maintain stability while trying to handle his wallet and other items. The absence of an accessible design forced him into an uncomfortable posture, making the transaction physically straining and frustrating.

27.6.    Urinal Placed Too High In The Men's Restroom: Inside the men's restroom, the urinal is positioned at an inaccessible height, making it difficult for individuals with mobility impairments to use comfortably. Mr. Uriel Sepúlveda struggled to reach the urinal properly, as his spinal and joint conditions prevent him from

standing for long periods or stretching without experiencing significant pain and discomfort. Additionally, due to the height of the urinal, he had to adjust his posture in an unstable manner, causing him to lose balance while trying to use it. This situation increased his risk of falling, making the restroom unsafe and inaccessible for him.

27.7.    Soap Dispenser Placed Too High In The Men's Restroom: The soap dispenser in the men's restroom is mounted at a height that is difficult to reach for people with mobility impairments. Mr. Uriel Sepúlveda was unable to comfortably access the dispenser, as stretching his arms upward caused strain on his spine and joints, worsening his pain. More importantly, because he uses a walker for support, reaching up caused him to lose balance, making the task unsafe and forcing him to readjust his stance to avoid falling. The lack of an accessible placement prevented him from washing his hands independently and safely.

27.8.    Paper Towel Dispenser Placed Too High In The Men's Restroom: The paper towel dispenser in the men's restroom is installed at an excessively high position, making it difficult for individuals with mobility impairments to use. Mr. Uriel Sepúlveda was unable to reach the dispenser without straining his spine and joints, forcing him to stretch in an unstable and unbalanced position. Since he needs to maintain balance with his walker, reaching for a paper towel caused him to lose stability, increasing his risk of falling. The inaccessibility of this feature made it difficult for him to dry his hands without assistance, reducing his independence in the restroom.

27.9.    Flush Control On The Urinal Positioned Too High: In addition to being placed at an inaccessible height, the flush control for the urinal is also positioned too high, making it difficult to reach. Due to his mobility issues, Mr. Uriel Sepúlveda was unable to easily operate the flush mechanism, as stretching to reach it caused him pain and unnecessary strain. This barrier prevented him from using the restroom autonomously and made him feel uncomfortable and frustrated, as the space design did not consider the needs of people with disabilities.

27.10.    Obstacles Around The Toilet: The toilet area contains several barriers that make its use difficult, including a white trash can positioned on the right side and a toilet paper dispenser placed too close to the toilet, restricting the available space. Mr. Uriel Sepúlveda had difficulty positioning himself properly on the toilet, as the reduced space limited his mobility and balance, posing a fall risk and causing discomfort. Due to his condition, he requires enough space to maneuver his walker safely, and the presence of these obstacles increased his sense of insecurity and lack of accessibility in the restroom.

27.11.    The barriers on the property could be eliminated by implementing proper accessibility modifications in compliance with ADA standards. The sidewalk obstructions could be resolved by relocating utility poles to ensure a clear and safe pedestrian path. The steep entrance ramp and narrow passageway should be corrected by reconstructing the ramp with an appropriate slope and removing the cement bars that restrict movement, while the unstable entrance mat should either be removed or securely fixed to prevent tripping hazards. The payment counter must be lowered to an accessible height and designed with sufficient depth

underneath to allow individuals using walkers or wheelchairs to approach comfortably. In the men's restroom, all features—including the urinal, soap dispenser, paper towel dispenser, and flush control—should be repositioned at an appropriate height to allow easy reach without requiring excessive stretching or loss of balance, and obstacles around the toilet should be removed to provide adequate maneuvering space for individuals using mobility aids. By making these necessary modifications, the property would eliminate the barriers preventing Mr. Uriel Sepúlveda and others with mobility impairments from accessing the premises safely and independently, ensuring equal access and compliance with legal accessibility requirements.

27.12.    In addition to the architectural barriers that Mr. Uriel Sepúlveda has encountered at De Jesús Restaurant, he has also suffered economic losses as a direct result of these accessibility issues. On multiple occasions, he has spent time and resources traveling to the restaurant, only to find that the physical barriers prevented him from accessing and enjoying the establishment safely and equally. The obstructed sidewalks, the excessively steep entrance ramp, the unstable entrance mat, the high and inaccessible payment counter, and the restroom's lack of accessibility forced him to leave without being able to fully experience his visit. As a result, he has incurred additional transportation expenses, wasted valuable time, and faced unnecessary inconveniences. These financial burdens could have been avoided if the establishment and the surrounding public infrastructure were fully accessible.

***Responsibility of the Municipality of Ponce and La Pagoda Cream, Inc. -***
***La Pagoda***

28.    Mr. Uriel Sepúlveda enjoys visiting La Pagoda for its consistently fresh and high-quality food, making every visit a satisfying experience. One of his favorite dishes is the boneless spareribs, which are so popular that if he doesn't arrive early, they quickly sell out. He also enjoys their seafood salads, especially the octopus salad, which he considers unmatched in flavor and quality. Additionally, he loves the chicken served at the restaurant, as it is always well-prepared and flavorful. However, he has attempted to visit the restaurant in January, July, and September of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place only to not be able to enjoy a satisfying and equal experience. His last visit was on January 22, 2025, and as a result, he feels discouraged from returning. Given that he uses a walker, he fears experiencing discrimination again, as he did during his last visit. Mr. Uriel identified the following barriers:

28.1.    Excessively High Counter: The payment counter in the establishment was excessively high, making it difficult for individuals with mobility impairments to use. When Mr. Uriel Sepúlveda attempted to pay, he struggled to reach the counter, as its height forced him to stretch while trying to maintain balance with his walker, increasing his discomfort and instability. Due to his spinal and joint conditions, stretching to reach elevated objects caused him pain and fatigue, making the simple act of paying an uncomfortable and frustrating experience.

28.2.    Lack of Depth Under the Counter for Front Approach: The payment counter lacked sufficient depth underneath, preventing individuals with mobility impairments from comfortably approaching it. When Mr. Uriel Sepúlveda

attempted to position himself in front of the counter, he was unable to get close enough for support, as there was no space for his walker underneath. This forced him to maintain an awkward and strained posture, increasing tension in his spine and joints, causing him pain and fatigue. The lack of an accessible design turned a simple task into a physically exhausting and limiting experience.

28.3.  Small Dimensions in the Men's Restroom: The men's restroom was too small, making it difficult for individuals using mobility aids to maneuver inside. Upon entering, Mr. Uriel Sepúlveda struggled to position himself properly, as the limited space restricted his ability to turn with his walker. The cramped layout forced him to twist his body uncomfortably, putting extra pressure on his spine and joints, which caused him significant pain. The lack of adequate space made him feel trapped and unsafe, limiting his independence and increasing his risk of falling.

28.4.  Mirror Placed Too High in the Men's Restroom: The mirror in the men's restroom was positioned at an inaccessible height, making it difficult for individuals with mobility impairments to use. When Mr. Uriel Sepúlveda tried to check his reflection, he was unable to see himself properly without having to stretch and adjust his posture uncomfortably. Since he relies on a walker for support, tilting his body backward to see the mirror caused him to lose balance, making it unsafe for him to use this basic restroom feature. The inaccessibility of the mirror left him frustrated and unable to complete simple personal grooming tasks independently.

28.5.    Toilet Flush Control Positioned on the Closed Side of the Wall in the Men's Restroom: The toilet flush control in the men's restroom was installed on the side of the wall that was difficult to reach, restricting access for individuals with mobility impairments. After using the toilet, Mr. Uriel Sepúlveda was unable to reach the flush control without twisting his body in an unnatural way, which put excessive strain on his lower back and sacroiliac joints. The awkward positioning forced him to lose stability as he stretched, increasing his risk of falling. This poor design prevented him from using the restroom autonomously and made the experience unnecessarily challenging and uncomfortable.

28.6.    Sink Placed Too High in the Men's Restroom: The sink in the men's restroom was installed at an excessive height, making it difficult for individuals with mobility impairments to use comfortably. When Mr. Uriel Sepúlveda tried to wash his hands, he struggled to reach the basin, as he had to extend his arms while balancing with his walker. This unnatural posture caused strain on his shoulders and spine, making the simple act of washing his hands painful and physically demanding. The high placement of the sink significantly reduced his ability to use the restroom independently and safely.

28.7.    Faucets Positioned Too High in the Men's Restroom: The sink faucets in the men's restroom were placed at an excessive height, making it difficult for individuals with mobility impairments to reach them. When Mr. Uriel Sepúlveda attempted to turn on the water, he was forced to extend his arms beyond a comfortable range, causing pain in his joints and lower back. Since he needed to maintain stability

with his walker, reaching for the faucets caused him to lose balance, making it unsafe and frustrating to complete a basic hygiene task.

28.8.    Men's Restroom Door Lacked Accessibility Signage: The men's restroom door had no signage indicating whether it was accessible, creating uncertainty and difficulties for individuals with mobility impairments. Upon reaching the restroom, Mr. Uriel Sepúlveda had no way of knowing if the space was suitable for his needs, forcing him to enter without being sure if he could maneuver with his walker or if the restroom was designed for accessibility. This lack of information prolonged his discomfort and fatigue, as he had to pause and assess the space before using it. The absence of clear signage demonstrated a lack of consideration for accessibility needs, further frustrating Mr. Sepúlveda as he was denied essential information before entering.

28.9.    The barriers on the property could be eliminated by implementing accessibility modifications in compliance with ADA standards, ensuring safe and equal access for individuals with mobility impairments. The excessively high payment counter should be lowered to an appropriate height, and sufficient depth should be added underneath to allow individuals using walkers or wheelchairs to comfortably approach and support themselves while making transactions. In the men's restroom, the dimensions should be expanded to provide enough maneuvering space for individuals using mobility aids, and the mirror, sink, and faucets should be repositioned at an accessible height to prevent users from having to stretch or lose balance while using them. Additionally, the toilet flush control should be relocated to the open side of the toilet, rather than on the closed side against the

wall, to prevent individuals from having to twist their bodies uncomfortably, thereby reducing the risk of falls. Furthermore, the men's restroom door should have clear accessibility signage to indicate whether the space meets accessibility needs, allowing individuals with disabilities to determine if the restroom is suitable before entering. Implementing these modifications would eliminate the barriers that prevented Mr. Uriel Sepúlveda and others with mobility impairments from accessing the establishment safely and independently, ensuring compliance with legal accessibility requirements and fostering a more inclusive environment.

28.10.   Mr. Uriel Sepúlveda has experienced financial losses due to the accessibility barriers present at La Pagoda. On several occasions, he has made the effort to visit the restaurant, investing time and resources, only to be met with physical obstacles that prevented him from accessing the premises safely and enjoying a dignified experience. The high counter, lack of space for proper approach, and the restroom's inadequate design forced him into uncomfortable and physically strenuous situations, making it difficult for him to complete basic tasks independently. As a result, he has faced additional transportation costs, wasted time, and unnecessary expenses, all of which could have been avoided if the establishment had been fully accessible.

### *Responsibility of the Municipality of Ponce and Canton Chino Inc. - Restaurante Villa Dragon*

29.   Mr. Uriel Sepúlveda enjoys visiting Villa Dragón for its unique seasoning and great atmosphere. One of his favorite dishes is the fried chicken, which always exceeds his expectations in flavor and texture. He also enjoys the variety of meats offered at the restaurant, all of which stand out for their excellent preparation and quality. The

combination of well-seasoned food and a pleasant ambiance makes every visit to Villa Dragón an enjoyable experience for him. However, he has attempted to visit the restaurant in February, March, and December of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place only to not be able to enjoy a satisfying and equal experience. His last visit was on January 27, 2025, and as a result, he feels discouraged from returning. Given that he uses a walker, he fears experiencing discrimination again, as he did during his last visit. Mr. Uriel identified the following barriers:

29.1.    Narrow Sidewalks and Lack of Ramps in Front of the Business: The sidewalks in front of the establishment are too narrow and lack ramps, making them difficult to use for individuals with mobility impairments. Mr. Uriel Sepúlveda had to walk along the edge of the sidewalk, increasing the risk of falling. The absence of a ramp also complicated his entry, prolonging his physical effort and aggravating his fatigue and pain.

29.1.1.    The sidewalks in front of the establishment are too narrow and lack access ramps, making them difficult to use for individuals with mobility impairments. When attempting to enter the business, Mr. Uriel Sepúlveda was forced to walk along the edge of the sidewalk, increasing the risk of losing balance and falling. The lack of a ramp also complicated his entry, as he had to look for an alternative access, which prolonged his physical effort and aggravated his fatigue and pain in his spine and joints.

29.1.2.    Despite the clear accessibility issue, the Municipality of Ponce is aware of the situation but has done nothing to address it, thereby perpetuating the

discrimination Mr. Uriel Sepúlveda experiences. By failing to take action, the municipality continues to ignore the needs of individuals with disabilities, leaving them without a safe path to enter the establishment. This inaction further isolates Mr. Sepúlveda and others like him, reinforcing barriers to full participation in public life.

29.2.   Lack of Accessible Parking: The establishment does not have accessible parking for individuals with disabilities, as none of the parking spaces have the proper dimensions or required signage. Without a designated space with enough room to maneuver, Mr. Uriel Sepúlveda had difficulty getting out of his vehicle safely with his walker. The absence of an accessible parking space forced him to park in a regular space, where the limited space complicated his exit from the vehicle and increased the risk of losing balance and falling.

29.3.   Lack of Signage in Parking Spaces: In addition to the lack of accessible spaces, the parking lot does not have any signage indicating the reserved area for people with disabilities or the corresponding fine for those who park there without a disability. Mr. Uriel Sepúlveda, not finding adequate signage, had to search for parking for a longer period, which prolonged the physical effort and increased his fatigue and pain in his joints and spine.

29.4.   Obstacles Inside the Establishment: The payment counter in the establishment is excessively high, making it difficult for individuals with mobility impairments to use. When Mr. Uriel Sepúlveda attempted to pay, he struggled to reach the counter, as its height forced him to stretch while trying to maintain balance with his walker, increasing his discomfort and instability. Due to his spinal and joint

conditions, stretching to reach elevated objects caused him pain and fatigue, making the simple act of paying an uncomfortable and frustrating experience.

29.5.    Excessively High Counter: The payment counter in the establishment is excessively high, making it difficult for individuals with mobility impairments to use. When Mr. Uriel Sepúlveda attempted to pay, he struggled to reach the counter, as its height forced him to stretch while trying to maintain balance with his walker, increasing his discomfort and instability. Due to his spinal and joint conditions, stretching to reach elevated objects caused him pain and fatigue, making the simple act of paying an uncomfortable and frustrating experience.

29.6.    Lack of Depth Under the Counter for Front Approach: The payment counter lacks sufficient depth underneath, preventing individuals with mobility impairments from comfortably approaching it. When Mr. Uriel Sepúlveda attempted to position himself in front of the counter, he was unable to get close enough for support, as there was no space for his walker underneath. This forced him to maintain an awkward and strained posture, increasing tension in his spine and joints, causing him pain and fatigue. The lack of an accessible design turned a simple task into a physically exhausting and limiting experience.

29.7.    Restroom with Incorrect Dimensions in the Men's Restroom: The men's restroom in the establishment does not have adequate space for individuals with mobility impairments to maneuver easily. Upon entering, Mr. Uriel Sepúlveda found the space too narrow, which made it difficult for him to move with his walker and position himself correctly in front of the toilet and sink. The lack of adequate

space forced him to make awkward movements, increasing pressure on his back and joints, which caused him discomfort and pain during his time in the restroom.

29.8.    The barriers on the property could be eliminated by implementing accessibility modifications in compliance with ADA standards. The sidewalks should be widened and access ramps should be added to ensure safe and easy access for individuals with mobility impairments. Accessible parking spaces should be created, with proper dimensions and clear signage indicating the reserved areas and the penalties for misuse. Inside the establishment, the payment counter should be lowered to an appropriate height, and sufficient depth should be added underneath to allow individuals using walkers or wheelchairs to approach comfortably and support themselves. In the restroom, the dimensions should be expanded to provide enough maneuvering space for individuals with mobility aids, and the layout should be redesigned to ensure easy access to the toilet, sink, and other essential features. By making these necessary modifications, the establishment would eliminate the barriers preventing Mr. Uriel Sepúlveda and others with mobility impairments from accessing the premises safely and independently, ensuring equal access and compliance with legal accessibility requirements.

29.9.    Mr. Uriel Sepúlveda has faced financial burdens due to the accessibility barriers present at Villa Dragón. After making the effort to visit the establishment on multiple occasions, he encountered significant difficulties that prevented him from accessing the premises safely and independently. The narrow sidewalks, which lack the necessary width and ramps, forced him to navigate unstable and

unsafe paths, increasing his discomfort and the risk of falling. Additionally, the lack of accessible parking and obstacles inside the restaurant further complicated his visit. As a result, he incurred unnecessary transportation costs, lost time searching for alternative solutions, and faced additional expenses that could have been avoided if the establishment and surrounding public infrastructure were fully accessible.

### *Responsibility of the Municipality of Ponce and Santa Maria Tasty, Inc. - Santa María Tasty*

30.  Mr. Uriel Sepúlveda is interested in visiting Santa María Tasty because he knows they serve one of the best roasted chickens in the southern area. He loves the unique seasoning of the chicken, which he finds delicious and full of flavor, and he also praises the rice dishes, which are always well-prepared and perfectly complement the meal. The restaurant's reputation for its tasty and well-seasoned food has motivated him to want to enjoy a good meal there. However, Mr. Sepúlveda has been aware of the architectural barriers at the establishment since late August 2024, and although he has wanted to visit in the months of September, November, and December of 2024, he has been unable to do so due to the barriers. Given his health condition requiring the use of a walker, he feels deterred from visiting. He believes that visiting in its current state would expose him to a discriminatory experience. He is specifically aware of the following architectural barriers at Santa María Tasty:

30.1.  Sidewalks with Water Leaks, Obstacles, and Damaged Ramp: Mr. Uriel Sepúlveda is aware that the sidewalks are in poor condition due to water leaks, obstacles like poles and a hydrant, and a damaged ramp. These obstacles make it difficult for him to move safely, increasing the risk of losing balance and falling.

The slippery ground from the leaks exacerbates his fatigue and pain while using his walker, and the damaged ramp adds further instability, making it painful and challenging for him to maintain balance.

30.1.1.    Mr. Uriel Sepúlveda is aware that the sidewalks in the area are in poor condition due to water leaks, obstacles like poles and a hydrant located in the middle of the sidewalk. These obstacles prevent safe and unobstructed access for individuals with mobility impairments. When Mr. Uriel attempts to walk along the sidewalk, he is forced to navigate around these obstacles, which complicates his movement and increases the risk of losing balance and falling.

30.1.2.    The water leaks on the sidewalk make the ground slippery, exacerbating his fatigue and pain as he tries to maintain balance with his walker. The slippery surface also increases the risk of a fall, which is particularly dangerous given Mr. Uriel's conditions. This added hazard makes it even harder for him to safely navigate the sidewalk and access the building.

30.1.3.    Despite the clear accessibility issues, the Municipality of Ponce is aware of the situation but has decided not to take any action, which worsens the discrimination Mr. Uriel Sepúlveda faces due to the lack of governmental interest in addressing the needs of people with disabilities. By failing to act, the municipality reinforces the barriers to equal access and participation, leaving Mr. Uriel and others with mobility impairments without the necessary support to move freely and safely in the area.

30.2.    Inaccessible Entrance: Mr. Uriel Sepúlveda is aware that the entrance to the establishment is not accessible, as although there is a ramp, it does not fully connect to the main entrance, creating a step that prevents access for wheelchair users or those with walkers. When attempting to access, Mr. Uriel encounters difficulty getting over the step, which increases his discomfort and the risk of falling, as well as prolonging his physical effort, aggravating his fatigue and joint pain.

30.3.    Ramp with Inadequate Width: Mr. Uriel Sepúlveda is aware that the access ramp has an inadequate width, being too narrow to allow for comfortable and safe passage for individuals with mobility impairments. Due to the narrowness of the ramp, Mr. Uriel is forced to maneuver his walker in a restricted space, which increases the difficulty of maintaining balance. This barrier puts him at risk of losing stability and exacerbates the physical effort needed to walk through a space that is not designed for his comfort and safety.

30.4.    The barriers on the property could be eliminated by repairing the sidewalks to ensure they are free from obstacles like poles and hydrants, and addressing the water leaks to prevent slippery surfaces. The ramp should be widened and repaired to eliminate any irregularities, ensuring it is safe and stable for individuals with mobility impairments. Additionally, the entrance should be fully accessible, with the ramp connecting properly to the main entrance to eliminate the step that currently blocks access. Clear signage should be added to ensure individuals know where the accessible path is, and appropriate maintenance should be implemented to prevent future issues. By making these modifications,

the property would eliminate the barriers that prevent Mr. Uriel Sepúlveda and others with mobility impairments from safely accessing the premises, ensuring compliance with accessibility laws and providing a more inclusive environment.

### *Responsibility of the Municipality of Ponce and Panaderia La Ponceña Inc. - Panaderia La Ponceña*

31.   Mr. Uriel Sepúlveda enjoys visiting La Panadería La Ponceña because the food is very good and always has an authentic flavor. One of his favorite dishes is the pastrami sandwich, which he finds delicious due to its unique and well-seasoned taste. He also loves the Revoltillo con todo, which is always well-prepared and full of fresh ingredients. The quality and flavor of the dishes make every visit a pleasant experience for him, motivating him to return again and again. However, he has attempted to visit the bakery in June, August, and September of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place only to not be able to enjoy a satisfying and equal experience. His last visit was on January 27, 2025, and as a result, he feels discouraged from returning. Given that he uses a walker, he fears experiencing discrimination again, as he did during his last visit. Mr. Uriel identified the following barriers:

31.1.   Obstructed and Poorly Maintained Sidewalk with Inaccessible Ramps: Mr. Uriel Sepúlveda personally identified that the sidewalk in front of the establishment is obstructed by illegally parked vehicles, forcing him to walk on the street, increasing his risk of falling, fatigue, and pain while using his walker. Additionally, the sidewalk is in poor condition, with potholes, cracks, and water leaks, making movement unsafe. The ramps are also deteriorated and uneven, requiring extra effort to navigate, further worsening his pain and instability.

31.1.1.    Mr. Uriel Sepúlveda personally identified that the sidewalk in front of the establishment is obstructed by illegally parked vehicles, encouraged by the business, which even placed cement blocks to demarcate parking spaces. As a result, he was forced to maneuver around the parked cars, which complicated his movement and forced him to walk on the street, exposing him to a hazardous environment. This increased his risk of falling and exacerbated his fatigue and pain, as walking on uneven asphalt with his walker required additional effort to maintain balance.

31.1.2.    Furthermore, the sidewalk is in poor condition, with potholes, cracks, and water leaks that further hinder safe mobility. While walking with his walker, he had to make abrupt movements to avoid these obstacles, which affected his stability and increased his risk of falling. The water leaks made the ground slippery, requiring him to exert more effort to avoid slipping and maintain balance, further aggravating his fatigue and joint pain.

31.1.3.    Additionally, the ramps on the sidewalk are in poor condition, with deteriorated and uneven surfaces, making them unsafe for individuals using a walker. When attempting to use them, he encountered instability and irregularities that heightened his risk of losing balance and falling. The lack of proper ramp maintenance forced him to exert extra effort to navigate the incline, worsening his fatigue and pain in his spine and joints. The difficulty maneuvering his walker on such an uneven surface made

him feel unsafe and uncomfortable, turning what should have been a simple movement into a physically exhausting and hazardous experience.

31.1.4.    Despite the evident accessibility issues, the Municipality of Ponce is fully aware of the situation but has taken no action to address it. On the contrary, it appears that the municipality has granted Panadería La Ponceña a permit to operate its parking lot on the sidewalk, a decision that is blatantly discriminatory against people with disabilities and, in this case, against Mr. Uriel. Furthermore, the municipality has shown no interest in repairing the ramps and sidewalks, allowing these barriers to persist and further restricting Mr. Uriel's ability to move safely and independently.

31.2.    Lack of Accessible Parking: Mr. Uriel Sepúlveda personally identified that there is no designated accessible parking for people with disabilities, making it difficult for him to find a suitable place to park. Without an accessible space, he had to park in a regular spot, which complicated his exit from the vehicle and increased the risk of losing his balance while trying to support himself with his walker, causing him fatigue and joint pain.

31.3.    Lack of Parking Signage: Mr. Uriel Sepúlveda personally identified that there is no signage indicating spaces reserved for people with disabilities, nor warnings about penalties for unauthorized use. The lack of signage forced him to search for a parking space for a longer time, which prolonged his physical effort and increased his fatigue and pain in his spine and joints.

31.4.    Excessively High Counter: Mr. Uriel Sepúlveda personally identified that the payment counter is excessively high, making it difficult to use. While attempting

to pay, he had to stretch to reach the counter while trying to stay stable with his walker, which increased his instability and the risk of losing balance. Due to his condition, overstretching caused him pain in his spine and joints, making the experience frustrating and exhausting.

31.5.    Lack of Depth Under the Counter for Front Approach: Mr. Uriel Sepúlveda personally identified that the payment counter lacks depth, preventing him from approaching it comfortably and safely with his walker. The lack of space beneath the counter prevented him from supporting himself properly to maintain balance, which increased tension in his spine and joints. This barrier caused him pain and fatigue, turning a simple task into a physically exhausting experience.

31.6.    Lack of an Accessible Route: Mr. Uriel Sepúlveda personally identified that there is no accessible route from the sidewalk or parking area to the entrance, nor from the main entrance to the accessible restroom, located outside the bakery. The path is blocked by cement blocks and parking stops, which prevented him from moving freely with his walker. As a result, he had to make difficult maneuvers with his walker, which increased his physical effort and worsened his fatigue and pain.

31.7.    Overly Heavy Main Door: Mr. Uriel Sepúlveda personally identified that the main door of the establishment is too heavy, making it a significant barrier for someone using a walker. While attempting to enter, he struggled to open the door without losing balance, which increased his discomfort and prolonged his physical effort, causing pain in his spine and joints.

31.8.   Lack of Signage for an Accessible Entrance: Mr. Uriel Sepúlveda personally identified that there is no signage on the main door indicating the presence of an alternative accessible entrance. This forced him to search on his own for an accessible way in, which prolonged his physical effort and increased his fatigue and frustration, as he was not provided with clear information about accessible options before arriving.

31.9.   Inaccessible Tables Inside the Establishment: Mr. Uriel Sepúlveda personally identified that the tables inside the bakery have a base that prevents frontal and lateral access with his walker. While attempting to sit, he realized that he could not position himself comfortably, which caused him discomfort and made it difficult for him to enjoy his meal independently, as he needs enough space to maneuver his walker without obstacles.

31.10.  The barriers on the property could be eliminated by implementing necessary accessibility modifications in accordance with ADA standards. To address the obstructed and poorly maintained sidewalk with inaccessible ramps, the business must remove the cement blocks and prohibit illegal parking on the sidewalk, ensuring the space is clear for pedestrian use. Additionally, the sidewalk must be repaired, eliminating potholes, cracks, and water leaks, while the deteriorated ramps should be rebuilt to provide a smooth, stable surface for individuals using mobility aids like walkers. To resolve the lack of accessible parking, at least one properly sized accessible parking space must be designated, including an adjacent access aisle for safe entry and exit. This space should be clearly marked with appropriate signage, indicating that it is reserved for individuals with disabilities

and displaying the penalty for unauthorized use. The payment counter must be lowered to a height that allows individuals using walkers to comfortably reach it without overstretching, and sufficient depth must be provided underneath to enable a proper front approach for support. A clear and unobstructed accessible route must be established from the sidewalk and parking area to the entrance, as well as from the main entrance to the accessible restroom. This requires the removal of cement blocks and parking stops that obstruct movement, ensuring a safe and direct path. The main entrance door must be replaced or modified to be lightweight and easy to open, ensuring that individuals using walkers can enter without excessive force or loss of balance. Additionally, clear signage must be installed on the main entrance, indicating the presence of an alternative accessible entrance if available. Inside the establishment, tables must be replaced or adjusted to allow frontal and lateral access, ensuring that individuals using walkers can comfortably sit and enjoy their meals without obstruction. By implementing these modifications, the establishment will eliminate the existing barriers, providing equal and safe access for individuals with disabilities, including Mr. Uriel Sepúlveda.

31.11.   Mr. Uriel Sepúlveda has experienced financial burdens due to the accessibility barriers at Panadería La Ponceña. On multiple occasions, he has made the effort to visit the establishment, only to find that physical obstacles prevent him from accessing it safely. The deteriorated sidewalks, blocked by illegally parked vehicles, have forced him to take longer, unsafe routes, increasing his discomfort and physical strain. Additionally, the lack of accessible parking and proper

signage has required him to spend extra time searching for a suitable space, further adding to his fatigue. These challenges have not only caused unnecessary physical effort but have also led to increased transportation costs, wasted time, and avoidable frustration. If the establishment and surrounding infrastructure were fully accessible, these financial and physical burdens could have been prevented.

### *Responsibility of the Municipality of Ponce and Café con Suerte LLC - Café Con Suerte*

32.    Mr. Uriel enjoys visiting Café Con Suerte because he has always received excellent service, making his experience highly enjoyable. Additionally, he considers the coffee they offer to be of exceptional quality, but what truly sets the establishment apart is the outstanding attention provided by the staff, which he values even more than the coffee itself. He is delighted with every aspect of his visit. However, he has attempted to visit the café in January, February, and April of 2024, but due to the architectural barriers, he encountered significant difficulties, spending his resources to reach the place only to not be able to enjoy a satisfying and equal experience. His last visit was on January 2, 2025, and as a result, he feels discouraged from returning. Since he uses a walker to move around, he fears experiencing another discriminatory situation, as he did during his last visit. Specifically, Mr. Uriel personally identified the following architectural barriers at Café Con Suerte:

32.1.    Mat in Front of the Main Entrance Creating an Obstacle: Mr. Uriel identified that inside the establishment, directly in front of the main entrance, there is a brown mat that creates an obstacle for individuals using mobility devices, such as his walker. Due to its uneven surface and tendency to shift when stepped on, the mat made it difficult for him to maintain stability while entering the restaurant. This

barrier increased his risk of tripping or losing balance, forcing him to move with extreme caution and making his entry into the establishment both uncomfortable and unsafe.

32.2.  Counter Exceeding Permitted Height: Mr. Uriel personally identified that the counter at Café Con Suerte exceeds the permitted height of 36 inches, making it difficult for individuals using mobility devices to interact with the staff. Since he uses a walker and has limited mobility due to his health conditions, he struggled to reach the counter to place his order and receive his items. This caused him discomfort and frustration, as he had to physically strain himself to engage with the staff, increasing his pain in his spine and joints.

32.3.  Protruding Protective Edge on the Counter: Mr. Uriel identified that the protective edge of the counter protrudes more than 2 inches, creating an obstacle for people using mobility devices. Due to his reliance on a walker and limited mobility, this barrier posed a tripping hazard and made it difficult for him to safely approach the counter. The presence of this protruding edge limited his ability to position himself properly and made him feel unsafe when trying to support himself for balance.

32.4.  Tables with a Base That Prevents Frontal Approach: Mr. Uriel identified that the tables inside the restaurant have a base that prevents individuals using mobility devices, such as his walker, from approaching them frontally. Due to this barrier, he was unable to position himself comfortably in front of the table, making it difficult for him to enjoy his meal safely and without discomfort. This situation

forced him to sit sideways or in an awkward position, increasing strain on his back and joints, which negatively affected his dining experience.

32.5.    Tables Too Close Together, Restricting Movement: Mr. Uriel identified that the tables inside the restaurant are placed too close together, preventing him from moving easily through the area while using his walker. Due to this barrier, he struggled to navigate between the tables without the risk of bumping into them or getting stuck in a confined space. This lack of accessibility caused him frustration and discomfort, as well as increased his fear of losing balance or getting injured while trying to maneuver in such a restricted area.

32.6.    Small Restroom Dimensions: Mr. Uriel identified that the restroom at Café Con Suerte has excessively small dimensions, making it extremely difficult for him to move around with his walker. The lack of adequate space prevented him from maneuvering easily, increasing his risk of losing balance and causing additional pain due to the forced movements he had to make to navigate the restroom.

32.7.    Mirror Placed Too High:  Mr. Uriel identified that the mirror in the restroom is mounted higher than 40 inches, making it inaccessible to him while using his walker. As a result, he was unable to use the mirror properly, which frustrated him and made it difficult to complete basic tasks such as adjusting himself before leaving the restroom.

32.8.    Soap Dispenser Out of Reach: Mr. Uriel identified that the soap dispenser is installed more than 44 inches high, making it difficult for him to reach while using his walker. This forced him to stretch into an uncomfortable position,

increasing his lower back pain and putting extra strain on his joints, affecting his stability and safety in the restroom.

32.9.    Sink Faucet Positioned Too High: Mr. Uriel identified that the sink faucet is placed too high, preventing him from using it properly. Due to his mobility limitations and reliance on a walker, he struggled to reach the faucet without compromising his balance. This caused him discomfort and made washing his hands safely more challenging.

32.10.    Insufficient Space Around the Toilet:  Mr. Uriel identified that the space around the toilet is insufficient, making it extremely difficult for him to move with his walker inside the restroom. This barrier forced him to make uncomfortable maneuvers and rely on unsafe movements, causing him stress and increasing his risk of falling.

32.11.    Obstruction Around the Toilet Area: Mr. Uriel identified that the area around the toilet was obstructed by a black drain cleaner and a white toilet brush, both of which were blocking the left side of the toilet, making it difficult for him to position himself properly to use it. Additionally, he observed that there was a large black trash can directly in front of the toilet, further obstructing his ability to maneuver. Due to his reduced mobility and the use of a walker, these obstructions posed a significant challenge, making him feel unsafe and increasing his discomfort while trying to use the restroom.

32.12.    Grab Bar on the Side Obstructed: Mr. Uriel identified that the side grab bar in the restroom was obstructed by a paper dispenser, preventing him from using it. This made it difficult for him to hold onto something securely while attempting to use

the toilet, which compromised his stability and increased the risk of losing balance in the confined space.

32.13. Rear Grab Bar Positioned Incorrectly: Mr. Uriel identified that the rear grab bar was installed too high, preventing him from using it effectively. As a result, he was unable to support himself properly when attempting to stand up from the toilet, creating additional difficulties and increasing strain on his back and joints.

32.14. Toilet Control Located on the Wrong Side: Mr. Uriel identified that the toilet control was not placed on the open side of the toilet, making it difficult for him to access. Given his reduced mobility and reliance on a walker, this barrier prevented him from easily flushing the toilet, forcing him to make uncomfortable and strained movements that aggravated his pain and increased his frustration.

32.15. Light Switch Positioned Too High: Mr. Uriel identified that the light switch in the restroom is positioned at an excessively high height, making it difficult for him to reach while using his walker. Due to his limited mobility and difficulty raising his arms without strain, he struggled to turn the lights on and off safely. This barrier forced him to overextend himself, increasing the strain on his spine and joints, causing discomfort and making him feel unsafe while trying to navigate the restroom.

32.16. We, representing Mr. Uriel, sent an extrajudicial letter to Café Con Suerte on January 16 to the following email: levjmm@hotmail.com. However, as of today, they have not responded to these concerns, which directly affect the accessibility of the establishment for individuals with disabilities. This lack of response demonstrates a clear lack of interest in addressing these serious accessibility

issues and further accentuates the discrimination that Mr. Uriel and others with mobility disabilities face when attempting to access the establishment.

32.17.    The barriers on the property could be eliminated by ensuring that all elements comply with accessibility standards to accommodate individuals using mobility devices, such as walkers. The brown mat in front of the main entrance should be removed or replaced with a securely affixed, low-profile mat that does not shift or create an uneven surface. The counter should be lowered to a height of 36 inches or less to allow for easy interaction with staff, and the protruding protective edge should be modified or removed to eliminate the risk of tripping and ensure safe access. Inside the restaurant, tables should be replaced or modified to have an open base design that allows for frontal approach, and they should be spaced adequately to allow for free movement of individuals using mobility aids. In the restroom, its overall dimensions should be expanded to provide sufficient maneuvering space for a person with a walker. The mirror should be lowered to a maximum height of 40 inches to ensure visibility for all users. The soap dispenser should be installed at or below 44 inches from the floor for accessibility, and the sink faucet should be replaced with one that is positioned at a comfortable height and designed for easy operation. The space around the toilet should be increased to allow proper maneuverability, and obstructions such as the black drain cleaner, white toilet brush, and large black trash can should be relocated to ensure unobstructed access. The side grab bar should be made fully accessible by removing the paper dispenser blocking it, and the rear grab bar should be repositioned at the correct height to facilitate safe use. The toilet control should be

relocated to the open side of the toilet to allow for easy operation. The light switch should also be lowered to a reachable height for individuals with mobility impairments, ensuring that they can turn the lights on and off without difficulty. By implementing these modifications, the property would become fully accessible and safe for individuals with disabilities, allowing them to navigate and utilize the space without barriers or undue difficulty.

32.18.   Mr. Uriel Sepúlveda has faced financial losses due to the accessibility barriers at Café Con Suerte. On multiple occasions, he has made the effort to visit the establishment only to encounter obstacles that prevent him from enjoying the experience equally. The lack of an accessible route, interior obstructions, and inadequate restroom space have restricted his mobility, forcing him to leave or rely on assistance. These barriers have resulted in additional transportation costs, wasted time, and unnecessary physical strain. If the establishment were fully accessible, Mr. Uriel would not have had to incur these expenses or experience the frustration of being unable to enjoy the place like any other customer.

### *Responsibility of the Municipality of Ponce and  Panaderia & Reposteria Glenview Inc. Panaderia & Reposteria Glenview*

33.   On January 31, 2025, Uriel Sepúlveda visited Panadería y Repostería Glenview out of his appreciation for the establishment and his passion for pastry, especially the cheesecakes in their varied and tempting flavors. However, during this visit, he directly encountered barriers that made his experience uncomfortable and frustrating. These difficulties have changed his perception of the place, affecting his enjoyment of his favorite desserts and making him hesitant to return. The barriers are:

111

33.1.    Obstructed sidewalk: The sidewalk in front of Panadería y Repostería Glenview in Ponce is blocked by parked cars, preventing safe access for people with mobility impairments.

    33.1.1.    The sidewalk in front of Panadería y Repostería Glenview, located in the municipality of Ponce, is completely blocked by vehicles parked directly in front of the entrance. This obstruction prevents people with mobility impairments from using the sidewalk safely. During his visit on January 31, 2025, Mr. Uriel Sepúlveda was unable to navigate the sidewalk, as the parked cars forced him onto the street, exposing him to traffic and a hazardous environment.

    33.1.2.    Due to his need for a walker and his spinal and joint conditions, walking on the uneven and sloped asphalt was not only difficult but also caused him significant pain, increasing his risk of falling. The lack of a clear, accessible path left him without a safe alternative to move through the area, making him feel excluded and restricted in his right to move freely.

    33.1.3.    Despite the clear accessibility issue, the municipality of Ponce is aware of the situation but has failed to take any corrective action. By ignoring this obstacle, authorities continue to neglect the needs of individuals with mobility impairments, denying them safe access to the sidewalk. This inaction perpetuates the discrimination faced by people with disabilities, such as Mr. Sepúlveda, by depriving them of their right to navigate public spaces safely and equally. As a result, he felt frustrated and excluded, as

this barrier denied him the basic right to move through his community like any other individual.

33.2. Obstructed Ramp: As he approached the entrance, Mr Uriel prepared to use the ramp, the only accessible path available for individuals with mobility impairments. However, what should have been a safe and functional passage quickly became an obstacle course. Halfway up the ramp, he encountered an unexpected barrier—a large freezer placed directly in the way. This obstruction drastically narrowed leaving barely enough room to maneuver. Just at the critical moment when he needed to turn to continue ascending, the reduced space forced him into a precarious position. With his walker, he struggled to adjust his movements to avoid hitting the freezer while maintaining balance on the incline.

33.3. High Payment Counter: Mr. Uriel Sepúlveda knows that the payment counter at Panadería exceeds the recommended height for accessibility, making it difficult for individuals using mobility devices to interact with staff and complete transactions independently. Due to his reliance on a walker and limited mobility, he struggles to reach the counter, forcing him to stretch or position himself uncomfortably. This unnecessary difficulty increases his discomfort, causing strain on his back and joints while making the simple act of paying for an order frustrating and exhausting. Without an accessible counter or an alternative method for transactions, Mr. Uriel experiences exclusion in a process that should be seamless and equitable for all customers.

33.4. Poor Table Arrangement: Mr. Uriel Sepúlveda is aware that the tables inside Panadería are arranged in a way that severely restricts movement, making it

difficult for individuals using mobility devices to navigate the space comfortably. Due to this poor layout, Mr. Uriel finds it challenging to position himself properly at a table, often having to sit at an uncomfortable angle or being unable to access certain seating areas altogether. This lack of accessibility makes his dining experience inconvenient and exclusionary, reinforcing barriers that prevent individuals with mobility impairments from fully enjoying their time at the establishment.

33.5.    Inaccessible Restroom: During his visit, Mr. Uriel Sepúlveda identified multiple accessibility barriers in the restroom at Panadería y Repostería Glenview. The space is extremely narrow, making it nearly impossible for individuals using mobility devices to enter and maneuver safely. Additionally, the restroom lacks a rear support bar, further compromising stability for individuals with mobility impairments. The drainage control is positioned on the incorrect side, creating additional difficulty when using the space. Furthermore, the toilet is too small, making transfers and overall use extremely challenging. These barriers prevent Mr. Sepúlveda from using the facilities independently and with dignity, further restricting his access to a basic necessity.

33.6.    To solve the problem of obstructed sidewalks, it is essential to keep entrances and pedestrian pathways free from parked vehicles and other barriers that restrict mobility. Maintaining a clear and accessible sidewalk is not just a matter of convenience but a fundamental necessity that ensures individuals can move freely and independently.

33.7.   To resolve the accessibility barrier on the ramp, Panadería y Repostería Glenview must immediately remove the freezer that obstructs the passage at the midpoint of the incline. This obstruction significantly narrows the space precisely at the turning point, making it extremely difficult for individuals using mobility aids, such as walkers or wheelchairs, to maneuver safely. The ramp must provide a continuous, unobstructed path that allows proper movement without creating hazardous bottlenecks.

33.8.   To improve navigation within the interior of the panadería, the tables should be rearranged to create wider pathways, ensuring at least 36 inches of clearance between them to allow easy movement for individuals using mobility aids. The payment counter should be lowered or an  accessible service counter should be installed at a height of 36 inches or less, allowing customers using wheelchairs or walkers to complete transactions comfortably.

33.9.   To address these barriers, Panadería y Repostería Glenview must expand the restroom space to allow adequate mobility for individuals using walkers or wheelchairs, ensuring a diameter of at least 60 inches for easy turning. Additionally, a properly positioned rear grab bar must be installed to provide stability for those who need support when transferring. It is essential to relocate the drainage control to an accessible side to prevent unnecessary obstacles and replace the toilet with a model that facilitates use for individuals with mobility impairments.

33.10.  In addition to the architectural barriers that Mr. Uriel Sepúlveda has encountered at Panadería y Repostería Glenview, he has also suffered economic losses as a

direct result of these accessibility issues. On multiple occasions, he has arrived at the bakery only to find that physical barriers prevent him from entering safely. When faced with these obstacles, he is forced to leave, attempt to return at a later time, or seek an alternative establishment that better accommodates his mobility needs. These challenges have led to additional transportation costs, wasted time, and unnecessary expenses, causing financial harm that could have been avoided if the bakery provided full accessibility. The inability to access a business freely and safely not only affects his ability to enjoy its products but also places an unfair economic burden on him, further emphasizing the urgent need for inclusive and accessible spaces.

### _Responsibility of the Municipality of Ponce and  Panaderia Imperial, Inc. - Panadería La Imperial_

34.    Uriel Sepúlveda has a deep appreciation for Panadería La Imperial, especially for its delicious selection of pastries, with a particular fondness for the guava turnovers and the palmera. He values the high quality of the products. However, since December 2024, he has noticed  issues within the establishment that  make the experience more challenging for his. These factors have influenced his perception, making it a  more difficult to enjoy his favorite treats as often. These barriers are:

34.1.    Inaccessible Sidewalk: The sidewalk in front of Panadería Imperial is in poor condition, with uneven surfaces, cracks, and other structural issues that make it difficult to navigate safely. These barriers create significant challenges for Mr. Sepúlveda, who relies on a wheelchair, as they prevent smooth movement and increase the risk of accidents. Ensuring that the sidewalk is properly maintained, free of obstructions, and repaired where necessary would greatly improve

accessibility and allow individuals with mobility impairments to navigate the area safely and independently. Keeping sidewalks in good condition is essential to fostering a more inclusive and accessible community.

34.2.    Inaccessible Counter: At Panadería La Imperial, Mr. Uriel faces significant difficulty accessing the service counter, which is too high for him to use comfortably. As someone who relies on a walker and lives with conditions such as a damaged lumbar disc, bilateral cervical and lumbar radiculopathy, osteoporosis, and chronic osteoarthritis in the spine and sacroiliac joints, reaching the counter without discomfort is a challenge. The lack of a lower accessible section forces him to stretch beyond his limits, causing strain, fatigue, and imbalance. This inaccessibility not only makes transactions more difficult but also puts his physical well-being at risk.

34.3.    Inaccessible Restroom: Mr. Uriel is aware that the restroom at Panadería La Imperial is extremely small, with minimal space for maneuverability. The cramped layout makes movement difficult, preventing individuals using mobility aids from positioning themselves properly. The lack of sufficient room forces uncomfortable and unsafe movements, increasing the risk of imbalance and falls. For someone with mobility impairments, the restricted space creates a physically demanding and frustrating experience, limiting independence and making restroom use unnecessarily challenging.

34.4.    To solve sidewalk accessibility barriers, sidewalks must be kept clear of obstacles and maintained in good condition. Uneven surfaces, cracks, and structural damage must be repaired to provide a smooth and stable path for safe navigation.

Additionally, sidewalks should remain free of parked vehicles, trash bins, or any other obstructions that restrict movement.

34.5.    To address the inaccessibility of the service counter, Panadería La Imperial must install a lower, designated accessible section that allows individuals using mobility aids to complete transactions comfortably. The counter should be no higher than 36 inches, with adequate clearance underneath to accommodate those who need to approach while seated. Creating a designated accessible area will prevent unnecessary strain, reduce the risk of fatigue and imbalance, and ensure that all customers can interact with staff independently and without discomfort.

34.6.    To resolve the issues with the restroom's limited space, Panadería La Imperial must expand the restroom to allow proper maneuverability for individuals using walkers or wheelchairs. The layout should be adjusted to provide clear space around the toilet, ensuring safe positioning and ease of use.

34.7.    The accessibility barriers at Panadería La Imperial have made it difficult for Mr. Uriel to enter and navigate the establishment, forcing him to leave, return later, or seek an alternative bakery. These obstacles have led to extra transportation costs, wasted time, and frustration—financial burdens that could have been avoided with proper accessibility.

### _Responsibility of the Municipality of Ponce and Empresas SM LLC - Mosaico Restaurant_

35.    Mr. Uriel Sepúlveda has always held deep admiration for Mosaico Restaurant, particularly for its exquisite selection of dishes, with his favorites being the coconut-crusted breaded shrimp. He has consistently valued the freshness and exceptional quality of the ingredients, which have made each visit a memorable culinary

experience. However, during his attempts to visit the establishment in October and December of 2024, he encountered barriers that prevented him from enjoying a dignified, satisfactory, and equal experience compared to other guests. Despite his efforts to access and enjoy the services offered, the difficulties he faced significantly impacted his experience. His last visit took place on February 3, 2025. On this occasion, he once again encountered obstacles that limited his access and enjoyment of the establishment, leading him to feel discouraged and dissuaded from returning. In light of this situation, Mr. Uriel identified the following barriers at Mosaico Restaurant:

35.1.    Sidewalks in Poor Condition: upon arriving at the establishment, Mr. Uriel identified that the sidewalks surrounding Mosaico Restaurant were in poor condition, posing a significant challenge for individuals with limited mobility, such as himself. The surface was cracked and uneven, with multiple depressions and raised sections that created an unstable walking path. Additionally, certain areas had loose or missing pavement, increasing the risk of sudden loss of balance. These irregularities forced him to navigate with extreme caution, as his walker frequently got caught on abrupt surface changes, compromising his stability.

35.1.1.    Given his medical condition, these hazards constituted a significant barrier, preventing him from moving safely and without risk to his well-being. The impact of the uneven terrain on his body triggered sharp pain in his lower back and legs, further complicating his ability to walk securely. Every step required additional effort to avoid tripping, turning what should have been a simple approach to the restaurant into an

exhausting and distressing ordeal. The fear of a potential fall, which could have severe consequences due to his osteoporosis, heightened his anxiety, making his visit not only physically painful but also mentally taxing.

35.1.2.   The Municipality Of Ponce is aware of the deteriorated condition of the sidewalks in front of Mosaico Restaurant; however, it has taken no action to address these deficiencies. By neglecting the need for repairs, the municipality perpetuates discrimination against individuals with disabilities, maintaining barriers that restrict their access and put their safety at risk. This inaction not only affects Mr. Uriel's mobility but also reinforces an exclusionary environment that prevents equal conditions for all individuals, violating his fundamental rights.

35.2.   Main Entrance Door Too Heavy: Mr. Uriel personally identified that the main entrance door of the business was extremely heavy, making it impossible for him to open it on his own. Due to his limited mobility and reliance on a walker, he was unable to exert the necessary force to push the door while maintaining his balance. A business employee had to assist him by opening the door so he could enter. This obstacle caused him frustration and forced him to depend on others to access the establishment, affecting his independence and increasing his discomfort.

35.3.   Unsecured Mat at the Main Entrance: Mr. Uriel personally identified that there was a mat at the main entrance of the business that was not fully secured to the floor, making it difficult for him to pass over. Since he uses a walker for mobility, the mat became an obstacle, partially trapping the front wheels of his walker and

forcing him to exert additional effort to get past it. This effort caused him pain in his lower back due to his damaged lumbar disc and bilateral radiculopathy, in addition to compromising his stability as he attempted to enter the establishment.

35.4.    Counter Too High: Mr. Uriel personally identified that the bar and transaction counter in the business was too high, preventing him from comfortably using the services. Due to the excessive height, he was unable to place his arms and hands in a suitable position to interact with the staff. Since he uses a walker for mobility, he was not able to elevate himself to reach the counter, which caused him frustration and forced him to rely on others to complete any transaction. This barrier affected his autonomy and made it difficult for him to access the business's services in a dignified and equal manner.

35.5.    Counter Obstructed by Chairs: Mr. Uriel personally identified that the counter area was almost completely obstructed by high chairs, preventing him from approaching with his walker. Due to his limited mobility, he needed a clear space to maneuver and position himself properly in front of the counter, but the presence of chairs blocked his access. To try to get closer, he had to make uncomfortable maneuvers, forcing his posture and increasing pressure on his sacroiliac joints and back. This effort caused him significant pain and left him in an unstable position, preventing him from making transactions independently and safely.

35.6.    Lack of Accessible Route Inside the Business: Mr. Uriel personally identified that there was no accessible route from the main entrance to the interior of the business and the restrooms. Along his way, he encountered obstacles that made

mobility with his walker difficult, preventing him from moving safely and without barriers. Additionally, there was a heavy door along the path, which was difficult for him to open and pass through without assistance. This issue forced him to exert extra effort to maneuver his walker, causing pain in his back and legs and making his movement through the business exhausting and frustrating.

35.7.   Tables Placed Too Close Together: Upon entering the dining area, Mr. Uriel observed that the tables at Mosaico Restaurant were arranged too closely together, creating a restrictive environment that posed a substantial challenge for individuals relying on mobility aids, such as himself. The narrow gaps between tables significantly limited maneuverability, making it difficult to navigate the space without encountering obstacles. The lack of adequate clearance forced him to carefully adjust his movements to avoid hitting furniture, a task made even more cumbersome by the unpredictability of other patrons' movements within the confined space. Given his medical condition, these spatial limitations constituted a considerable impediment, preventing him from moving freely and with the necessary ease to access a suitable seating area. The constrained layout not only prolonged his efforts to reach a table but also increased the strain on his body, exacerbating his physical discomfort. The difficulty in maneuvering heightened his concern about potential accidents, as any sudden shift in balance or an unintentional impact with an object could lead to a dangerous fall. This overwhelming sense of unease made his dining experience both physically taxing and mentally distressing, significantly diminishing his ability to enjoy the establishment comfortably and safely.

35.8.   Inadequate Tables: Mr. Uriel identified that the height of the tables at Mosaico Restaurant was not suitable for accessibility, making it difficult for him to sit comfortably and place his walker securely. Additionally, the limited clearance beneath the tables prevented him from properly accommodating his legs and assistive device, forcing him to remain in an uncomfortable position throughout his visit. These conditions made his experience physically exhausting, affecting his ability to enjoy his meal comfortably and without unnecessary strain.

35.9.   Lack of Accessible Seating: The absence of accessible seating options in the restaurant significantly limited his ability to find a suitable spot, forcing him to either wait for an appropriate table or attempt to sit in an area not designed for individuals with mobility impairments. Additionally, the narrow and obstructed pathways made it difficult for him to navigate with his walker, increasing the risk of unintentional contact with furniture or other patrons. The combination of these barriers made his visit uncomfortable and distressing, preventing him from enjoying the establishment in a dignified and safe manner.

35.10.   Lack of Signage on the Door of the First Restroom: Mr. Uriel personally identified that the door of the first restroom did not have proper signage indicating its location. This absence made it difficult for him to quickly identify the accessible restroom, prolonging his search and increasing his physical discomfort due to his limited mobility. As he relies on a walker for movement, the additional effort required to find the restroom caused strain on his spine and joints, worsening his discomfort during his visit.

35.11.    Small Floor Level Difference at the Entrance of the First Restroom: Mr. Uriel personally identified that the floor of the first restroom had a small level difference at the entrance, making it difficult for him to access with his walker. When attempting to overcome this uneven surface, his walker got momentarily stuck, forcing him to exert additional effort to enter the restroom. This situation created strain on his back and legs, intensifying the pain caused by his damaged lumbar disc and bilateral radiculopathy. Additionally, the effort required to slightly lift his walker increased his instability, making entry even more difficult.

35.12.    Heavy Restroom Door in the First Restroom: Mr. Uriel personally identified that the door of the first restroom was excessively heavy, making it difficult for him to open it while maintaining his balance. Since he uses a walker, he had to apply extra force to push the door while maneuvering his way inside. This caused him significant pain in his lower back and legs, as the combination of his osteoarthritis and osteoporosis made any additional physical effort exhausting and painful.

35.13.    First Restroom Too Small: Upon attempting to use the first restroom at Mosaico Restaurant, Mr. Uriel encountered multiple accessibility barriers that significantly hindered his ability to use the facilities safely and independently. The small size of the restroom posed the most immediate challenge, as the limited space severely restricted his ability to maneuver with his walker. The cramped layout forced him to make uncomfortable adjustments to position himself properly, increasing the risk of instability and making his movements both strenuous and unsafe.

35.14.    Obstructed Space Around the Toilet in the First Restroom: Mr. Uriel personally identified that the limited space around the toilet in the first restroom was

obstructed, making it difficult for him to move. To the left of the toilet, a metal trash bin blocked part of the area, preventing him from properly maneuvering his walker. To the right, a white toilet cleaner occupied the necessary space for him to move more freely. This lack of space forced him to make uncomfortable movements and twist his body awkwardly, increasing his lower back pain and making it difficult for him to access the toilet safely and without obstacles.

35.15.    Lack of Lateral Grab Bar in the First Restroom: Mr. Uriel personally identified that the first restroom did not have a lateral grab bar next to the toilet, which significantly hindered his ability to sit down and stand up safely. Without a support point on the side, he had to exert extra effort with his body, increasing pressure on his spine and sacroiliac joints. Since he uses a walker to move, he had to rely on it for support in an unstable manner, which caused him pain in his back and legs. The absence of this bar left him in an unsafe position, increasing the risk of losing balance while trying to use the restroom.

35.16.    Lack of Rear Grab Bar in the First Restroom: Mr. Uriel personally identified that the first restroom did not have a rear grab bar behind the toilet, further limiting his ability to stand up safely. Without this support, he had to exert additional effort with his lower back and legs to lift himself, intensifying the pain caused by his chronic osteoarthritis and damaged lumbar disc. The lack of this bar forced him to make strained movements and put excessive pressure on his joints, increasing his discomfort and making it harder for him to maintain stability in an already tight space.

35.17.    Soap Dispenser Too High in the First Restroom: Mr. Uriel personally identified that, in the first restroom he used at Mosaico Restaurant, the soap dispenser was placed at an excessively high height, making it difficult for him to reach without overextending beyond what his body allowed. Due to his damaged lumbar disc and bilateral cervical and lumbar radiculopathy, any movement requiring excessive extension caused him intense pain in his back and legs. While trying to reach the dispenser while holding onto his walker for balance, he was forced to adopt uncomfortable positions that increased pressure on his spine, causing discomfort and heightening the risk of losing stability. This barrier turned a simple hygiene task into a painful and dangerous struggle.

35.18.    Paper Towel Dispenser Too High in the First Restroom: Mr. Uriel personally identified that, in the first restroom he used at Mosaico Restaurant, the paper towel dispenser was positioned at an unreachable height without excessive effort. When attempting to dry his hands, he had to stretch beyond his physical limit, which caused sharp pain in his lower back and legs. Due to his limited mobility and reliance on his walker, he was unable to maintain a stable posture while reaching for a towel, increasing the risk of losing balance and falling. This improper placement prevented him from completing a basic hygiene task safely and independently, turning a routine process into an unnecessary and exhausting physical challenge.

35.19.    Mirror Placed Too High in the First Restroom: Mr. Uriel personally identified that, in the first restroom he used at Mosaico Restaurant, the mirror was positioned at a height that prevented him from using it effectively. Due to the

chronic osteoarthritis in his spine and sacroiliac joints, standing in strained positions caused him significant pain, and while seated, the elevated position of the mirror made it impossible for him to see his reflection. This situation prevented him from performing basic hygiene tasks normally, forcing him to make unnecessary efforts that worsened his physical discomfort and left him frustrated by the lack of accessibility.

35.20.  Heavy Door in the Second Restroom: Mr. Uriel personally identified that the door of the second restroom was too heavy, making it difficult for him to open while maintaining his balance. Since he uses a walker to move, he had to apply considerable force to push the door while trying to maneuver his way inside. This additional effort caused him intense pain in his lower back and legs, worsening the discomfort caused by his osteoarthritis and osteoporosis. The difficulty of opening the door independently increased his fatigue and further complicated his access to the restroom.

35.21.  Poorly Positioned Lateral Grab Bar in the Second Restroom: Mr. Uriel personally identified that the lateral grab bar in the second restroom was placed too high, preventing him from using it effectively to sit down and stand up from the toilet. Due to the improper height of the bar, he could not grip it securely, forcing him to exert more effort with his back and legs, which caused significant pain in his spine and sacroiliac joints. The poor placement of the grab bar left him without safe support, making it more difficult for him to use the restroom independently and without risk.

35.22.   Lack of Rear Grab Bar in the Second Restroom: Mr. Uriel personally identified that the second restroom did not have a rear grab bar behind the toilet, making it difficult for him to stand up with stability. Without support at the back, he had to place excessive pressure on his legs and lower back to lift himself, which intensified his lumbar pain and fatigue. The absence of this bar forced him to make unsafe movements that compromised his stability, making it even harder for him to use the toilet.

35.23.   Toilet Flush Handle on the Closed Side of the Wall in the Second Restroom: Mr. Uriel personally identified that the flush handle in the second restroom was located on the closed side of the wall, making it difficult for him to reach. Due to his limited mobility and the use of his walker, he had to twist his body into an uncomfortable position to try to activate it. This movement increased the strain on his spine and joints, causing him pain in his lower back and legs. The poor placement of the flush handle made it difficult for him to complete a basic hygiene task without experiencing discomfort and unnecessary physical effort.

35.24.   Exposed Plumbing Under the Sink in the Second Restroom: Mr. Uriel personally identified that the plumbing beneath the sink in the second restroom was exposed, posing a safety hazard. When attempting to wash his hands, he had to maneuver with difficulty due to his limited mobility and reliance on his walker. His osteoporosis and the stiffness caused by his osteoarthritis made any accidental contact with the pipes painful. The lack of a protective covering over the pipes increased his discomfort and the risk of injury while using the sink.

35.25.    Sink Faucet Too High in the Second Restroom: Mr. Uriel personally identified that the sink faucet in the second restroom was placed too high, making it difficult for him to reach comfortably. Since he uses a walker to move, he had to stretch beyond his physical capacity to turn on the faucet, causing him intense pain in his lower back due to his damaged lumbar disc. This poor faucet placement further complicated his use of the sink, making him experience unnecessary discomfort.

35.26.    Mirror Too High in the Second Restroom: Mr. Uriel personally identified that the mirror in the second restroom was placed at a height that prevented him from using it effectively. Due to the chronic osteoarthritis affecting his spine and sacroiliac joints, he could not remain in a strained position for long while trying to see his reflection without experiencing pain. Additionally, when seated, the height of the mirror prevented him from seeing himself at all, limiting his ability to perform basic hygiene tasks without difficulty.

35.27.    Paper Towel Dispenser Too High in the Second Restroom: Mr. Uriel personally identified that the paper towel dispenser in the second restroom was placed at an excessive height, making it difficult for him to reach comfortably. Since he uses a walker to move, he had to stretch beyond his physical capacity to grab a towel, which caused him intense pain in his lower back due to his damaged lumbar disc. The improper height of the dispenser forced him to make strained movements that increased his discomfort and physical exhaustion, making a basic hygiene task unnecessarily difficult.

35.28.    Trash Bin Obstructing the Paper Towel Dispenser in the Second Restroom: Mr. Uriel personally identified that, in addition to being placed too high, the paper

towel dispenser in the second restroom was obstructed by a black trash bin located directly underneath it. This obstruction prevented him from getting close enough to reach the towels without difficulty. Due to his limited mobility and reliance on his walker, he was unable to maneuver around the trash bin easily, forcing him to adopt an uncomfortable and unsafe posture to try to dry his hands. The presence of the trash bin in a tight space increased his discomfort and exhaustion, turning a simple action into a frustrating and painful experience.

35.29.    Exposed Plumbing Under the Sink in the Second Restroom: Mr. Uriel personally identified that the plumbing beneath the sink in the second restroom was exposed, posing a safety hazard. When attempting to wash his hands, he had to maneuver with difficulty due to his limited mobility and reliance on his walker. His osteoporosis and the stiffness caused by his osteoarthritis made any accidental contact with the pipes particularly painful and dangerous. The lack of a protective covering over the pipes increased his discomfort and the risk of burns, turning a simple action into an uncomfortable and hazardous experience.

35.30.    The barriers on the property could be eliminated by implementing necessary modifications to ensure accessibility and compliance with legal standards. The Municipality of Ponce must take immediate action to repair the damaged sidewalks surrounding Mosaico Restaurant by resurfacing cracked and uneven pavement, filling depressions, and replacing loose or missing sections to create a stable and safe path for individuals with mobility impairments. At the main entrance, the heavy door should be replaced with an automatic or lighter door to allow individuals using walkers to enter without assistance. The unsecured mat at

the entrance should be removed or properly secured to prevent mobility issues and the risk of tripping. Inside the dining area, increasing the spacing between tables would improve maneuverability for patrons using walkers, ensuring they can navigate without unnecessary obstructions. Providing accessible seating options that meet proper height and clearance requirements would allow individuals with mobility limitations to sit comfortably without strain. Additionally, ensuring that pathways to seating areas remain clear and wide enough to accommodate wheelchairs and walkers would improve accessibility and ease of movement. To address the counter accessibility issues, the transaction and bar counters should be adjusted to an accessible height, and the high chairs obstructing the counter should be removed or relocated to provide adequate clearance for individuals using walkers. To improve interior accessibility, an unobstructed and accessible route must be created from the main entrance to the interior of the business and the restrooms. This includes ensuring that any doors along the pathway are lightweight or automated, allowing individuals with mobility impairments to navigate the establishment without undue physical exertion. In the first restroom, proper signage must be installed on the restroom door to allow individuals with disabilities to identify the accessible facility without unnecessary delays or discomfort. The small floor level difference at the entrance should also be corrected by leveling the surface to ensure that individuals using walkers can enter without difficulty. Expanding the available space in both restrooms to allow adequate maneuverability for individuals using walkers would resolve the most immediate accessibility concerns. Installing properly positioned grab bars on the

side and rear of the toilet would provide necessary support for individuals with mobility impairments. Additionally, ensuring an unobstructed space around the toilet by removing any unnecessary objects, such as trash bins and cleaning supplies, would allow for safe and comfortable use. Further improvements to restroom facilities include lowering soap and paper towel dispensers to an appropriate height, relocating the flush handle to an accessible position, and installing a lower mirror to accommodate seated users. The exposed plumbing under the sink should be covered to prevent accidental burns or injuries, and the sink faucet should be adjusted to a lower and more accessible height. These modifications would ensure that all patrons can access and use the business and its facilities independently and without unnecessary risk. By eliminating these barriers, the establishment would provide an inclusive, safe, and dignified experience for individuals with mobility impairments, ensuring they can fully enjoy the services without undue hardship.

35.31.   In addition to the architectural barriers Mr. Uriel has encountered at Mosaico Restaurant and the surrounding sidewalks, he has also suffered economic losses due to these accessibility issues. On multiple occasions, he has arrived at the restaurant only to realize that he could not enter or move freely inside the establishment, as well as faced poorly maintained sidewalks that made safe access difficult. As a result, he was forced to leave, return at a later time, or seek an alternative dining location that better accommodated his mobility needs. These difficulties led to additional transportation costs, wasted time, and unnecessary

expenses, causing him financial harm that could have been avoided if both the restaurant and the sidewalks had been fully accessible.

### *Responsibility of the Municipality of Ponce and  A Palo Limpio of Ponce Inc.*
### *Viva la Pepa*

36.    Mr. Uriel enjoys visiting Viva La Pepa because it is a visually appealing and elegant establishment with fair prices and excellent food. In particular, he finds their chicken breast to be exceptional, with an unparalleled flavor that makes it his favorite dish. Additionally, Viva La Pepa is conveniently located just two minutes away by car from Mr. Uriel's residence. However, despite offering meals and dishes that Mr. Uriel greatly enjoys, the restaurant has architectural barriers that have impacted him since he first started visiting in October 2024 and more recently on January 20, 2025. These barriers have discouraged him from returning, as he fears he may not be able to navigate them successfully. The specific barriers that have affected Mr. Uriel are as follows:

36.1.    Inaccessible and Obstructed Sidewalks: Mr. Sepulveda has been impacted by the poor condition and obstacles present on the public sidewalks:

36.1.1.    Due to his health conditions, Mr. Uriel has encountered difficulties using the public sidewalk, as it is cracked, overgrown with vegetation, and has uneven surfaces that make it challenging for him to navigate. Additionally, Viva La Pepa has placed items such as pots and a table on the sidewalk, further restricting the space that should be fully accessible for Mr. Uriel.

36.1.2.    In fact, on multiple occasions, Viva La Pepa has not only placed obstructions on the public sidewalk but has also set up a sign on the roadway itself, further hindering Mr. Uriel's ability to move freely and safely. Adding to these obstacles, vehicles are often allowed to park

directly in front of the sidewalk, which has, on several occasions, completely blocked Mr. Uriel's access, forcing him to seek alternative routes.

36.1.3.    The Municipality of Ponce has allowed Viva La Pepa to obstruct the public sidewalk, place objects on the roadway, and permit vehicles to park in a way that blocks both the sidewalk and Mr. Uriel's access route. As a result, when these obstacles are present, Mr. Uriel is unable to enter, which has happened to him on multiple occasions.

36.1.4.    These barriers have deterred Mr. Uriel from visiting the restaurant, knowing that entering safely is not an option for him.

36.1.5.    To address the accessibility barriers, the **Municipality of Ponce** should enforce regulations prohibiting businesses from placing objects such as tables, signs, or planters on public sidewalks and conduct regular inspections to ensure compliance. Additionally, the municipality must repair and maintain sidewalks by eliminating cracks, overgrown vegetation, and uneven surfaces, as well as implementing clear no-parking zones near access routes to prevent vehicles from obstructing pedestrian pathways.

36.2.    Inadequate Access Route: In addition to the access route being obstructed by vehicles that Viva La Pepa allows to park directly in front of the sidewalk, the entrance itself is inaccessible:

36.2.1.    The access route includes a step, meaning there is no ramp or level entryway, which made it extremely difficult for Mr. Uriel to enter. Due to

his health conditions and mobility limitations, this barrier caused him significant distress and frustration.

36.2.2.    Using his walker was particularly challenging, as neither the first nor the second step was wide enough for him to step up safely. As a result, he struggled to maintain his balance and had to make multiple attempts before being able to enter. The effort required was exhausting and made him feel vulnerable. Additionally, the door was heavy, further complicating his entry and adding to his frustration.

36.2.3.    These obstacles left Mr. Uriel feeling upset and angry, as he felt that his ability to access the establishment was disregarded. The experience made him feel unwelcome and unsafe, discouraging him from returning to Viva La Pepa. To this day, he remains dissuaded from visiting, as he fears encountering the same barriers and difficulties again.

36.2.4.    To address the accessibility barriers, A Palo Limpio of Ponce Inc. should remove any objects placed on the sidewalk and roadway, install a properly designed and compliant ramp at the entrance to provide an accessible route, and ensure that steps are wide and stable enough for safe use. The restaurant should also consider installing an automatic or lightweight door to facilitate entry for individuals with mobility limitations

36.3.    Inaccessible Counter: The counter at Viva La Pepa was too high, making it inaccessible and inadequate for Mr. Uriel:

36.3.1.    Due to his mobility limitations, Mr. Uriel experienced fatigue and discomfort when standing for extended periods. The high counter forced

him to stretch and reach beyond a safe range, making it difficult for him to interact with staff and complete transactions independently. This also compromised his balance, increasing the risk of losing stability while trying to use the counter. Additionally, handling objects, such as a payment card or receipt, was challenging since he relied on his walker for support and stability.

36.3.2.    Mr. Uriel feels discouraged from returning to Viva La Pepa due to the inaccessible counter, which made his experience frustrating and physically challenging. The difficulty of reaching the high surface, maintaining his balance while standing, and handling transactions without adequate support left him feeling unwelcome and excluded. The lack of accessibility forced him to struggle unnecessarily, making what should have been a simple interaction an uncomfortable and exhausting ordeal. As a result, Mr. Uriel now avoids visiting the establishment, as he fears facing the same barriers and experiencing the same discomfort again.

36.3.3.    To eliminate this barrier, Viva La Pepa can lower a section of the counter to a height of no more than 36 inches, making it more accessible for individuals using walkers, like Mr. Uriel. This modification would allow for easier interaction with staff and a more comfortable transaction process. Alternatively, the restaurant could create a designated accessible service area with a lower surface where customers who have mobility limitations can be assisted. Another option is to provide mobile or

table-side service, allowing individuals to complete transactions without the need to struggle with an inaccessible counter.

36.4.    Narrow Spaces Between Tables and Pathways to the Restroom: At Viva La Pepa, the spaces between tables and the pathways leading to the restroom were too narrow, making it extremely difficult for Mr. Uriel to move around safely with his walker:

36.4.1.    The tight layout forced him to maneuver carefully, often struggling to pass through without bumping into chairs, tables, or even other patrons. The lack of adequate clearance not only caused discomfort but also created a risk of tripping or losing balance, making his experience frustrating and physically exhausting.

36.4.2.    The restricted space made it clear that the establishment did not consider the needs of individuals who require mobility aids, leaving him feeling unwelcome and excluded. Because of this, Mr. Uriel now feels dissuaded from returning to Viva La Pepa, as he fears facing the same difficulties and physical strain every time he attempts to move through the restaurant.

36.4.3.    To address this issue, Viva La Pepa should rearrange its seating layout to ensure at least 36 inches of clear space between tables and along pathways, as recommended for accessibility. This would allow individuals using walkers or other mobility aids to move freely without obstacles. Additionally, the pathway to the restroom should be kept clear of chairs or other obstructions to provide a safe and accessible route.

36.5.    Inaccessible Restroom: At Viva La Pepa, Mr. Uriel encountered multiple barriers in the restroom that completely prevented him from using it:

36.5.1.    At Viva La Pepa, Mr. Uriel encountered multiple barriers in the restroom that completely prevented him from using it. The first issue he noticed was the lack of sufficient clear space around the toilet, making it impossible for him to maneuver safely with his walker. The space provided did not meet the minimum 60 inches measured perpendicular from the side wall and 56 inches measured perpendicular from the back wall, which are necessary to accommodate individuals with mobility limitations. Additionally, the presence of a black trash bin and other restroom items further reduced the available space, creating additional obstacles that made access even more difficult.

36.5.2.    Even more concerning, Mr. Uriel was unable to use the restroom at all because it lacked both a rear and a side grab bar, which are essential for individuals with mobility impairments. Without these supports, he was unable to stabilize himself or transfer safely, forcing him to leave the restroom without being able to meet his needs. This experience was frustrating, distressing, and physically exhausting, making him feel that the establishment had completely disregarded the needs of individuals with mobility disabilities.

36.5.3.    To provide an accessible restroom, Viva La Pepa must ensure that a minimum clear space of 60 inches from the side wall and 56 inches from the back wall is maintained around the toilet, free of any obstructions such

as trash bins or other objects. Additionally, the restaurant must install a securely mounted rear grab bar and a side grab bar at the appropriate height to allow individuals like Mr. Uriel to use the restroom safely and independently. These modifications would ensure that all customers, regardless of their mobility limitations, can access and use the facilities without unnecessary difficulties.

36.6.    In addition to all the architectural barriers that Mr. Uriel has faced at Viva La Pepa, he has also suffered economic losses as a direct result of these accessibility issues. Mr. Uriel has arrived at the restaurant expecting to enjoy a meal, only to realize that he cannot enter or access certain areas due to the presence of physical barriers that prevent him from navigating the space safely. When this happens, he is forced to leave, return at a later time, or seek an alternative restaurant that better accommodates his mobility needs. This has resulted in additional transportation costs, wasted time, and unnecessary expenses, causing him financial harm that could have been avoided if Viva La Pepa were fully accessible.

36.7.    For Mr. Uriel, dining out is more than just eating—it is a chance to enjoy himself, disconnect from his daily health struggles, and experience an environment that brings him joy. However, the lack of accessibility at Viva La Pepa has turned what should be a pleasant and routine experience into an exhausting and costly ordeal. Instead of being able to enjoy his time without worry, he now faces uncertainty each time he considers visiting, knowing that he might have to leave and spend more time and money just to find an accessible alternative. These unnecessary financial burdens have only further discouraged him from returning, as he cannot

justify the additional costs and frustrations caused by the restaurant's failure to provide an accessible environment.

### *Responsibility of the Municipality of Ponce and JRC Consolidated Inc.*
### *Aloft Ponce Hotel & Casino*

37.   Mr. Uriel enjoys visiting Aloft Ponce Hotel & Casino because of its beautiful atmosphere and, in particular, the exciting amenities it offers, such as restaurants like Taqueria Orale, Hard Rock and the casino area, which have always captured his interest. Additionally, the hotel's convenient location—just eight minutes away by car from Mr. Uriel's residence—makes it an ideal place for him to visit frequently. However, during visits in January and previous months, Mr. Uriel has felt dissuaded from returning to the hotel due to accessibility barriers that have compromised his ability to navigate the space comfortably and safely. These architectural barriers have negatively impacted his experience, making it difficult for him to access and fully enjoy the amenities he appreciates:

37.1.   Inaccessible Parking at Aloft Ponce Hotel & Casino: During his visits to Aloft Ponce Hotel & Casino, Mr. Uriel encountered significant barriers in the parking area, which made it inaccessible and inadequate for him:

37.1.1.   The designated accessible parking spaces did not meet the necessary size requirements, as they were too narrow to allow him to exit and enter his vehicle safely while using his walker.

37.1.2.   Another major issue was that the parking spaces were not located near an accessible route leading to the hotel's entrance. This forced Mr. Uriel to navigate an extended and difficult path, which was especially challenging and exhausting due to his mobility limitations. The lack of properly

designated and accessible parking spaces created an unsafe and frustrating experience, making it unnecessarily difficult for him to access the hotel independently and comfortably.

37.1.3.　As a result of these barriers, Mr. Uriel now feels dissuaded from visiting Aloft Ponce Hotel & Casino, as he fears encountering the same accessibility issues each time he arrives. The difficulty in parking safely and reaching the entrance has made his visits stressful and physically demanding, diminishing his ability to enjoy the amenities he previously looked forward to.

37.1.4.　To remedy these accessibility issues, Aloft Ponce Hotel & Casino must properly designate and mark accessible parking spaces with clear signage and pavement markings, ensuring they are easily identifiable for individuals with disabilities. These spaces must also comply with the required dimensions, providing adequate width and adjacent access aisles to allow individuals using mobility aids, such as walkers, to enter and exit their vehicles safely. Additionally, the hotel must relocate accessible parking spaces closer to an accessible route leading directly to the entrance, eliminating unnecessary obstacles and ensuring a safe and direct path for individuals with mobility limitations.

37.2.　Accessibility Barriers in the Casino Area: Mr. Uriel visited the casino area at Aloft Ponce Hotel & Casino and encountered several accessibility barriers that made it difficult for him to navigate and enjoy the space. The following obstacles significantly affected his experience:

37.2.1.    Inaccessible Counter in the Casino Area: During his visits to the casino area at Aloft Ponce Hotel & Casino, Mr. Uriel encountered significant accessibility barriers that made it impossible for him to use the service counter comfortably:

37.2.1.1.    The counter was excessively high, making it inaccessible and inadequate for Mr. Uriel. The absence of a designated accessible section prevented him from positioning himself comfortably to interact with the staff or conduct any transactions.

37.2.1.2.    In addition to the counter being too high, there was a staircase directly in front of it, further complicating access for Mr. Uriel and creating a hazardous environment for him. To make matters worse, the counter was surrounded by high green chairs, which not only blocked his approach but also made the area even more difficult to navigate. Since these chairs were also high, Mr. Uriel could not use them as an alternative seating option, as they were unsuitable for someone relying on a walker for stability.

37.2.1.3.    Due to these barriers, Mr. Uriel was completely unable to position himself at the counter, making him feel excluded and frustrated. The experience was physically exhausting and discouraging, as he had no way to safely interact with casino staff or engage in the same manner as other guests. As a result, Mr. Uriel now feels dissuaded from visiting the casino area, as he fears facing the same obstacles again and experiencing the same frustration.

      37.2.1.4.    To address this issue, Aloft Ponce Hotel & Casino must modify the counter by incorporating an accessible section no higher than 36 inches, allowing individuals using walkers to approach and interact comfortably. Additionally, the hotel should remove or reposition the high green chairs to ensure a clear and unobstructed space for individuals with mobility aids. To further improve accessibility, an alternative route that does not require using the staircase should be provided, ensuring that guests like Mr. Uriel can reach the counter safely. Implementing these changes would create a more inclusive and accessible environment, allowing individuals with mobility disabilities to use the casino facilities without unnecessary difficulties or exclusion.

37.3.    Inaccessible Restroom on the First Floor: During his visit to Aloft Ponce Hotel & Casino, Mr. Uriel encountered significant accessibility barriers in the first-floor restroom, which made it extremely difficult and unsafe for him to use:

    37.3.1.    One of the most critical issues was the improper positioning of the rear grab bar, which was centered on the toilet. This placement did not allow for a proper and secure grip, making it difficult for Mr. Uriel to stabilize himself while transferring or maintaining balance.

    37.3.2.    Additionally, a large metallic trash bin was placed near the toilet, further limiting the available maneuvering space and creating an additional obstacle that made it harder for Mr. Uriel to position himself safely. The lack of sufficient clear floor space added to his physical strain and

discomfort, making it unnecessarily difficult for him to use the restroom independently.

37.3.3.    Furthermore, the mirrors were installed at an inaccessible height, preventing Mr. Uriel from using them comfortably. Given his mobility limitations and the need to rely on his walker for support, the height of the mirrors excluded him from being able to see his reflection properly, making the restroom inadequate and unaccommodating for individuals with disabilities.

37.3.4.    To address these issues, Aloft Ponce Hotel & Casino must correctly reposition the rear grab bar to ensure proper support and safe use, rather than centering it on the toilet. The grab bar should be installed in a way that allows individuals like Mr. Uriel to grip it securely when transferring. Additionally, the hotel must remove or relocate the metallic trash bin to ensure that the required clear space around the toilet is available for safe maneuverability. Lastly, the mirrors should be lowered or angled appropriately so that individuals using mobility aids can use them comfortably.

37.4.    In addition to the architectural barriers that Mr. Uriel has encountered at Aloft Ponce Hotel & Casino, he has also suffered economic losses as a direct consequence of these accessibility issues. When visiting the hotel, he expected to enjoy its amenities, such as its restaurants and casino area, but found himself unable to fully access certain spaces due to physical obstacles that made it difficult for him to navigate safely. Because of these barriers, Mr. Uriel had to

leave, attempt to return later, or look for an alternative venue that could better accommodate his mobility needs. This led to additional transportation expenses, lost time, and unnecessary costs, causing financial harm that could have been avoided if the hotel's facilities were fully accessible.

### Responsibility of the Municipality of Ponce and JRC Consolidated Inc. - Hard Rock Cafe Ponce

38. Mr. Uriel enjoys visiting Hard Rock Café Ponce because he is attracted to the unique atmosphere of this restaurant, which is part of an international chain of themed restaurants founded in 1971 in London. It is known for its rock music-inspired decor, featuring memorabilia from famous artists, and for its offering of American food such as burgers and ribs. Over time, the brand has expanded into hotels, casinos, and live events, becoming a global icon of entertainment and rock culture, which makes the experience at Hard Rock Café always special and appealing to him. The food is incredible, as is the live music. However, as a result of his last visit on January 29, 2025, Mr. Uriel feels discouraged from returning due to the architectural barriers he personally identified. Since he uses a walker to move around, he fears experiencing another discriminatory situation, as he did during his last visit. Specifically, Mr. Uriel personally identified the following architectural barriers at Hard Rock Café Ponce:

   38.1.  Bar Counter Inaccessible: Mr. Uriel personally identified that the bar counter inside the property was too high, preventing him from using it comfortably. Additionally, it was almost entirely obstructed by very high stools, which he could not use due to his health conditions. When attempting to order, the counter's design and lack of accessible options forced him to remain standing with his walker for an extended period, causing pain in his spine and sacroiliac joints. This

145

situation led to great discomfort and frustration, as he was unable to enjoy the establishment's service under equal conditions.

38.2.  Exposed Plumbing Under Sink: Mr. Uriel personally identified that the bathroom sink had exposed plumbing directly beneath it, preventing him from approaching it frontally with his walker. When attempting to use it, he had to position himself sideways, which was extremely uncomfortable due to his bilateral lumbar radiculopathy and chronic osteoarthritis in his spine. This forced posture caused him pain and limited his ability to wash his hands properly, affecting his experience in the establishment.

38.3.  Soap Dispenser Positioned Too High: Mr. Uriel personally identified that the soap dispenser in the bathroom was positioned too high, making it difficult for him to use. Due to his limited mobility and damaged lumbar disc, he had to stretch awkwardly to reach it, causing pain in his spine. This barrier made it difficult for him to wash his hands independently, forcing him to rely on others.

38.4.  Paper Towel Dispenser Positioned Too High: Mr. Uriel personally identified that the paper towel dispenser in the bathroom was positioned too high, making it difficult for him to reach. Due to his bilateral lumbar radiculopathy and chronic osteoarthritis, he had to make an extra effort to grab a towel, causing pain and increasing his discomfort. This barrier affected his independence in the establishment, as he could not complete this basic hygiene task without difficulty.

38.5.  Hand Dryer Positioned Too High: Mr. Uriel personally identified that the hand dryer in the bathroom was positioned too high, making it difficult for him to use comfortably. Due to his limited mobility and chronic osteoarthritis in his spine, he

had to raise his arms into an uncomfortable posture, causing pain and making it difficult for him to dry his hands. This barrier forced him to leave the bathroom with wet hands, negatively impacting his experience in the establishment.

38.6.    Mirror Positioned Too High: Mr. Uriel personally identified that the mirror in front of the sink was positioned too high, preventing him from seeing himself while trying to groom. Due to his limited mobility and need to use a walker, he could not lean forward or make an effort to see his reflection. This barrier caused him frustration, as he was unable to check his appearance before leaving the bathroom, affecting his experience and sense of autonomy in the establishment.

38.7.    Obstruction Around The Toilet Inside The Stall: Mr. Uriel personally identified that the space around the toilet inside the stall in the bathroom was obstructed by a dark blue object located to its right. This barrier severely limited his ability to maneuver with his walker and properly position himself when using the toilet. Due to his chronic osteoarthritis and osteoporosis, he struggled to stabilize himself when attempting to sit and stand, causing him pain and distress over the risk of falling.

38.8.    Bathroom Stall Too Narrow: Mr. Uriel personally identified that the bathroom stall did not have enough space to maneuver with his walker. The dimensions were extremely narrow, making it difficult for him to move and adjust within the area. Due to his limited mobility and bilateral lumbar radiculopathy, he was forced to move with difficulty and make unnecessary efforts, increasing his pain and affecting his stability. The lack of space made him feel unsafe and vulnerable inside the stall.

38.9.    Lack Of Side Grab Bar Inside The Stall: Mr. Uriel personally identified that the bathroom stall did not have a side grab bar, making it extremely difficult for him to stabilize himself when attempting to sit and stand from the toilet. Due to his damaged lumbar disc and chronic osteoarthritis, he needed support to perform these movements without pain or risk of falling. The absence of a grab bar forced him to use his walker improperly for support, causing him discomfort and increasing tension in his spine.

38.10.   Toilet Paper Dispenser Obstructing Space Inside The Stall: Mr. Uriel personally identified that the toilet paper dispenser was located on the right side of the toilet inside the stall, obstructing the limited space available around it. This barrier restricted his ability to move with his walker and affected his posture when sitting. Due to his chronic osteoarthritis and bilateral lumbar radiculopathy, he had to make uncomfortable and forced movements to access the toilet paper, causing him pain and additional difficulties inside the stall.

38.11.   Trash Can Obstructing Space On The Left Side Of The Toilet Inside The Stall: Mr. Uriel personally identified that there was a white trash can on the left side of the toilet inside the bathroom stall, obstructing the available space. This prevented him from maneuvering his walker correctly and affected his mobility inside the stall. Due to his osteoporosis and chronic osteoarthritis, he had to make additional efforts to position himself, causing him discomfort and pain. This barrier significantly complicated his experience in the bathroom and limited his independence.

38.12.   Sink Inside The Stall With Inaccessible Base: Mr. Uriel personally identified that the sink inside the bathroom stall had a base that prevented lateral and frontal access. When attempting to approach it with his walker, he encountered a physical barrier that made it impossible to use the sink comfortably. Due to his bilateral lumbar radiculopathy and chronic osteoarthritis, he had to stretch and adopt an uncomfortable posture to reach the water, causing him pain and limiting his ability to perform proper hygiene.

38.13.   The barriers on the property could be eliminated by lowering the bar counter to an accessible height and ensuring that a portion of it remains free of high stools to accommodate individuals using mobility aids. Installing a protective cover over the exposed plumbing under the sink would allow for unobstructed frontal access. The soap dispenser, paper towel dispenser, and hand dryer should be repositioned at an appropriate height to ensure easy reach for individuals using a walker or with limited mobility. Lowering the bathroom mirror would enable individuals seated or using a walker to see themselves without difficulty. Removing obstructive objects around the toilet inside the stall, including the dark blue object on the right, the trash can on the left, and the toilet paper dispenser, would create adequate maneuvering space and prevent unnecessary strain. Expanding the dimensions of the bathroom stall would allow for sufficient room to accommodate a walker, preventing discomfort and difficulty when positioning. Installing a side grab bar next to the toilet would provide essential support for individuals with limited mobility, reducing the risk of falls. The toilet paper dispenser should be repositioned so that it does not obstruct movement or require awkward reaching.

The sink inside the stall should be modified to eliminate the inaccessible base, allowing for both lateral and frontal access. Additionally, ensuring that all essential fixtures inside the stall, such as the toilet paper dispenser and grab bars, are properly positioned would further improve accessibility. Finally, making sure that all dispensers, including the soap dispenser, paper towel dispenser, and hand dryer, are placed at a height that allows easy access without requiring excessive stretching or reaching would eliminate barriers to proper hygiene.

### *Responsibility of the Municipality of Ponce, JRC Consolidated Inc. and Taqueria Orale Orale 1, Inc. - Taqueria Orale*

39.    One of the reasons Mr. Uriel visits Aloft Ponce Hotel & Casino is because it is home to Taquería Orale, as Mexican food is one of his greatest cravings. In particular, he enjoys the excellent chicken tacos, which he finds incredibly delicious and one of his favorite dishes. However, Mr. Uriel now feels dissuaded from visiting Taquería Orale and, consequently, the hotel itself, due to the existence of architectural barriers that have made it difficult for him to access and enjoy the restaurant comfortably.

39.1.    Inaccessible Counter at Taquería Orale: During his visit to Taquería Orale, located inside Aloft Ponce Hotel & Casino, Mr. Uriel encountered significant accessibility barriers at the service counter, which made it impossible for him to use comfortably. The counter was excessively high, making it inaccessible and inadequate for individuals using walkers, such as Mr. Uriel. There was no designated lower section, which prevented him from approaching and interacting comfortably with the staff.

39.2.    Additionally, the counter was surrounded by tall red chairs, which created an additional obstacle and blocked his ability to get close to the counter safely. Due

to their excessive height, these chairs were unsuitable for Mr. Uriel to use, as his medical condition prevents him from sitting on high stools. As a result, he was forced to remain standing behind the chairs, struggling to communicate with the staff and complete his order. This situation was physically exhausting and frustrating, making him feel excluded from the same level of service as other guests.

39.3.    This situation severely impacted Mr. Uriel's experience. Because he relies on his walker for support, standing for an extended period caused him physical strain, discomfort, and fatigue. The lack of proper space forced him to stretch forward awkwardly to be seen and heard by the staff, making the ordering process frustrating and exhausting. The difficulty in balancing himself while trying to interact with the staff left him feeling physically vulnerable and excluded, as he was unable to access the counter in the same way as other customers.

39.4.    This experience left Mr. Uriel feeling discouraged and frustrated, making him reluctant to return to Taquería Orale. Instead of enjoying a meal in a place he liked, he faced unnecessary barriers that made his visit uncomfortable and stressful. As a result, he now feels dissuaded from visiting Taquería Orale again, as he fears facing the same obstacles and discomfort every time.

39.5.    To address these issues, Taquería Orale should incorporate an accessible counter section no higher than 36 inches, allowing individuals using walkers to approach and interact comfortably. Additionally, the restaurant should rearrange the seating layout to ensure clear and unobstructed space in front of the counter, preventing high stools from blocking access. If high chairs remain in use, the establishment

should provide alternative accessible seating options at a comfortable height for individuals with mobility limitations.

40.    Instead of being able to place his order and enjoy his meal as he had planned, he was forced to either leave, attempt to return later, or find another restaurant that better accommodated his mobility needs. This situation resulted in unnecessary expenses, including additional transportation costs and wasted time, which could have been avoided if the establishment had been accessible. The frustration of having to make last-minute adjustments to his plans, simply because he could not move freely within the restaurant, turned what should have been an enjoyable outing into an inconvenient and costly experience.

41.    For Mr. Uriel, dining out is more than just eating—it is something he genuinely enjoys, a way to take his mind off his health challenges and engage in an activity that brings him joy. However, his visit to Taquería Orale was overshadowed by the accessibility barriers he faced, making him feel unwelcome and discouraged from returning. Instead of being able to enjoy his meal without difficulty, he had to deal with the stress of accessibility issues, adding unnecessary financial and emotional strain.

### *Responsibility of the Municipality of Ponce and Consejo De Titulares Santa Maria Medical Building Corp. - Santa María Medical Building*

42.    Mr. Uriel Sepúlveda frequently visits the Santa María Medical Building, as he undergoes his routine tests at one of the laboratories within the building, Laboratorio Clínico Santa María. During his visits, he has appreciated the quality of care he receives, as well as the efficiency of the medical services provided. In the past, Mr. Uriel has frequently visited the building, with some of his most recent visits taking place between July and August 2024, and later on November 13, 2024. His last visit was in January 2025, and as a result,

he feels discouraged from returning. Since he uses a walker to move around, he fears experiencing another discriminatory situation, as he did during his last visits. Specifically, Mr. Uriel personally identified the following architectural barriers at the Santa María Medical Building:

42.1.   Poor Pavement Conditions on the Public Sidewalk: Mr. Uriel personally identified that cracks, uneven surfaces, and unstable pavement on the sidewalk leading to Santa María Medical Building made it difficult for him to move safely, causing him pain and balance issues. These barriers forced him to exert extra effort, making his access physically exhausting and unsafe.

42.1.1.   Mr. Uriel personally identified that the irregular pavement conditions on the public sidewalk leading to Santa María Medical Building posed a significant barrier to his mobility. Cracks, uneven surfaces, and unstable pavement made it difficult for him to move safely, causing him to trip multiple times and increasing the risk of falling. Due to his assisted mobility, these irregularities forced him to exert additional effort to maintain balance and navigate obstacles, which caused him pain in his lower back and legs, exacerbating the discomfort from his damaged lumbar disc and bilateral radiculopathy. The lack of a stable surface compromised his safety and forced him to rely on excessive physical effort to reach the building, making access exhausting and difficult.

42.1.2.   The Municipality of Ponce is aware of the deteriorated condition of the public sidewalk in front of Santa María Medical Building, yet it has taken no action to address this issue. By neglecting the necessary repairs, the

municipality perpetuates the discrimination suffered by Mr. Uriel and all individuals with disabilities, maintaining barriers that restrict their access and put their safety at risk. This inaction not only affected Mr. Uriel's mobility but also reinforces an exclusionary environment that prevents equal conditions for all individuals with limited mobility.

42.2.    Lack of Accessible Parking Spaces: Mr. Uriel personally identified that the insufficient number of designated parking spaces for individuals with limited mobility at Santa María Medical Building posed a significant barrier for him. On multiple occasions, when no accessible spaces were available, he was forced to park in regular areas that did not meet his specific needs, making it considerably difficult for him to access the building safely. This required him to walk longer distances across surfaces unsuitable for assisted mobility, which caused him pain in his back and legs, worsening the discomfort from his damaged lumbar disc and bilateral radiculopathy. The extra effort he had to exert made each visit an unnecessarily exhausting experience, affecting his well-being and discouraging him from attending as often as he needs.

42.3.    Inadequate Parking Space Dimensions: Mr. Uriel personally identified that the parking spaces at Santa María Medical Building lacked adequate dimensions to ensure safe access for individuals with limited mobility. Many of these spaces were too narrow or lacked proper lateral access, which prevented him from maneuvering safely when entering and exiting his vehicle. The insufficient space forced him to make strained and physically demanding movements, which caused him pain and made his mobility more difficult. Additionally, the absence of a

clear area to use his walker compromised his stability and safety, increasing the risk of falls or injuries. These conditions not only affected his independence but also made each visit to the building an exhausting challenge.

42.4.    Poor Pavement Conditions in the Parking Area: The deteriorated pavement in the parking area of Santa María Medical Building creates additional challenges for Mr. Uriel when accessing the facility. Deep cracks, potholes, and uneven surfaces hinder his ability to maneuver safely when exiting his vehicle and using his assistive device. These irregularities not only increase the physical effort required for movement but also create a hazardous situation that could lead to falls or injuries. The absence of a level and well-maintained surface makes each visit a difficult experience, restricting his safe and independent access to the services he needs.

42.5.    Poorly Designed Ramps and Curbs: Mr. Uriel personally identified that the ramps and curbs at Santa María Medical Building have excessively steep slopes and lack proper edges, which significantly hindered his safe access. These conditions forced him to perform physically demanding and strenuous maneuvers to ascend or descend the ramps, increasing his discomfort and the risk of losing balance. Additionally, the absence of proper curb edges at pedestrian crossings compromised his stability, heightening the danger of tripping or falling. These structural deficiencies made mobility difficult, impacted his safety, and restricted his independent access to the facility.

42.6.    Main Entrance Door Too Heavy: Mr. Uriel personally identified that the main entrance door to the building was too heavy, which significantly hindered his

ability to enter. To open it, he had to exert excessive effort, which was particularly difficult due to his limited mobility. This barrier forced him to perform uncomfortable and physically demanding movements, affecting his ability to enter the building safely and independently. The lack of an adequate entry system not only made access difficult but also caused him frustration and limited his right to an accessible and barrier-free environment.

42.7.   Narrow Hallways: Mr. Uriel personally identified that the hallways inside Santa María Medical Building were too narrow, which prevented him from moving safely and comfortably. Due to the lack of adequate space, he had to maneuver with difficulty while navigating the area, which caused him discomfort and required greater physical effort. The narrow hallways also limited his ability to turn or change direction with his walker, increasing the risk of tripping or colliding with walls and furniture. These conditions not only restricted his mobility but also made it harder for him to access the medical services he needs, turning each visit into a frustrating and exhausting experience.

42.8.   Hallways with Obstructing Objects: Mr. Uriel personally identified additional barriers inside Santa María Medical Building due to objects blocking the hallways. Items such as furniture, containers, medical equipment, or improperly placed signage reduced the available space, forcing him to perform complicated maneuvers to move forward. Due to the lack of a clear pathway, he had to exert extra effort to avoid obstacles, which caused him pain in his back and legs, worsening the discomfort from his damaged lumbar disc and bilateral radiculopathy. On multiple occasions, his walker got caught between objects,

which strained his joints and made it difficult for him to maintain balance. These obstructions not only made mobility more difficult but also increased the risk of tripping and falling, affecting his safety and independence. As a result, his movement within the building was exhausting and frustrating, making him feel vulnerable due to the lack of accessibility.

42.9.    On December 16, 2024, an email was sent to Ornago@live.com, addressed to Santa María Medical Building, requesting the removal of the existing accessibility barriers that significantly hinder Mr. Uriel's ability to access the facility safely and independently. The email detailed the specific obstacles affecting his mobility and the modifications required to comply with accessibility standards. After receiving no response, a follow-up email was sent on December 27, 2024, but no reply was received, nor were any meaningful steps taken to address the identified barriers. The lack of an appropriate resolution has continued to impose unnecessary hardships on Mr. Uriel, restricting his ability to access medical services without undue difficulty.

42.10.    The barriers on the property could be eliminated by implementing necessary modifications to ensure safe and independent access for individuals with mobility impairments, in compliance with accessibility standards. The Municipality of Ponce must take immediate action to repair the deteriorated public sidewalk leading to Santa María Medical Building by resurfacing cracked and uneven pavement, filling potholes, and ensuring a stable, level surface. This improvement would eliminate the excessive effort required for movement and reduce the risk of tripping or falling. In the parking area, the number of designated accessible spaces

must be increased, ensuring that they meet the appropriate width and lateral access requirements to allow individuals using mobility aids to enter and exit their vehicles safely. The pavement in the parking area must also be repaired, eliminating deep cracks and uneven surfaces that create hazards. The ramps and curbs must be redesigned to meet accessibility standards, ensuring gentler slopes and properly defined curb edges at pedestrian crossings to prevent instability and the risk of falls. At the building entrance, the main door must be replaced with an automatic or assisted entry system to allow individuals with mobility limitations to access the facility without excessive physical effort. Inside the building, hallways must be widened where possible, and all passageways must remain free of obstructions, such as furniture, medical equipment, or improperly placed signage. Ensuring clear and organized hallways would facilitate safe and efficient movement, reducing unnecessary physical strain and safety risks. By implementing these modifications, Santa María Medical Building would provide an accessible, safe, and inclusive environment, allowing Mr. Uriel and other individuals with disabilities to access the medical services they need without undue hardship or discrimination.

42.11.    In addition to the architectural barriers Mr. Uriel has encountered at Santa María Medical Building, he has also suffered economic losses as a direct result of these accessibility issues. On multiple occasions, he has been forced to leave or return at a later time due to physical barriers that prevented him from accessing the facility safely. These difficulties caused him to incur additional transportation costs, waste valuable time, and face unnecessary expenses. The financial burden

he has experienced could have been avoided if the necessary modifications had been made to ensure full accessibility within the building, on the sidewalks, and in its surrounding areas.

### *Responsibility of the Municipality of Ponce and Guarina Bakery Inc. - La Guarina Bakery*

43. Mr. Uriel Sepúlveda is interested in visiting La Guarina Bakery and values the quality of its baked goods, as well as the warm atmosphere he has heard it offers. In particular, he is drawn to the variety of fresh products and the dedication of the staff, who are known for their excellent service. Mr. Sepúlveda has been aware of the architectural barriers at the establishment since October 2024, and although he has wanted to visit in November and December 2024, and January 2025, he has decided not to do so due to his knowledge of these barriers. These limitations have ultimately dissuaded him from going, despite his interest in the food and the experience the place provides. Mr. Sepúlveda is specifically aware of the following barriers at La Guarina Bakery:

   43.1. Sidewalk in Poor Condition: Mr. Uriel is aware that the public sidewalk at La Guarina Bakery is in poor condition, with worn-out pavement, deep cracks, and potholes that make passage difficult. These issues directly affect his mobility with the walker, as the wheels get stuck in the irregularities, and he loses stability while trying to navigate the uneven surfaces. Every step requires extra effort to maintain balance, causing him immediate pain and a constant sense of insecurity while moving. Additionally, the lack of a firm and even surface forces him to move with extreme caution, reducing his independence and making every trip slow and exhausting.

43.1.1.  Lack of Signage for Accessible Spaces: Mr. Uriel is aware that the public sidewalk at La Guarina Bakery lacks proper signage for accessible spaces for people with reduced mobility. The absence of clear indications forces him to search on his own for safe routes, increasing his physical effort and the risk of taking an unsuitable path. Without visible references, he is forced to move through areas that may be hazardous, where uneven surfaces and unexpected obstacles make using his walker more difficult. This lack of signage complicates his mobility and exposes him to situations where he needs external assistance to continue his journey safely.

43.1.2.  Although the Municipality of Ponce is aware of these problems, it fails to take any steps to resolve them. This lack of action reflects a neglect of the rights of individuals with disabilities and further reinforces the systemic discrimination they experience. By not guaranteeing accessibility, the municipality sustains an environment of exclusion, preventing Uriel Sepúlveda from moving safely and with dignity.

43.2.  Lack of Accessible Parking Spaces: Mr. Uriel is aware that La Guarina Bakery does not have a sufficient number of designated accessible parking spaces, which presents a significant barrier to his mobility. Without adequate spaces, he must consider parking in standard areas that do not provide the necessary conditions to ensure safe access. This situation requires him to travel longer distances to reach the entrance, exposing him to surfaces that are not always stable or suitable for his assistive device. These difficulties increase the physical effort he must exert,

causing discomfort and heightening the risk of imbalance or fatigue even before entering the establishment.

43.3.    Inadequate Parking Space Dimensions: Mr. Uriel is aware that the parking spaces at La Guarina Bakery do not have the necessary dimensions to allow for safe and unobstructed access. The spaces are too narrow or lack proper lateral access, making it difficult for him to use his assistive device when entering or exiting his vehicle. The absence of a clear area prevents him from maneuvering with ease, forcing him into uncomfortable and physically demanding movements that compromise his stability. Additionally, the lack of accessible lateral space limits his ability to position himself properly, increasing the risk of excessive strain or injury while attempting to access the establishment.

43.4.    Heavy Door at the Main Entrance: Mr. Uriel is aware that the main entrance door at La Guarina Bakery is very heavy, which presents a significant barrier to his access. To enter, he must exert considerable effort to open the door manually, requiring uncomfortable and physically demanding movements. The excessive resistance of the door compromises his ability to access the establishment independently and safely, forcing him to rely on assistance from others or perform maneuvers that may affect his stability and cause additional discomfort.

43.5.    Narrow Aisles: Mr. Uriel is aware that the aisles at La Guarina Bakery have limited space, which makes his mobility difficult inside the establishment. The lack of adequate width in circulation areas prevents him from maneuvering his walker easily, increasing the risk of colliding with furniture or other elements. Additionally, the presence of tables, chairs, display stands, and carts placed in the

aisles further reduces the available space, creating additional obstacles that hinder his safe movement. These conditions force him to perform uncomfortable and physically demanding maneuvers, affecting his stability, comfort, and safety during his visit.

43.6.  Excessively High Counters: Mr. Uriel is aware that the service and payment counters at La Guarina Bakery are positioned at a height that does not provide adequate access for individuals with limited mobility. The excessive height of these counters prevents him from interacting comfortably and effectively with staff, making it difficult to place orders, complete transactions, and receive products. This barrier forces him to stretch or adopt uncomfortable postures that require additional effort and may affect his stability. The lack of an accessible counter space limits his independence and creates an unnecessarily challenging experience when attempting to access the bakery's services.

43.7.  Obstructed Counter: Mr. Uriel is aware that the counter at La Guarina Bakery is obstructed by various items. This barrier prevents him from properly approaching the counter, as the reduced space and presence of obstacles make it difficult for him to move with his walker. Due to his chronic osteoarthritis in the spine and sacroiliac joints, any forced movement or uncomfortable posture causes him immediate pain, making it challenging to stretch or maneuver around objects. Additionally, the lack of adequate space forces him into positions that increase pressure on his spine and compromise his stability, affecting his ability to shop independently and safely.

43.8.   The barriers on the property could be eliminated by implementing key accessibility modifications that ensure safe and independent access for individuals with mobility limitations, such as Mr. Uriel. One essential improvement is increasing the number of designated accessible parking spaces and ensuring they meet the necessary standards. These spaces must be properly marked, adequately sized, and include access aisles that allow for the safe deployment of ramps and assistive devices. By providing sufficient accessible parking close to the entrance, Mr. Uriel would no longer be required to navigate long distances or unstable surfaces, significantly reducing the physical effort and risks associated with reaching the bakery. Additionally, adjusting the dimensions of the parking spaces is critical to eliminating existing barriers. Widening the spaces and ensuring proper lateral access would allow Mr. Uriel to enter and exit his vehicle safely without having to perform physically strenuous maneuvers. An accessible layout with clearly designated spaces would prevent unnecessary strain and provide a secure environment that accommodates his mobility needs. The installation of automatic doors or assisted opening mechanisms would further enhance accessibility by removing the difficulty associated with manually opening heavy doors. Providing a hands-free or low-effort entry solution would ensure that Mr. Uriel can access the bakery without requiring assistance, maintaining his independence and reducing the physical strain caused by exerting force to open the door. Inside the bakery, widening the aisles and ensuring clear passageways free from obstructions would greatly improve navigation for individuals using assistive devices. Removing excess furniture, repositioning display stands, and

creating a layout that prioritizes accessibility would prevent the need for uncomfortable and physically demanding maneuvers. By maintaining an open and accessible space, Mr. Uriel would be able to move safely and comfortably while selecting products and interacting with the bakery's offerings. Finally, modifying the service and payment counters to include an accessible section at an appropriate height would eliminate the difficulties associated with excessively high counters. Providing a lower portion of the counter would allow Mr. Uriel to comfortably place orders, complete transactions, and receive his purchases without struggling with unstable or uncomfortable postures. This simple adjustment would ensure that he can fully and independently engage with the bakery's services without unnecessary barriers.

### *Responsibility of the Municipality of Ponce and Comercio Cash & Carry, Inc.*
### *Comercio Cash & Carry*

44.    The Plaintiff, Mr. Uriel Sepúlveda Alicea, visited the Cash & Carry store on November 6, 2024, at approximately 1:30 p.m. As a frequent customer, Mr. Sepúlveda was drawn to the store not only for its competitive prices and wide selection of products but also for its convenient location and the variety of essential goods available. His intention was to complete his grocery shopping efficiently and without difficulty. However, his visit was significantly hindered by the presence of multiple architectural barriers, which restricted his ability to access and utilize the store's facilities on equal terms with other customers. These barriers, particularly in the parking area, service counters, and restroom, created unnecessary physical challenges that made his experience both frustrating and burdensome. During his visit on November 6, 2024, Mr. Sepúlveda encountered

accessibility barriers that directly impacted his ability to navigate the store safely and independently:

44.1.    Inaccessible Parking Spaces: During his visit to Cash & Carry, Mr. Sepulveda encountered significant accessibility barriers in the parking area, which negatively impacted his ability to enter the store safely and independently.

44.1.1.    The accessible parking spaces were in severe disrepair, with an irregular, cracked, and uneven surface, creating a hazardous environment for Mr. Uriel. Due to the worn-out paint markings, the accessible parking spaces and access aisles were nearly unrecognizable, making it difficult for Mr. Sepúlveda to identify a proper place to park.

44.1.2.    The poor condition of the parking area caused Mr. Sepúlveda unnecessary physical strain as he had to carefully maneuver with his walker over uneven pavement, increasing his risk of tripping or losing balance. The lack of clearly marked accessible spaces and faded boundary lines further complicated his experience, forcing him to spend additional time searching for a safe place to park, only to find himself struggling to navigate an area that should have been designed for accessibility.

44.1.3.    As a result of these conditions, Mr. Sepúlveda felt discouraged from visiting the store again, knowing that the parking area posed a direct obstacle to his ability to shop comfortably and safely. The absence of a properly maintained accessible parking space created an unnecessary burden, making what should have been a routine shopping trip an exhausting and frustrating ordeal.

44.1.4.    Comercio Cash & Carry, Inc. must resurface the accessible parking spaces and access aisles to provide a smooth, even surface free from cracks and irregularities, allowing for safe and stable navigation for individuals using mobility aids. Additionally, it should repaint the accessible parking markings, boundary lines, and access aisles to make them highly visible and easy to identify. Proper signage with clear accessibility symbols should be installed to indicate the designated accessible parking spaces and prevent unauthorized use. Finally, the store must implement a regular maintenance plan to ensure that accessible parking spaces remain in good condition and free from hazards, allowing customers like Mr. Sepúlveda to shop with dignity, safety, and independence.

44.2.    Inaccessible Counter Height and Limited Maneuvering Space: During his visit to Cash & Carry, Mr. Uriel Sepúlveda Alicea encountered significant accessibility barriers at the service counter, which hindered his ability to interact with store staff and complete his purchases comfortably:

44.2.1.    The counter exceeded the maximum accessible height of 36 inches, making it difficult for him to view products, reach for his purchases, and engage in transactions effectively. Due to his reliance on a walker for mobility, Mr. Sepúlveda struggled to maintain his balance while attempting to reach the counter, as he needed support from his walker to remain stable.

44.2.2.    Standing for an extended period at an excessively high counter placed additional physical strain on Mr. Sepúlveda, as prolonged standing causes

fatigue and discomfort for individuals using mobility aids. Additionally, the height of the counter forced him to stretch uncomfortably, making it difficult to handle items or interact with store personnel without losing balance. The absence of an accessible lower section further restricted his ability to position himself properly, forcing him to stand at an awkward angle while managing his walker and trying to complete his purchase.

44.2.3.    Compounding these issues, the space around the counter was insufficient to allow Mr. Sepúlveda to position himself comfortably while using his walker. The lack of adequate maneuvering space forced him to stand in a constrained and uncomfortable position, making it even more difficult to interact with store staff.

44.2.4.    To comply with accessibility standards and ensure equitable service for individuals using mobility aids, the store must install a section of the counter that does not exceed 36 inches in height, allowing customers like Mr. Sepúlveda to interact with staff and handle purchases without physical strain. The accessible counter area should be clearly designated, free of obstructions, and provide enough depth for comfortable use. Additionally, the store must ensure that the area surrounding the counter has sufficient maneuvering space, allowing individuals using mobility aids to position themselves safely without obstacles or restrictions. Staff should also be trained to prioritize assisting customers at the accessible counter and a regular inspection process should be implemented to ensure compliance with accessibility standards.

44.3.    Inaccessible Restroom Facilities: During his visit to Cash & Carry, Mr. Uriel Sepúlveda Alicea encountered multiple accessibility barriers in the restroom, which made it impossible for him to use the facilities safely and independently:

44.3.1.    The space around the toilet failed to meet the minimum clearance requirements, as the nearby walls and fixtures severely restricted his ability to maneuver with his walker. This lack of sufficient space created unnecessary challenges, forcing Mr. Sepúlveda to struggle with positioning himself properly, ultimately making it impossible for him to use the restroom.

44.3.2.    Additionally, the restroom lacked a required rear grab bar, further compromising Mr. Sepúlveda's ability to safely transfer to and from the toilet. The only available lateral grab bar was placed too far from the toilet and the rear wall, making it inaccessible and ineffective. To make matters worse, a toilet paper roll was placed directly on top of this bar, obstructing its intended use, and another toilet paper roll was placed on top of the toilet itself, further limiting his ability to properly position himself. These obstacles, combined with the lack of proper support, prevented Mr. Sepúlveda from safely transferring onto the toilet, making the restroom completely unusable for him.

44.3.3.    The lack of proper insulation or protective covering over these pipes demonstrates a clear disregard for accessibility standards and further contributed to the restroom's failure to provide a safe and accommodating environment for individuals with disabilities.

44.3.4.    Due to these significant accessibility failures, Mr. Sepúlveda was unable to use the restroom at all, leaving him frustrated, uncomfortable, and forced to cut his visit short to find an alternative location with accessible facilities. This experience discouraged him from returning to the store, knowing that he would face the same exclusionary and unsafe conditions in the future.

44.3.5.    To ensure compliance with accessibility standards and provide an equitable and safe restroom experience for all customers, the store must expand the clearance space around the toilet to meet the minimum maneuvering requirements, allowing individuals with mobility devices to position themselves properly. Additionally, the store must install a rear grab bar and properly position the lateral grab bar within reach of the toilet, ensuring that both are fully accessible and free from obstructions. The store should also relocate toilet paper dispensers to an appropriate height and position, preventing them from obstructing essential safety features. Finally, the pipes beneath the sink must be covered with insulation or protective materials to eliminate potential burn or injury risks.

45.    Mr. Uriel Sepúlveda will be adversely affected in the future by the barriers present at the public accommodations identified in this Complaint, because:

45.1.    Many of the co-defendant public accommodations mentioned in this Complaint are located within the Municipality of Ponce, where Mr. Sepúlveda resides. Given

his proximity to these locations, they form part of his regular environment and are places he would naturally visit if they were accessible.

45.2.   Mr. Sepúlveda enjoys exploring and experiencing new places, particularly restaurants, local businesses, and recreational spaces. These visits are not only part of his routine but also contribute significantly to his quality of life by allowing him to remain active, engaged with his community, and enjoy leisure activities that help him cope with the challenges of his disability.

45.3.   One of Mr. Sepúlveda's favorite activities is discovering new restaurants, businesses, and entertainment spaces where he can enjoy social interactions and relaxation. His desire to continue engaging in these activities reinforces his intent to return to the locations listed in this Complaint once they become accessible.

45.4.   As a resident and active member of his community, Mr. Sepúlveda seeks to exercise his right to free mobility. Being able to move without obstructions is essential for him to perform everyday activities, such as grocery shopping, attending medical appointments, and enjoying recreational outings—activities that should not be limited by the presence of unlawful accessibility barriers.

46.   Mr. Sepúlveda fully intends to return to the co-defendant public accommodations once the architectural barriers have been removed. However, until all barriers affecting his type of disability are eliminated, he remains dissuaded from visiting these establishments. He will only be able to fully and equally access these locations in a dignified and safe manner when these violations are corrected.

47.   The plaintiff reserves the right to return to the public accommodations named in this Complaint at any time and for any lawful purpose, even if doing so requires enduring

discriminatory conditions, experiencing inconveniences that non-disabled individuals do not face, or exposing himself to risks to his personal safety and physical integrity. Just as a non-disabled person may choose to tolerate hostile but lawful conditions—such as a long checkout line—Mr. Sepúlveda may also attempt to visit these locations despite the illegal discriminatory conditions created by the defendants, regardless of the impact on his dignity or the potential harm to his physical well-being.

**D. The Municipality of Ponce's Failure to Ensure Accessibility in Public Spaces**

48.    The Municipality of Ponce has continuously failed to address the accessibility barriers that prevent Mr. Uriel Sepúlveda from moving safely and independently within his community. The sidewalks and curb ramps throughout Ponce, including those surrounding the co-defendant establishments identified in this Complaint, are in severe disrepair. These essential pathways, which should be accessible to individuals with disabilities, are instead cracked, uneven, obstructed by overgrown vegetation, or completely inaccessible, making them nearly impossible for Mr. Sepúlveda to navigate using his walker. Additionally, the lack of proper landing areas and the unsafe transitions from curb ramps to the roadway further obstruct his movement, often forcing him to resort to dangerous alternatives just to reach his destination.

49.    The Municipality of Ponce has also failed to regulate parking violations, allowing vehicles to obstruct curb ramps and pedestrian pathways, further limiting Mr. Sepúlveda's ability to move freely and safely. Despite the clear need to implement and enforce parking restrictions, local authorities have neglected to install proper signage, impose penalties, or take corrective measures to prevent illegal parking in these critical areas. As a result, Mr. Sepúlveda often finds himself unable to access businesses, sidewalks, and

public spaces, forcing him to alter his plans, take unsafe routes, or abandon visits altogether.

50. This pattern of inaction extends beyond sidewalks and parking areas to the co-defendant establishments identified in this Complaint, which Mr. Sepúlveda has attempted to visit. Many of these businesses fail to provide accessible entry routes, as they are surrounded by damaged sidewalks, narrow pathways, and improperly designed curb ramps, all of which create dangerous conditions for individuals with mobility impairments. The Municipality of Ponce has long been aware of these conditions but has neglected to require businesses to comply with accessibility laws. This lack of enforcement has allowed these businesses to continue operating without ensuring safe and accessible entry for individuals like Mr. Sepúlveda. Additionally, the absence of van-accessible parking spaces, inadequate signage, and poor layout of parking facilities has further complicated his ability to access these locations, turning routine activities such as dining or shopping into frustrating and hazardous experiences.

51. By knowingly allowing these barriers to persist, the Municipality of Ponce has systematically denied Mr. Sepúlveda equal access to public spaces. Its failure to maintain sidewalks, regulate parking, and enforce accessibility standards at the co-defendant establishments demonstrates a blatant disregard for the rights and safety of individuals with disabilities. As a result, Mr. Sepúlveda is frequently forced to navigate unsafe conditions or refrain from visiting places he would otherwise enjoy, effectively excluding him from fully participating in his own community. The Municipality's continued inaction constitutes a failure to fulfill its legal obligation to ensure accessibility, leaving Mr. Sepúlveda and others with mobility disabilities at a constant and unjust disadvantage.

**E. Violations of Title III of the Americans with Disabilities Act (ADA) by Places of Public Accommodation**

52.    The co-defendants identified in this Complaint as operators of places of public accommodation, are subject to the requirements of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., which mandates ensuring accessibility and equitable participation for individuals with disabilities in their facilities. Despite this legal obligation, these businesses, with the tacit approval of the Municipality of Ponce, continue to operate in violation of the ADA by failing to provide safe and accessible entry to their establishments.

53.    The co-defendants have failed to comply with the ADA by maintaining architectural barriers that prevent Mr. Uriel Sepúlveda and other individuals with mobility impairments from freely accessing their facilities. These violations include, but are not limited to:

53.1.    Lack of properly designated accessible parking spaces, including van-accessible spaces, failing to meet ADA parking standards.

53.2.    Absence of clear signage for accessible parking, allowing unauthorized vehicles to occupy these spaces, further restricting access.

53.3.    Failure to provide an accessible route from the parking lot to the main entrance, forcing individuals with disabilities to navigate unsafe or non-designated paths.

53.4.    Excessively high service counters, restricting Mr. Sepúlveda's ability to interact with staff or complete transactions independently due to his reliance on a walker.

53.5.    Obstructed pathways inside and outside the establishments, including narrow aisles, improperly placed furniture, and obstacles such as trash bins, further limiting accessibility.

54.     The lack of enforcement by the Municipality of Ponce has resulted in the creation of widespread architectural barriers that severely impact individuals with mobility impairments, including Mr. Sepúlveda, who is often forced to navigate unsafe conditions, alter his plans, or avoid these businesses altogether. As a result, he is deprived of the ability to access essential goods and services available to the general public, reinforcing his exclusion from spaces that should be accessible to all individuals, regardless of their mobility limitations.

**F.  Violations of Title II of the Americans with Disabilities Act (ADA) by the Municipality of Ponce**

55.     The Municipality of Ponce has an affirmative legal duty to ensure that public sidewalks, curb ramps, and pedestrian pathways within its jurisdiction comply with accessibility requirements and remain free from barriers that obstruct individuals with mobility impairments. However, the Municipality has systematically failed to fulfill this obligation, thereby creating an environment that is unsafe, exclusionary, and discriminatory for individuals with disabilities, such as Mr. Uriel Sepúlveda.

56.     The Municipality of Ponce bears direct responsibility for the ongoing maintenance, repair, and regulation of sidewalks and curb ramps throughout the city, including those surrounding the co-defendant establishments identified in this Complaint, which Mr. Sepúlveda has attempted to visit. This responsibility extends to ensuring that pedestrian pathways are maintained in an accessible condition, free from hazardous defects, and that they meet the standards outlined in the 2023 Public Right-of-Way Accessibility Guidelines (PROWAG).

57.     Despite this legal obligation, the Municipality has allowed public sidewalks and curb ramps to remain in severe disrepair, with broken pavement, cracks, potholes, overgrown

vegetation, and abrupt transitions that make them impassable for individuals using walkers or other mobility aids. Additionally, the Municipality has failed to regulate illegal parking practices, resulting in vehicles obstructing curb ramps and pedestrian pathways, further restricting Mr. Sepúlveda's ability to navigate these areas independently and safely.

58.   The lack of enforcement and corrective action by the Municipality of Ponce has subjected Mr. Sepúlveda to serious risks to his personal safety, dignity, and mobility. Due to the pervasive inaccessibility of sidewalks, he is frequently forced to take dangerous, unregulated detours, including moving onto the street, where he is directly exposed to vehicular traffic. This places him in immediate danger of being struck by moving vehicles and causes significant physical and emotional distress. Furthermore, the inconsistent and unsafe pedestrian routes prevent him from fully participating in daily activities, such as attending medical appointments, shopping, or engaging in recreational outings.

59.   The sidewalk system surrounding the co-defendant establishments serves as an essential pedestrian route for Mr. Sepúlveda and other individuals with disabilities. However, due to the combined negligence of the Municipality and the co-defendants, this route is entirely unreliable and unsafe. The Municipality's inaction has severely compromised connectivity and pedestrian flow, creating insurmountable obstacles for individuals who rely on mobility aids.

60.   By allowing these barriers to persist, the Municipality of Ponce is in systematic violation of Title II of the ADA, 42 U.S.C. § 12131 et seq., which mandates that public entities ensure accessibility and prohibit discrimination against individuals with disabilities in the

provision of services, programs, and activities. The design, maintenance, and enforcement of accessibility standards for public sidewalks and curb ramps constitute a core municipal responsibility under Title II. Therefore, the Municipality's failure to implement and enforce accessibility regulations constitutes discrimination in a pattern and practice of exclusion, depriving Mr. Sepúlveda and others with mobility disabilities of their right to full and equal access to public spaces.

**G. Violation of Section 504 of the Rehabilitation Act by the Municipality of Ponce**

61.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination on the basis of disability in programs and activities that receive federal financial assistance. As a recipient of federal funds, the Municipality of Ponce is legally obligated to ensure accessibility and prevent discrimination against individuals with disabilities in all services, programs, and activities under its jurisdiction, including the maintenance and regulation of public sidewalks, curb ramps, and pedestrian pathways.

62.    Despite this clear legal obligation, the Municipality of Ponce has engaged in systemic discrimination by failing to take affirmative actions to remove architectural barriers from its pedestrian infrastructure and by allowing sidewalks to be blocked by illegally parked vehicles. The Municipality's continued inaction and failure to enforce accessibility regulations have directly resulted in the exclusion of Mr. Uriel Sepúlveda from a fundamental public service—safe and accessible pedestrian pathways.

63.    This failure constitutes a clear violation of Section 504 and reflects intentional discrimination against Mr. Sepúlveda based on his disability. The Municipality has been fully aware of the hazardous conditions of its sidewalks and curb ramps, including broken pavement, missing landing areas, potholes, cracks, and abrupt level changes, yet has chosen not to take corrective measures. Additionally, it has failed to implement parking

176

enforcement policies, allowing vehicles to illegally obstruct designated pedestrian access points, curb ramps, and sidewalks, further restricting Mr. Sepúlveda's ability to navigate his community safely.

64. By allowing these barriers to persist, the Municipality of Ponce has effectively denied Mr. Sepúlveda the use and enjoyment of public spaces, in direct violation of Section 504. Its failure to ensure compliance with federal accessibility standards has forced him to either risk injury by navigating hazardous pedestrian routes or remain confined to his home, thereby depriving him of his right to participate in everyday community life on equal terms with others.

## H. Use Permits Granted in Violation of Accessibility Laws

65. The Municipality of Ponce has systematically granted and maintained use permits for the co-defendants identified in this Complaint, despite their failure to comply with accessibility laws. As a result, these businesses have been allowed to operate despite the existence of significant architectural barriers that prevent individuals with disabilities, such as Mr. Uriel Sepúlveda, from accessing their facilities safely and independently. This institutionalized practice of non-compliance has resulted in the issuance of permits based on false or incomplete information, leading to the continued operation of establishments that do not meet the legal standards for accessibility.

66. Specifically, the co-defendants identified in this Complaint failed to meet accessibility requirements at the time of their permit applications and continue to operate in violation of the law, as follows:

66.1. In their use permit applications before the Municipality of Ponce, the co-defendants falsely asserted that their establishments complied with

accessibility laws, when in reality, the actual conditions of their facilities demonstrate otherwise.

66.2.    The co-defendants fraudulently certified that their establishments had accessible entrances and routes, yet they maintain permanent obstacles that prevent individuals with disabilities from safely accessing them.

66.3.    In their permit applications, the co-defendants misrepresented that they provided the legally required maneuvering space for individuals using mobility aids, when the actual space is significantly smaller than the minimum legal requirement, making it impossible for Mr. Sepúlveda to move freely.

66.4.    The co-defendants concealed the fact that their service counters exceed the legally permitted height for accessibility, making them inadequate and unusable for individuals with mobility impairments, such as Mr. Sepúlveda.

66.5.    The permit applications falsely certified that the restroom facilities met accessibility requirements, yet in reality, these establishments lack sufficient maneuvering space, have improperly installed grab bars, and place obstacles such as trash bins that further limit accessibility.

66.6.    The co-defendants failed to disclose that they use public sidewalks as parking areas, completely eliminating accessible pedestrian routes and forcing individuals with disabilities to move onto the roadway, thereby placing them in direct danger.

66.7.    The co-defendants misrepresented compliance with accessible parking requirements, failing to provide the correct number of accessible spaces, failing to designate van-accessible spaces, and neglecting to install proper signage and markings, creating additional barriers that prevent safe and independent access.

66.8.    The Municipality of Ponce has granted use permits without conducting proper inspections to verify compliance with accessibility laws, allowing the co-defendants to continue operating despite their failure to provide accessible entrances, paths of travel, parking, and service areas.

67.    The Municipality of Ponce has demonstrated a pattern of negligence in its duty to enforce accessibility laws. Rather than ensuring that the co-defendants comply with the law before issuing permits, the Municipality has:

67.1.    Failed to conduct adequate inspections before granting use permits, allowing businesses with clear accessibility violations to continue operating.

67.2.    Ignored the poor condition of public sidewalks, curb ramps, and access routes, further exacerbating the mobility barriers faced by Mr. Sepúlveda and others with disabilities.

67.3.    Failed to implement penalties or fines against businesses that obstruct public sidewalks, fail to provide proper accessible parking, or operate without meeting basic accessibility standards.

68.    Not only has the Municipality of Ponce granted use permits to the co-defendants identified in this Complaint without verifying compliance with accessibility laws, but it has also failed to implement enforcement mechanisms to correct these violations. The Municipality is fully aware that many of these businesses use public sidewalks as parking spaces, obstruct accessible routes, and operate with significant architectural barriers, yet it has chosen not to take action to address these issues.

69.    The number of enforcement actions or fines issued for violations related to sidewalk obstruction and accessibility barriers is virtually nonexistent, reflecting a complete lack

of commitment to ensuring compliance with accessibility laws. Instead of protecting the rights of individuals with disabilities, the Municipality has prioritized the convenience of businesses and drivers, allowing the continued misuse of public spaces at the expense of accessibility. This has led to severe consequences for individuals like Mr. Uriel Sepúlveda, who faces immense difficulties in navigating these areas safely.

70.    The failure of the Municipality of Ponce to regulate sidewalk use has resulted in public pedestrian spaces being misused as parking areas. As a consequence, Mr. Sepúlveda has been forced to move onto the roadway, exposing himself to unnecessary danger and increasing his risk of falls or collisions with vehicles. Instead of implementing measures to keep sidewalks clear and accessible for pedestrians, the Municipality has either passively or actively allowed these barriers to persist, creating an environment where accessibility is disregarded.

71.    This ongoing failure to act constitutes a violation of Mr. Sepúlveda's rights, as it directly impacts his freedom of movement, personal safety, and ability to participate in everyday activities. The lack of clear pedestrian routes and the obstruction of accessible pathways have made it physically exhausting and dangerous for him to navigate the city, discouraging him from visiting locations within Ponce due to the fear of encountering accessibility barriers that will make his visit impossible.

72.    The co-defendants identified in this Complaint, including El Consultorio Lunch And Bar LLC; El Bohío Inc.; Farmacia Lorraine, LLC, La Nueva Casa Del Chef, Inc., Wam Food Cuisine L.L.C.; Cantón Chino Inc.; La Ponceña Inc., Aloft Ponce Hotel & Casino, Consejo De Titulares Santa María Medical Building Corp.; Guarina Bakery Inc.; Comercio Cash & Carry, Inc.; and other named co-defendants, maintain private parking

lots designated for their customers. However, at the time of obtaining their use permits—and continuing to this day—these businesses have failed to provide the legally required accessible parking spaces, creating further obstacles for individuals like Mr. Uriel Sepúlveda.

73.    Despite operating parking facilities for their customers, the co-defendants have failed to comply with state and federal accessibility requirements, leading to the following violations:

73.1.    The parking lots lack the proper number of designated spaces for individuals with disabilities, making it difficult for persons like Mr. Sepúlveda, who relies on a walker, to find an accessible parking spot near the entrance.

73.2.    The failure to provide van-accessible parking spaces makes it difficult or impossible for individuals with mobility impairments to safely exit their vehicles and maneuver with their mobility aids.

73.3.    The absence of clear signage and pavement markings identifying accessible parking spaces creates confusion, leading to unauthorized vehicles occupying these spaces, further restricting access for individuals with disabilities.

73.4.    The failure to provide an accessible route from the parking lot to the entrance forces individuals with disabilities to navigate unsafe or non-designated areas, increasing the risk of accidents, falls, or physical strain.

74.    Not only has the Municipality of Ponce allowed these businesses to operate without meeting accessibility standards, but it has also failed to implement enforcement mechanisms to correct these deficiencies. Despite being fully aware of the ongoing violations, the Municipality has neglected to:

74.1.    Conduct proper inspections to ensure compliance with accessibility laws before granting use permits.

74.2.    Impose corrective measures on businesses that fail to meet accessibility requirements.

74.3.    Enforce penalties or fines on establishments that continue to operate with inaccessible parking facilities.

74.4.    Address the poor condition of public sidewalks and curb ramps surrounding these businesses, which further exacerbate accessibility barriers for individuals like Mr. Sepúlveda.

75.    Due to these violations, Mr. Sepúlveda has been directly impacted, as he has faced numerous obstacles when attempting to park and access these establishments. On several occasions, he has had to leave, attempt to return later, or seek an alternative location, leading to additional transportation costs, wasted time, and unnecessary financial burdens.

76.    Furthermore, the lack of accessible parking and clear pedestrian routes has made each visit physically exhausting and frustrating, discouraging Mr. Sepúlveda from returning to these locations. Instead of being able to enjoy his outings and participate in daily activities like any other citizen, he is forced to navigate an environment that continuously excludes individuals with disabilities.

77.    The use permits granted to the co-defendants identified in this Complaint are null and void, as they were obtained based on false or incomplete information regarding accessibility compliance. These businesses failed to disclose material information about

existing architectural barriers, and the Municipality of Ponce failed in its duty to verify compliance before issuing permits.

78.    Therefore, the plaintiff respectfully requests that the Court, after completing the requisite procedural steps, order the immediate revocation of these use permits and mandate the correction of all existing accessibility barriers within and around the co-defendants' establishments. Additionally, the Municipality of Ponce must be required to implement proper oversight and enforcement mechanisms to ensure that all public accommodations comply with accessibility laws, thereby preventing further discrimination against individuals with disabilities, including Mr. Sepúlveda.

### III.    PRAYER FOR RELIEF

**WHEREFORE**, the plaintiff, Mr. Uriel Sepúlveda, respectfully requests that this Honorable Court grant the following legal remedies:

1.    Issuance of a preliminary and permanent injunction against the co-defendants identified in this Complaint to prevent future violations of Title III of the Americans with Disabilities Act (ADA) by ensuring that their commercial establishments and surrounding pedestrian infrastructure comply with federal accessibility requirements.

2.    Issuance of a permanent injunction under Section 504 of the Rehabilitation Act, Title II of the ADA, and the 2023 Public Right-of-Way Accessibility Guidelines (PROWAG) against the Municipality of Ponce, ordering it to:

    2.1.    Remove all existing architectural barriers on sidewalks, curb ramps, and pedestrian pathways within its jurisdiction, including those in the vicinity of the co-defendant establishments identified in this Complaint.

    2.2.    Ensure that all sidewalks, curb ramps, and pedestrian routes comply with federal accessibility requirements, eliminating hazardous conditions such as cracks,

potholes, missing landing areas, and improper transitions between sidewalks and roadways.

2.3.    Develop and implement a detailed accessibility remediation plan with specific deadlines, which shall include:

    2.3.1.    A comprehensive inventory of all non-compliant sidewalks and curb ramps under its jurisdiction.

    2.3.2.    A binding timeline for the repair, modification, and/or reconstruction of these pedestrian pathways.

    2.3.3.    The establishment of a regular inspection and enforcement system to ensure continued compliance with accessibility standards.

3.    An order directing the Municipality of Ponce to implement and enforce parking regulations that prevent vehicles from blocking curb ramps and sidewalks, ensuring that designated pedestrian access points remain unobstructed.

4.    An order directing the Municipality of Ponce to pay nominal damages to the plaintiff for its violations of Title II of the ADA, Section 504 of the Rehabilitation Act, and the 2023 PROWAG, acknowledging the deprivation of his right to safe and accessible public spaces.

5.    An order directing the Municipality of Ponce to pay compensatory damages under Title II of the ADA and Section 504 of the Rehabilitation Act, in recognition of the emotional distress, loss of mobility, and exclusion from community life suffered by Mr. Sepúlveda due to the Municipality's ongoing discrimination.

6.    An order directing the Municipality of Ponce and the co-defendant businesses to compensate Mr. Sepúlveda for economic damages incurred as a result of their failure to

comply with accessibility laws, including but not limited to: Additional transportation costs incurred when he was forced to leave, return later, or seek alternative businesses due to inaccessible facilities.

7. Revocation of the use permits granted to the co-defendant commercial establishments by the Municipality of Ponce, as these permits were obtained through false or misleading representations regarding compliance with accessibility laws.

8. Retention of jurisdiction by this Honorable Court to monitor, ensure, and oversee compliance with its orders directing the Municipality of Ponce and the co-defendant commercial establishments to fulfill their legal obligations under federal accessibility laws.

9. An order directing the defendants to pay reasonable costs, litigation expenses, and attorneys' fees, pursuant to 20 U.S.C. § 1415(i)(3)(B).

10. Any other relief that this Court deems just, equitable, and appropriate in the interest of ensuring accessibility and non-discrimination against individuals with disabilities.

**Dated:** February 7, 2025.

<div style="margin-left: 40%;">

**VELEZ LAW GROUP LLC**
Civil Rights Division

s/José Carlos Vélez Colón
José Carlos Vélez Colón
USDC-PR 231014

4204 Six Forks Rd, Apt 1209
Raleigh, NC 27609-6427

E:      vlg@velezlawgroup.com
C:      (787)-422-1881

**PLAINTIFF'S ATTORNEY**

</div>